EXHIBIT 3

COMPLAINT INTAKE
SUMMARY WORKSHEET

## RESPONDENT INFORMATION

| Name & Address | PROVIDENCE ST MARY MEDICAL CENTER 401 W POPLAR ST WALLA WALLA, WA 99362-2846 | Case # | 2022-4668 (FS) HAC |
|---|---|---|---|
| | | Allegation | • Fraud - Unspecified<br>• Health and Safety<br>• Improper or Abusive Billing Practices<br>• Patient Care |
| | | License # | HAC.FS.00000050 |
| | | Issued | |
| | | Expires | 12/31/2022 |
| Phone # | | Status | ACTIVE |
| Legal Action | Yes ☐  No ☐  Compliance  Yes ☐  No ☐ | Cases | Open:    Closed: |

## COMPLAINANT INFORMATION

| Name & Address | UNITED STATES DEPARTMENT OF JUSTICE |
|---|---|
| Phone # | E-Mail |

## SUMMARY OF COMPLAINT

Settlement Date: 03/17/2022
Settlement Amount: $22,690,458

A settlement agreement has been reached between the Respondent and the complainant. It is alleged that the neurosurgery staff:
* falsified, exaggerated and/or made inaccurate diagnoses in order to obtain reimbursement for surgical procedures
* performed surgical procedures that did not meet medical necessity guidelines set forth by Medicare
* performed a surgery of greater complexity than was medically appropriate
* jeopardized patient safety by attempting to perform an excessive number of complex surgeries
* created excessive level of complications/negative outcomes as a result of their surgeries
* performed surgical procedures on patients that were not appropriate candidates for surgery
* failed to adequately and accurately document procedures, diagnoses and complications
* failed to implement safeguards to prevent, deter and cease the medically unnecessary procedures

Companion Case:
2022-XXXXMD1
2022-XXXXMD2



## Case View Screen  update

| | | | | | |
|---|---|---|---|---|---|
| Case | 2022-4668 | Date Created | 04/15/2022 | | Audit |
| Status | OPENED | Date Received | 04/13/2022 | | Entry Items |
| Respondent ID | 851671 | How Received | Email | | Documents |
| Respondent | Providence Health and Services - Washington HAC.FS.00000050 | Receiving Board | FACILITIES AND SERVICES | | Notes Master Cases |
| | | Receiving Profession | Hospital Acute Care License | | Participants |
| Credential | Providence St Mary Medical Center | Receiving Department | Case Intake | | Add Master Case |
| Address | ◉ Public ○ Mail | Received By | Danielle Corbin | | Timeline History |

Address:
Providence St Mary Medical Center
401 W Poplar St
Walla Walla, WA 99362-2846

Alleged Issues
   Fraud - Unspecified
   Health and Safety
   Improper or Abusive Billing Practices
   Patient Care
Case Nature
   Billing
   Fraud
   Standard of Care/Services

Complainant ID: 1662925
Complainant: United States Department of Justice

**Comments:**

- Action Items
- Resolution
- Participants
- Priority History
- HIPDB Reports

**Action Items** add  add group

| Type | Assigned To | Activity | Track Time | Due | Effective | Completed | Order Signed | Created ▼ |
|---|---|---|---|---|---|---|---|---|
| No action items found | | | | | | | | |

## Credential View Screen  entity tree

**Providence Health and Services - Washington**
Address:
○ Public  ● Mail

Providence St Mary Medical Center
PO Box 1477
Walla Walla, WA 99362-0312

| | |
|---|---|
| ID | 851671 |
| Warnings | |
| SSN/FEIN | |
| Federal ID | 911491167 |
| Secretary Of StateNumber | 313007977 |
| Contact Standing | In-Business |
| Contact Type | NON PROFIT CORPORATION |
| Public File | YES |
| Mailing List | |
| US Citizen | |
| E-mail | dovie.britton@providence.org |
| Web Address | www.providence.org |

Comments: Previous Federal Tax ID listed as 91-1576519; 51-0216586; 91-1491167, 20-0093280;51-0216586; 91-1491167; 35-2369417, 91-0573108; 91-1512896; 910567732; 32-0261234; 352347032, 300502262

## Hospital Acute Care License  form letter

| | | | |
|---|---|---|---|
| Credential # | HAC.FS.00000050 | Credential Status | ACTIVE (12/13/2019) |
| Legacy License # | 000079 | Status Reason | ACTIVE |
| Application Date | | Amount Due | $0.00 |
| Effective Date | 01/01/2020 | Date Last Activity | 4/7/2022 10:37:24 AM |
| Expiration Date | 12/31/2022 | Last Updated by | Vann, Robert |
| First Issuance Date | | Certificate Sent Date | 12/13/2019 |
| Last Date Of Contact | | | |
| Next Examinations Date | 10/01/2022 | | |

Audit
Document
Verification
Workflow
Key Mgmt
Fees
Notes
Print Docs
Comp. Aud
Renewal
Legacy License St
Online Info

Comments:

- Supervises
- User Defined License Data
- Workflow
- Legacy

**Supervises**  update Show All

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

# Investigative Report
## On-site State Investigation

**Facility Address:** 401 W. Poplar Street Walla Walla, WA 99362
**Laboratory Director:** N/A
**CLIA Number:** N/A
**Credential Number:** HAC.FS.00000050
**Medicare Number:** N/A
**Shell Number:** CMY111
**Date(s) of Investigation:** 09/20/22- 11/14/22
**State Licensing Priority:** B
**Federal Certification Priority:** N/A

**Intake Details:** *(List of concerns reported in the original complaint.)*
A settlement agreement was reached between the respondent and the complainant. It was alleged that the neurosurgery staff:
- Falsified, exaggerated, and/or made inaccurate diagnoses to obtain reimbursement for surgical procedures
- Performed surgical procedures that did not meet medical necessity guidelines set forth by Medicare
- Performed a surgery of greater complexity than was medically appropriate
- Jeopardized patient safety by attempting to perform an excessive number of complex surgeries
- Created excessive level of complications/negative outcomes because of their surgeries
- Performed surgical procedures on patients that were not appropriate candidates for surgery
- Failed to adequately and accurately document procedures, diagnoses, and complications
- Failed to implement safeguards to prevent, deter and cease the medically unnecessary procedures

**Allegation/s:** *(The allegation/s listed below is what the department has jurisdiction and authorization to investigate. An allegation is considered an assertion of improper practice or condition that could result in a violation of facility law or rule.)*

1. Allegation: The hospital failed to implement safeguards to prevent, deter, and cease the medically unnecessary procedures as required under WAC 246-320-131 Governance which requires that the governing body establish and review governing authority policies including requirements for reporting practitioners according to RCW 70.41.210 and to establish and review governing authority policies including requirements for providing communication and conflict resolution between the medical staff and the governing authority.
2. Allegation: The hospital failed to adopt bylaws, rules, regulations, and organizational structure that address:
    - Assessment of credentialed practitioner's performance, reporting practitioners according to RCW 70.41.210

1

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707
- Provide for medical staff communication and conflict resolution with the governing authority as required under WAC 246-320-161.

## Investigative Process Included: (*This is what the investigator did in terms of methods employed to conduct inquiry.*)

1. There was no complainant to contact because the complaint was generated by the WA Department of Health related to a hospital court settlement.

2. The investigator conducted an onsite investigation that included the following:

   A. Observation: The investigator observed the daily safety huddle on 09/20/22.

   B. Document Review: The investigator reviewed the following hospital documents and records during the investigation.

      1) Hospital policies and procedures including:
         a) Focused Professional Performance Evaluation, no number, no date
         b) Management of Complaints and Grievances, number 11214135, effective date 02/22
         c) Sentinel/Adverse Event, number 8740392, effective date 02/22
         d) Code of Conduct, number 7842079, effective date 03/20
         e) Hospital Practitioner Reporting Requirements to the Department of Health, number 8343063, effective date 08/20
         f) Medical Staff Peer Review-Professional Practice Evaluation and Proctoring, number 5574650, effective date 04/21

      2) Medical Staff Credentialing files for 7 current medical staff members

      3) Medical Staff Credentialing files for 2 medical staff members who resigned

      4) Adverse Event Log for the period 01/01/21 to 09/20/22

      5) Incident Report Log for the period 01/01/21 to 09/20/22

      6) Return to the Operating Room Log for the period 12/17/14 to 11/23/17 and 01/01/20 to 12/31/21

      7) Organizational Chart

      8) Medical Staff Organizational Chart

      9) Hospital Bylaws approved 06/17/22

      10) Medical Staff Rules and Regulations approved 02/20

2

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

   11) Settlement Agreement between United States, Washington State, Providence, and Relator dated 03/17/22

 C. The investigator conducted the following interviews during the investigation:

  1) Chief Nursing Officer
  2) Accreditation Manager
  3) Director of Quality and Risk Management
  4) Interim Chief Medical Officer
  5) Administrative Assistant for Medical Staff Services
  6) Regional Director of Medical Staff Services

## Summary of Findings (Narrative overview of the results of investigation.)

1. On 09/20/22 at 9:45 AM during an interview with the investigator, the Director of Quality and Risk Management (Staff #1) stated that following the Attorney General's investigation, a Corporate Integrity Agreement (CIA) was implemented and included on-site personnel to monitor and oversee performance improvement for the next 5 years. The CIA personnel found that the hospital had good quality oversight with the quality committee reporting to the Governing Body (Community Mission Board or CMB). The policies were found to be good, but not necessarily followed quickly enough or firmly enough. The two surgeons were reported to the National Provider Data Base (NPDB) through the legal process with the Attorney General. The Department of Justice reviewed 10 cases. They were reviewed by the hospital, but the Department of Justice found the hospital to not be fast enough or definitive enough. The hospital hesitated to report to the National Provider Data Base. Reporting is now part of the discussion in Peer Review. Peer Review is now under Quality. They are not in the business to protect providers. Recently a provider was asked to voluntarily suspend practice during an investigation. The provider agreed, and because there was a change in their privileges (voluntary suspension of practice) the provider was reported to the NPDB and Department of Health (DOH), the change in privileges pending investigation. The current process for serious safety events includes an SBAR Report (Situation, Background, Assessment, Recommendation) is sent to leadership within 72 hours, then root cause analysis meetings are held to fact find, develop root causes, and to develop action plans to prevent reoccurrence. Providence implemented a regional peer review system called Provider Professional Evaluation Committee (PPEC).

2. On 09/20/22 at 1:05 PM during an interview with the investigator, the Interim Chief Medical Officer (Staff #2) stated that they had been invited to participate in the PPEC process that included an imbedded professionalism policy. The PPEC process shares review among a larger group of providers which reduces conflicts when there are only a couple of providers for a specialty. That makes them either partners or competitors so spreading the breadth of reviewers is helpful. There has been a culture shift to clear communication of expectations and consequences. There is all new leadership at the facility since the neurosurgeon issues were being investigated. There is a new Chief Executive Officer, a new Chief Nursing Officer, a new Director of Quality and Risk Management and a new Chief Medical Officer (Interim). The CMB members attend the Medical Executive Committee and Credentialing Committee, so they are aware of issues and actions taken by the Committee. The hospital reboot of the High Reliability Organization (HRO) program has made improvements in

3

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

    awareness to speak up if staff see or hear anything unsafe or untoward. Many of the improvements were made before the attorney general got involved. The Quality Improvement Organization (QIO) that is doing the oversight for the Corporate Integrity Agreement hasn't yet made any recommendations for changes to the current policies and procedures.

3. Review of the hospital's Medical Staff Bylaws/Rules and Regulations in effect 01/19/18 showed that the purpose of the staff is to serve as the primary means for accountability to the Community Mission Board regarding appropriateness of the professional performance and ethical conduct of its members, and to strive toward assuring that the quality of patient care in the hospital is consistently maintained by the resources locally available. The staff responsibilities include quality assessment and improvement program establishing mechanisms for continuous monitoring of patient care practices, and for reviewing and evaluating the quality and appropriateness of patient care, and to initiate and pursue investigations with respect to physicians and allied health professionals, when warranted. Medical staff leaders and hospital administration encourage collegial and educational efforts to resolve questions related to clinical practice or professional conduct. Documentation of collegial intervention may or may not be included in the provider's confidential file based on the determination of the relevant medical staff leader. An initial review is initiated whenever a serious question has been raised or collegial interventions have failed. The issue is then referred to the Chief of Staff, Chief Executive Officer, Chief Medical Officer, or Chairperson of the Board. If the issue is deemed credible, it is forwarded in writing to the Medical Executive Committee. Initiation of an investigation is made by the Medical Executive Committee. The investigation committee makes a reasonable effort to complete the investigation and issue its report within 30 days. The Medical Executive Committee may accept, modify, or reject any recommendation received from the investigation committee. The Chief of Staff, the Chief Medical Officer, the Chief Executive Officer, or the Board Chairperson hav ethe authority to suspend all or any portion of an individual's clinical privileges. The individual may be given an opportunity to refrain voluntarily from exercising privileges pending an investigation. The Medical Executive Committee shall review the matter resulting in a precautionary suspension within a reasonable period and determine whether there is sufficient information to warrant a recommendation or proceed under the investigative procedure.

4. Review of the hospital's Medical Staff Bylaws/Rules and Regulations approved 02/21/20 showed that medical staff peer review process included the addition of the PPEC process. The Community Mission Board (CMB) approved the policy for medical staff credentialing and the PPEC process at the meeting held on 06/17/22. The CMB requested additional training regarding the PPEC process.

    Review of the Medical Staff Bylaws/Rules and Regulations, approved by the CMB on 02/21/20 showed that when a concern is raised about a medical staff provider, the concern is reviewed to evaluate if the concern is valid or not valid. If deemed valid with highest concern, the Medical Executive Committee could suspend the provider. If a provider resigns while under investigation, a report would be made to the Department of Health and NPDB. The process for a provider to give and receive communication and resolve conflict was outlined in the document.

4

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

5. On 09/22/22 at 10:50 AM during an interview with the investigator, the Regional Director of Medical Staff Services (Staff #3) stated that the two surgeons were not reported to the National Provider Data Base or Department of Health by the hospital. Peer review looked at cases and concerns were raised. Further review was recommended. The original reviews did not show highest concern, and the facility was working through the process. The medical staff was still under fact finding. This was viewed as a collegial effort looking for opportunities for improving and they were working through due diligence. There was discussion that this was moving toward suspension, but they had not gotten that far. They would need a final finding of peer review action, then it would be reported to the NPDB. The Regional Director of Medical Staff Services stated that in hindsight, they could have moved faster. Peer review was done on some cases and there were still some concerns, but they were trying to validate the concerns. More cases came to light after the two neurosurgeons resigned.

The facility cannot submit complaints to the NPDB once a provider is no longer employed. They cannot even look up a provider after they are no longer on staff at the hospital. There are serious fines and potential loss of peer review protection for up to 3 years.

6. Review of the Settlement Agreement between the United States, Washington, Providence, and the relator, showed that on February 23, 2017, as a result of concerns articulated by medical staff, Providence, as the employer, placed Dr. B. on administrative leave, and shortly thereafter, initiated an independent analysis of certain concerns articulated as to Dr. B with regard to certain specific patients. On May 8, 2017, Providence accepted Dr. B's resignation. Providence, as the employer, did not report Dr. B to the National Practitioner Data Bank or the Washington State Department of Health.

On May 22, 2018, as a result of concerns articulated by medical staff, Providence, as the employer, placed Dr. A on administrative leave and initiated an independent analysis of certain concerns articulated as to Dr. A with regard to certain specific patients. On November 13, 2018, Dr. A submitted his letter of resignation to Providence, which Providence accepted. Providence, as the employer, did not report Dr. A. to the National Practitioner Data Bank or the Washington State Department of Health.

7. Review of the hospital's policy titled, "Medical Staff Peer Review-Professional Practice Evaluation and Proctoring," number 5574650, last revised 04/13, and last reviewed 04/21, showed that all hospital based clinical activities related to practitioners who hold clinical privileges at Providence St. Mary Medical Center will be reviewed as part of the ongoing medical staff and organizational performance improvement program. Duties and functions of the peer review process include evaluating the competency and qualifications of physicians and allied health professionals, both retrospectively and prospectively, in order to improve the quality of medical care of patients. All reports, recommendations, actions, and minutes made or taken in the peer review process are confidential and covered by the provisions of applicable federal and state law.

The Medical Staff Department subcommittees have primary oversight of the professional practice evaluation process and review and approve the methods and criteria for conducting performance monitoring. The subcommittees report to the Credentials & Bylaws Committee which investigates and verifies the credentials for medical staff membership and granting of

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

    privileges and reports/recommends to the Executive Committee. The Executive Committee receives and acts upon reports and recommendations from the medical staff subcommittees and reports/recommends to the CMB on all matters relating to appointment, reappointments, clinical privileges, and investigations.

    Identification of Occurrences for Peer review showed that a case may be identified for peer review through one or more of the following avenues that included physician or employee expressed issues of concern, or patient or family complaints.

8. Review of the hospital's return to surgery logs for 12/17/14 through 11/23/16 showed that there were 26 cases of patients returning to surgery. Ten of those cases were cases of Dr. Dreyer's.

9. Review of the medical staff services files for the two neurosurgeons showed that there was one case review in Dr. Dreyer's file. The files showed that there were no actions taken against the privileges such as suspension for either neurosurgeon. The files did not include resignation letters.

10. During an interview with the investigator on 09/22/22 at 3:40 PM, the Administrative Assistant for Medical Staff services (Staff #4) reviewed the medical staff files for the two neurosurgeons. Hospital documents showed that Dr. A. submitted a letter of resignation on 04/22/19 that was acknowledged by the Medical Executive Committee on 07/19/19 and accepted by the Community Mission Board on 08/05/19. The hospital records did not include any record of suspension. Medical staff files for Dr. B showed that there was one case review from 11/16/16 that was included in the file. The doctor submitted a letter of resignation on 03/28/17 that was accepted by the Community Mission Board at the meeting on 05/19/17. The hospital records did not include any record of suspension.

11. In an email to the investigator dated 10/31/22 from the Vice President, Division Senior Corporate Counsel-Central (Staff #5), showed that the St. Mary Medical Center medical staff did not suspend, terminate, or allow Dr. Dreyer to resign his medical staff privileges. In May 2018, Providence Medical Group, Dr. Dreyer's employer, placed him on administrative leave. With that employment action, Dr. Dreyer could not exercise his privileges as he didn't have the reason or resources to do so. From an employment standpoint, he didn't have patients to see or treat. There wasn't any medical staff action that prohibited him from exercising his privileges. In fact, if Dr. Dreyer wasn't placed on administrative leave by his employer, Dr. Dreyer was free to exercise his medical staff privileges.

## Conclusion/ Results of Investigation

1. Allegation: The hospital failed to implement safeguards to prevent, deter, and cease the medically unnecessary procedures as required under WAC 246-320-131 Governance which requires that the governing body establish and review governing authority policies including requirements for reporting practitioners according to RCW 70.41.210 and to establish and review governing authority policies including requirements for providing communication and conflict resolution between the medical staff and the governing authority was substantiated based on interview, document review, and review of court settlement documents.

Facility Name: Providence St. Mary Medical Center
Case/Intake Number: 2022-4668/121707

2. Allegation: The hospital failed to adopt bylaws, rules, regulations, and organizational structure that address:
    - Assessment of credentialed practitioner's performance, reporting practitioners according to RCW 70.41.210
    - Provide for medical staff communication and conflict resolution with the governing authority as required under WAC 246-320-161.

These allegations were substantiated based on interview, review of documents, and review of court settlement documents.

# Actions:

Statement of Deficiency, Plan of Correction Reviewed
No Additional Referrals Needed

**Blanchard-Edwards, Barbara (DOH)**

| | |
|---|---|
| From: | Blanchard-Edwards, Barbara (DOH) |
| Sent: | Monday, November 14, 2022 10:48 AM |
| To: | Vo, Betsy M |
| Cc: | Milleson, Jenn (she/her) |
| Subject: | RE: Providence St. Mary Medical Center & DOH Follow-Up |

November 14, 2022

Betsy,

I am sorry that your husband was in the hospital. I am not able to delay the report to the state beyond November 30 (10 business days from today). Have you received notice from NPDB yet?
Are there any additional documents that demonstrate the hospital was actively pursuing an investigation into the physicians? I saw one case review in a file, but it wasn't dated or signed and there was nothing included that showed where the information was shared.

Again, I'm sorry for your family's medical issues and I hope your husband is better.

Barbara

**Barbara Blanchard-Edwards, MS, RN**
Nurse Consultant
Office of Health Systems Oversight
Washington State Department of Health
barbara.blanchard-edwards@doh.wa.gov
360-489-5697
www.doh.wa.gov


From: Vo, Betsy M <Betsy.Vo@providence.org>
Sent: Monday, October 31, 2022 7:38 AM
To: Milleson, Jenn (they/she) <jennifer.milleson@providence.org>; Shear, Russell A <Russell.Shear@providence.org>; Klein, Shannon <Shannon.Klein@providence.org>; Kvern, Susan C <Susan.Kvern@providence.org>; Dumser, Bruce T <Bruce.Dumser@providence.org>; Blanchard-Edwards, Barbara (DOH) <barbara.blanchard-edwards@doh.wa.gov>
Cc: Bayersdorfer, Jennifer A <Jennifer.Bayersdorfer@providence.org>; Lane, David (He/Him) <David.Lane@providence.org>
Subject: Providence St. Mary Medical Center & DOH Follow-Up

**External Email**

Hi Barbara,

My apologies for not making last week's call regarding the DOH survey at Providence St. Mary Medical Center ("PSMMC"). Thank you for your understanding as I was with my husband in the hospital.

1

The reason I wanted to meet with you was to discuss your preliminary finding that PSMMC's Medical Staff failed to report the departure of Dr. Jason Dreyer to the National Practitioner Databank. The Medical Staff did not suspend, terminate, or allow Dr. Dreyer to resign his medical staff privileges. In May 2018, Providence Medical Group, Dr. Dreyer's employer, placed him on administrative leave. With that employment action, Dr. Dreyer could not exercise his privileges as he didn't have the reason or resources to do so. From an employment standpoint, he didn't have patients to see or treat. There wasn't any medical staff action that prohibited him from exercising his privileges. In fact, if Dr. Dreyer wasn't placed on administrative leave by his employer, Dr. Dreyer was free to exercise his medical staff privileges.

I'd be happy to chat further with you on this, or alternatively, can you defer this finding until PSMMC hears back from the NPDB? Back in June, NPDB sent to PSMMC a similar inquiry as to why Dr. Jason Dreyer's departure from PSMMC was not reported to NPDB. We submitted a timely response and are still waiting for a response.

Thank you,
Betsy

**Betsy M. Vo** | VP, Division Senior Corporate Counsel - Central | Department of Legal Affairs | Providence
Tel: (425) 943-9907 | Cell: (206) 388-6755 | Fax: (206) 215-5903 | Mail: 1730 Minor Avenue, Suite 400, Seattle, WA 98101
Executive Assistant: Terry Shahrivar | Tel: (425) 780-5976 | Email: Terry.Shahrivar@providence.org


Providence

This message is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the addressee, nor authorized to receive for the addressee, you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete the message. Thank you.

-----Original Appointment-----
**From:** Milleson, Jenn (they/she) <jennifer.milleson@providence.org>
**Sent:** Thursday, October 13, 2022 3:23 PM
**To:** Milleson, Jenn (they/she); Vo, Betsy M; Shear, Russell A; Klein, Shannon; Kvern, Susan C; Dumser, Bruce T; Blanchard-Edwards, Barbara (DOH)
**Cc:** Bayersdorfer, Jennifer A; Lane, David (He/Him)
**Subject:** CONFIRMED: DOH Follow-Up
**When:** Monday, October 24, 2022 9:30 AM-10:30 AM (UTC-08:00) Pacific Time (US & Canada).
**Where:** Microsoft Teams Meeting

This meeting has been accepted by DOH Investigator.

---

# Microsoft Teams meeting

**Join on your computer, mobile app or room device**
Click here to join the meeting

Meeting ID: 231 696 508 294
Passcode: vsErfb
Download Teams | Join on the web

**Join with a video conferencing device**
571147130@t.plcm.vc
Video Conference ID: 119 380 846 5
Alternate VTC instructions

**Or call in (audio only)**
+1 509-904-0815,,566916469#   United States, Spokane
Phone Conference ID: 566 916 469#
Find a local number | Reset PIN

Learn More | Meeting options

---

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

3

PRINTED: 11/28/2022
FORM APPROVED

State of Washington

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 000079 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br>11/14/2022 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| PROVIDENCE ST MARY MEDICAL CENTER | 401 W POPLAR ST<br>WALLA WALLA, WA 99362 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| B 000 | Initial Comments<br><br>STATE COMPLAINT INVESTIGATION<br><br>The Washington State Department of Health (DOH) in accordance with Washington Administrative Code (WAC), Chapter 246-320, Hospital Licensing regulations, conducted this health and safety investigation.<br><br>Onsite date: 09/20/22-09/23/22<br>Additional information received: 10/13/22, 10/31/22, 11/14/22<br><br>Case Number: 2022-4668<br><br>Intake Number: 121707<br><br>The investigation was conducted by:<br>Investigator #13<br><br>There were violations found pertinent to this complaint investigation. | B 000 | 1. A written PLAN OF CORRECTION is required for each deficiency listed on the Statement of Deficiencies.<br><br>2. EACH plan of correction statement must include the following:<br><br>The regulation number and/or the tag number<br>HOW the deficiency will be corrected<br>WHO is responsible for making the correction<br>WHAT will be done to prevent reoccurrence and how you will monitor for continued compliance and<br>WHEN the correction will be completed.<br><br>3. Your PLANS OF CORRECTION must be returned within 10 calendar days from the date you receive the Statement of Deficiencies. Your Plans of Correction must be postmarked by 12/08/22.<br><br>4. Return the ORIGINAL REPORT with the required signatures. | |
| B 700 | WAC 246-320-161(1)(l) Medical Staff-Reporting Practitioners<br><br>The medical staff must:<br>(1) Adopt bylaws, rules, regulations, and organizational structure that address:<br>(l) Reporting practitioners according to RCW 70.41.210; | B 700 | | |

State Form 2567

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE   TITLE: Director, Quality/Risk   (X6) DATE: 12/8/22

STATE FORM   6899   CMY111   If continuation sheet 1 of 3

PRINTED: 12/08/2022
FORM APPROVED

State of Washington

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 000079 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br>11/14/2022 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| PROVIDENCE ST MARY MEDICAL CENTER | 401 W POPLAR ST<br>WALLA WALLA, WA 99362 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| B 700 | Continued From page 1<br><br>This Washington Administrative Code is not met as evidenced by:<br><br>Based on interview, document review, and record review, the hospital failed to report health care practitioners to the Department of Health as required according to RCW 70.41.210. Practitioners are to be reported within 15 days of the date of the voluntary restriction or termination, including his or her voluntary resignation while under investigation, or the subject of proceedings regarding unprofessional conduct under RCW 18.130.180, is accepted by the hospital.<br><br>Failure to report unprofessional conduct in health care practitioners to the Washington Department of Health risks poor healthcare outcomes, patient harm, injury, and death.<br><br>Findings included:<br><br>1. Review of the hospital document titled, "Medical Staff Bylaws/Rules and Regulations," approved 02/21/20, showed that when a concern is raised about a medical staff provider, the concern is reviewed to evaluate if the concern is valid or not valid. If deemed valid with highest concern, the Medical Executive Committee could suspend the provider. If a provider resigns while under investigation, a report would be made to the Department of Health and the National Practitioner Data Base.<br><br>2. Review of the Settlement Agreement between the United States, Washington, Providence, and the relator, showed that on February 23, 2017, | B 700 | | |

State Form 2567
STATE FORM                          6899            CMY111                 If continuation sheet 2 of 3

PRINTED: 12/08/2022
FORM APPROVED

| State of Washington STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 000079 | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/14/2022 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| PROVIDENCE ST MARY MEDICAL CENTER | 401 W POPLAR ST WALLA WALLA, WA 99362 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| B 700 | Continued From page 2<br><br>as a result of concerns articulated by medical staff, Providence, as the employer, placed Dr. B. on administrative leave, and shortly thereafter, initiated an independent analysis of certain concerns articulated as to Dr. B with regard to certain specific patients. On May 8, 2017, Providence accepted Dr. B's resignation. Providence, as the employer, did not report Dr. B to the National Practitioner Data Bank or the Washington State Department of Health.<br><br>On May 22, 2018, as a result of concerns articulated by medical staff, Providence, as the employer, placed Dr. A on administrative leave and initiated an independent analysis of certain concerns articulated as to Dr. A with regard to certain specific patients. On November 13, 2018, Dr. A submitted his letter of resignation to Providence, which Providence accepted. Providence, as the employer, did not report Dr. A. to the National Practitioner Data Bank or the Washington State Department of Health.<br><br>3. On 09/22/22 at 10:50 AM during an interview with the investigator, the Regional Director of Medical Staff Services (Staff #3) stated that the two surgeons were not reported to the National Provider Data Base or Department of Health by the hospital. | B 700 | | |

State Form 2567
STATE FORM                    6899         CMY111              If continuation sheet 3 of 3

Received 12/9/22 11:54 Am
Approved 12/09/22 12:05 PM
[signature] Barbara Blanchard-Edwards

# Providence
## St Mary Medical Center

### Plan of Correction for State Licensing Investigation OST2567
### November 14, 2022

| Tag # | How the Deficiency Will Be Corrected | Responsible Individual | Estimated Date of Correction | Monitoring Procedure | Target for Compliance |
|---|---|---|---|---|---|
| B-007 | PSMMC will contract with independent consulting group for a period of no less than 5 years to identify and work through processes of medical staff quality control to include timely and thorough reporting. | Director of Medical Staff Services | Completed 9/27/2022 | Validation of presence of contract by email notification to Medical Staff.* | 100% |
| | Education on management of provider issues and appropriate reporting will be completed by Medical Staff Leadership. | Director of Medical Staff Services | 01/31/2023 | Completion Rate where N=number of medical staff leaders who have completed training and D=total number of medical staff leaders* | 90% |
| | A document summarizing definitions of unprofessional conduct requiring reporting as defined by RCW 18.310.180 will be included in all Medical Staff Committee Attendee Packets for a minimum of 12 months. | Medical Staff Office Coordinator | 01/31/2023 | Monthly audit of attendee packets where N=number of packets observed with document included and D=number of packets audited* | 95% |

*Completion and ongoing monitoring of these corrections will be reported to the Quality Council monthly and cascaded to Community Mission Board at least annually.