1  William A. Gilbert, WSBA #30592
   Gilbert Law Firm, P.S.
2  421 W. Riverside Ave, Suite 353
   Spokane, WA 99201
3  T: 509·321·0750
   F: 509·343·3315
4  E: bill@wagilbert.com
   Attorney for Plaintiffs

5

6

7

8
                                              The Honorable James L. Robart
9
          UNITED STATES DISTRICT COURT OF THE WESTERN
10               DISTRICT OF WASHINGTON AT SEATTLE

11  CAROLINE ANGULO, a single person, ERIC      NO.  22-CV-00915-JLR
    KELLER, a single person, EBEN NESJE, a
12  single person, KIRK SUMMERS, a single
    person, CHRISTINE BASH, individually and as   **TRIAL BY JURY REQUESTED**
13  personal representative of the ESTATE OF
    STEVEN BASH, RAYMOND SUMERLIN JR.
14  and MARYANN SUMERLIN, a married            **CLASS ACTION COMPLAINT**
    couple, and MARTIN WHITNEY and            **(THIRD AMENDED)**
15  SHERRYL WHITNEY, a married couple,

16                         Plaintiffs,

17           v.

18  PROVIDENCE HEALTH & SERVICES
    WASHINGTON, a non-profit Washington
19  Corporation, also d/b/a PROVIDENCE ST.
    MARY MEDICAL CENTER; Dr. JASON A.
20  DREYER, DO, and JANE DOE DREYER,
    husband and wife and the marital community
21  thereof; Dr. DANIEL ELSKENS DO, and
    JANE DOE ELSKENS, husband and wife and
22  the marital community thereof; and
    JOHN/JANE DOES 1-10, and any marital
23  communities thereof,

                           Defendants.
24

PLAINTIFFS' CLASS ACTION COMPLAINT          **GILBERT LAW FIRM, P.S.**
(THIRD AMENDED)                             421 W. RIVERSIDE, AVE., SUITE 353
NO. 22-CV-00915-JLR                         SPOKANE, WA 99201
PAGE 1 OF 71                                (509) 321-0750 • FAX (509) 343-3315

1    Plaintiffs allege:

2                                    **I.    INTRODUCTION**

3          1.1    For over 100 years, Defendant PROVIDENCE HEALTH & SERVICES

4    WASHINGTON (hereinafter "PROVIDENCE") has been a member of the medical community in

5    the state of Washington, including Eastern Washington. Upon information and belief,

6    PROVIDENCE has owned and operated St Mary Medical Center (SMMC), a hospital located in

7    Walla Walla, Washington since 1880. Providence St. Joseph Health ("Providence St. Joseph

8    Health") is a Washington non-profit corporation that shares its headquarters with PROVIDENCE.

9          1.2    PROVIDENCE promotes itself as providing excellent, reliable, and necessary

10   medical care.

11         1.3    PROVIDENCE employed Dr. DANIEL ELSKENS DO, and Dr. JASON A.

12   DREYER, DO, as neurosurgeons in its neurosurgery department at SMMC.

13         1.4    Upon information and belief, in order to increase its own profits, PROVIDENCE

14   instituted a pattern and practice that encouraged Dr. JASON A. DREYER, DO and Dr. DANIEL

15   ELSKENS DO to conduct unsupervised spine surgeries at high-volume rates using a productivity

16   metric with no cap on compensation that provided the neurosurgeons financial incentives to

17   perform a high volume of surgical procedures of greater complexity.

18         1.5    As a result of this pattern and practice, Dr. JASON A. DREYER, DO became one

19   of the highest producing neurosurgeons in the entire PROVIDENCE system, earning between $2.5

20   and $2.9 million a year for the years he was employed; at one point making him the second highest

21   paid employee in all of Providence, with only the CEO of the Corporation earning more.

22         1.6    Both neurosurgeons ultimately resigned from PROVIDENCE (Dr. DANIEL

23   ELSKENS DO on or about May 8, 2017, and Dr. JASON A. DREYER, DO on or about November

24

PLAINTIFFS' CLASS ACTION COMPLAINT                          **GILBERT LAW FIRM, P.S.**
(THIRD AMENDED)                                            421 W. RIVERSIDE, AVE., SUITE 353
NO. 22-CV-00915-JLR                                              SPOKANE, WA 99201
PAGE 2 OF 71                                              (509) 321-0750 • FAX (509) 343-3315

13, 2018). The resignations came on the heels of internal and DOH administrative investigations into allegations that the surgeons were performing medically unnecessary and otherwise improper spine surgeries and conducting surgical procedures below the standard of care.

1.7    After the resignation of Dr. DREYER and Dr. ELSKENS, a third neurosurgeon employed by SMMC, Dr. David Yam, resigned and filed a complaint under the False Claims Act alleging Providence, DREYER, and ELSKENS were committing medical billing fraud with government funded insurance providers.

1.8    On April 12, 2022, PROVIDENCE announced a settlement with the United States Department of Justice ("DOJ") for $22.7 million, to resolve allegations that PROVIDENCE fraudulently billed Medicare, Medicaid, the Washington Health Care Authority, and other government health care programs for neurosurgery procedures by Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO that did not meet criteria for reimbursement, that were medically unnecessary, or that were otherwise improper.

1.9    For the first time, on April 12, 2022, PROVIDENCE admitted publicly that it was aware of concerns raised by PROVIDENCE personnel about these neurosurgeons' negligent, violative, unethical, and fraudulent treatment practices and that it had investigated those concerns, but that it nonetheless allowed both neurosurgeons to resign rather than report them to the National Practitioner Data Bank ("NPDB") or Washington State Department of Health ("WDOH") as required by law.  For example, under 42 U.S.C. § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986, and the NPDB guidelines, health care entities are required to report surrenders of physician clinical privileges while they are under investigation. Under these laws, PROVIDENCE had a statutory and common law duty to disclose, including to the members of the

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 3 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

class for their benefit in making material decisions about their healthcare.  These failures to disclose by Defendants were intended to, and did, prevent discovery of their claims by Plaintiffs.

1.10    Upon information and belief, PROVIDENCE was aware, or should have been aware at or near the time of hiring these neurosurgeons that they consistently put patients' health and safety at dire risk while making decisions based upon personal financial recovery rather than medical necessity; yet PROVIDENCE actively concealed that information up to and including failing to report them to the NPDB or the WSDH and allowing the neurosurgeons to depart their employ with a publicly clean record.

1.11    According to the United States Department of Justice, the victims of these medically unnecessary or otherwise improper surgeries by these neurosurgeons' number in the "hundreds."[1]

1.12    After his resignation from PROVIDENCE, Dr. JASON A. DREYER, DO was hired by MultiCare Health System in Spokane, Washington [MULTICARE], where he continued his pattern and practice of negligent, violative, unethical, and fraudulent treatment practices.

1.13    Although, upon information and belief, MULTICARE knew or should have discovered concerns related to Dr. JASON A. DREYER, DO's gross misconduct at PROVIDENCE through the extensive background investigation that is required before hiring/retaining a surgeon and providing privileges to practice in its medical facilities, it was reasonably foreseeable that PROVIDENCE's failure to report Dr. JASON A. DREYER, DO to the NPDB or WDOH would prevent or delay discovery of the  faulty medical care that Dr. JASON

---

[1] Hill, *Providence to Pay $22.7 Million to Settle Medicare, Medicaid Fraud Whistleblower Complaint Brought Against two Walla Walla Neurosurgeons,* Spokes. Rev. (April 13, 2022 – updated April 14, 2022) https://www.spokesman.com/stories/2022/apr/13/providence-to-pay-227-million-to-settle-medicare-m/

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 4 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

A. DREYER, DO had provided  previous patients to the financial benefit of PROVIDENCE; which would result in continued harm to future patients; and, would impact the care that his previous patients received in follow-up to Dr. JASON A. DREYER, DO's faulty and fraudulent medical care.

1.14    In response to the pattern of negligent, violative, unethical, and fraudulent treatment practices of Dr. JASON A. DREYER, DO under the direct authority of PROVIDENCE, and fraudulent concealment thereof by all DEFENDANTS, this cause of action is brought by the class of patients whose lives have been forever changed as a result of the actions or omissions of the DEFENDANTS herein named.

1.15    Filed as a Class Action, this Cause captures the broad body of patients and their families impacted by the negligent, violative, unethical, and fraudulent treatment practices of Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO under the direct authority of PROVIDENCE, and fraudulent concealment thereof by all DEFENDANTS, and allows for redress of those named and unnamed members of the Class.

1.16    The Class Action allegations assert claims on behalf of the PROVIDENCE and MULTICARE patients who suffered damages due to DEFENDANTS' negligent, violative, unethical, and fraudulent treatment practices which DEFENDANTS concealed from, *inter alia*, Plaintiffs for their financial gain, in violation of the law.

1.17    Set forth herein below, named Plaintiffs designated in Section II as class representatives ("Class Plaintiffs") bring claims individually and on behalf of the Class.

1.18    For purposes of the causes of action, damages, and relief requested in this lawsuit, all Plaintiffs are referred to collectively, as they have all been the victims of the same course of conduct by DEFENDANTS detailed below.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 5 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

## II.    PARTIES

2.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 1.18 as if fully set forth herein.

2.2    Plaintiff CAROLINE ANGULO, a single person, representing herself and the Settlement Class, was at all times relevant hereto residing in Walla Walla County, Washington.

2.3    Plaintiff ERIC KELLER, a single person, representing himself and the Non-Settlement Class/Providence, was at all times relevant hereto residing in Union County, Oregon.

2.4    Plaintiff EBEN NESJE, a single person, representing himself and the Settlement Class, was at all times relevant hereto residing in Columbia County, Washington.

2.5    Plaintiff KIRK SUMMERS, representing himself and the Settlement Class, was at all times relevant hereto residing in Columbia County, Washington.

2.6    Plaintiff CHRISTINE BASH, individually and as personal representative of the ESTATE OF STEVEN BASH, is the surviving wife of STEVEN BASH and the personal representative of the ESTATE OF STEVEN BASH with probate pending in Walla Walla County, representing herself and the ESTATE, is a member of the Settlement Class and was at all times relevant hereto a resident of Walla Walla County, Washington. STEVEN BASH was also a resident of Walla Walla County at the time of his death at the age of 51.

2.7    Plaintiffs RAYMOND SUMERLIN JR. and MARYANN SUMERLIN, representing themselves and the Non-Settlement Class/MultiCare, were at all times relevant hereto a married couple, residing in Walla Walla County, Washington.

2.8    Plaintiffs MARTIN WHITNEY and SHERRYL WHITNEY, representing themselves and the Non-Settlement Class/MultiCare, were at all times relevant hereto a married couple, residing in Stevens County, Washington.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 6 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

2.9    Plaintiffs, on behalf of themselves and those similarly situated, bring this action against DEFENDANTS for violations of

- RCW 9A.82.080 and 9A.82.100 (Criminal Profiteering)

- RCW 19.86 et seq. (Unfair Business Practices/Consumer Protection) ("CPA")

- RCW 7.70 et seq. ("Actions for Injuries Resulting from Health Care"), and

- Tort actions, including, without limitation, corporate negligence and statutory duty violations, see RCW 70.41.210, as set forth below.

2.10    At all relevant times, each Plaintiff, named and unnamed, was "a person who sustain[ed] injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by an offense defined in" RCW 9A.82.080. See RCW 9A.82.100.

2.11    At all relevant times, each Plaintiff, named and unnamed, was a "person who was injured in his or her business or property" by a violation of the CPA. See RCW 19.86.090.

2.12    At all relevant times, each Plaintiff, named and unnamed, was a person to whom DEFENDANTS owed a duty, either through RCW 7.70, corporate negligence, or through common law/statute, *e.g.*, RCW 70.41.210, which requires hospitals to report to the Department of Health, any restriction or termination of the practice of a health care practitioner while the practitioner is, *inter alia*, under investigation or in return for the hospital not taking action.

2.13    Defendant PROVIDENCE HEALTH & SERVICES WASHINGTON also d/b/a PROVIDENCE ST. MARY MEDICAL CENTER (hereinafter PROVIDENCE) is a Washington nonprofit corporation with its primary place of business located 1801 Lind Avenue, Southwest, Renton, WA 98057, which is geographically located in King County, Washington. PROVIDENCE has offices to conduct business, regularly conducts business, and manages medical

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 7 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    facilities across the state of Washington.

2        2.14    At all relevant times hereto, Defendant JASON A. DREYER, DO was a licensed

3    physician, and citizen of Washington residing in, and practicing medicine in Walla Walla County

4    or Spokane County, Washington, as an employee or ostensible agent of either PROVIDENCE or

5    at MultiCare Health System D/B/A MultiCare Deaconess Hospital / Rockwood Clinic (collectively

6    MULTICARE). At all times relevant hereto, JASON A. DREYER, DO held himself out to be a

7    medical care provider whose services were offered to the public for compensation.   It is unknown

8    if JASON A. DREYER, DO is married, therefor, Plaintiffs allege that if he is married, all acts or

9    omissions committed by JASON A. DREYER, DO were done both for, and on behalf of, the

10   community composed of JASON A. DREYER, DO and his wife, JANE DOE DREYER.

11       2.15    At all relevant times hereto, Defendant DANIEL ELSKENS, DO was a licensed

12   physician, and citizen of Washington, residing in, and practicing medicine in Walla Walla County,

13   Washington, as an employee or ostensible agent of PROVIDENCE. At all times relevant hereto,

14   DANIEL ELSKENS, DO held himself out to be a medical care provider whose services were

15   offered to the public for compensation. It is unknown if DANIEL ELSKENS, DO is married,

16   therefor, Plaintiffs allege that if he is married, all acts or omissions committed by DANIEL

17   ELSKENS, DO were done both for, and on behalf of, the community composed of DANIEL

18   ELSKENS, DO and his wife, JANE DOE ELSKENS.

19       2.16    Upon information and belief, JOHN / JANE DOE employees or agents of

20   PROVIDENCE (and any spouses/marital communities thereof) reside and/or work in the State of

21   Washington and include but are not limited to those listed in the 2020 *qui tam* action that resulted

22   in the 2022 settlement between PROVIDENCE and the DOJ (i.e., PROVIDENCE's Chief Medical

23   Officer and key PROVIDENCE administrators in Walla Walla, Spokane, and Renton, WA).  See

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 8 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

*United States ex rel. Yam v. Providence Health & Services Washington*, Case No. 4:20-cv-05004-SMJ (E.D. Wash.), Settlement Agreement dated March 2022 (unsealed April 11, 2022).

2.17    At all relevant times, DEFENDANTS concealed and otherwise avoided release of information to the Plaintiffs of their negligent and/or illicit activity with regard to the unnecessary and/or otherwise improper medical treatments of Dr. JASON A. DREYER, DO and Dr. DANIELELSKENS, DO, including DEFENDANTS' failure to report the neurosurgeons to proper authorities as legally required.

2.18    At all relevant times, the first notice that any Plaintiff, named and unnamed, received regarding DEFENDANTS' actions was April 12, 2022 – the day the DOJ announced its settlement with PROVIDENCE for restitution for false health care payments, and the agreed-upon upon facts elicited thereto.

### III.    JURISDICTION AND VENUE

3.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 2.15 as if fully set forth herein.

3.2    The State of Washington has subject matter jurisdiction over this action pursuant to RCW 2.08.010 because most alleged acts occurred in this State.  In addition, upon information and belief, more than 2/3 of the members of the proposed class are citizens of Washington.

3.3    Jurisdiction and venue are proper in and for the Superior Court of Washington for King County because at all times relevant hereto, Defendant PROVIDENCE's controlling business offices were located in King County, Washington and removal to federal court is not authorized or justified under 28 U.S.C. § 1453.

### IV.    TIMELINE AND FACTS

4.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 9 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    incorporate by reference paragraphs 1.1 through 3.3 as if fully set forth herein.

2        4.2    Between July 1, 2013, and November 13, 2018, PROVIDENCE employed Dr.

3    JASON A. DREYER, DO as a neurosurgeon at SMMC in Walla Walla.

4        4.3    PROVIDENCE employed Dr. DANIEL ELSKENS, DO between November 2015

5    and May 2017 as a neurosurgeon at SMMC in Walla Walla.

6        4.4    Upon information and belief, PROVIDENCE encouraged Dr. JASON A.

7    DREYER, DO and Dr. DANIEL ELSKENS, DO to perform a high volume of surgical procedures

8    of greater complexity to increase PROVIDENCE profits.

9        4.5    Upon information and belief, PROVIDENCE encouraged Dr. JASON A.

10    DREYER, DO and Dr. DANIEL ELSKENS, DO to conduct spine surgeries at high-volume rates

11    by applying a productivity bonus metric scheme that provided the surgeons financial incentive to

12    perform a high volume of surgical procedures of greater complexity.

13        4.6    Upon information and belief, Dr. JASON A. DREYER, DO and Dr. DANIEL

14    ELSKENS, DO did conduct complex spine surgeries at high-volume rates with intent and purpose

15    of collecting productivity incentive money.

16        4.7    DEFENDANTS' actions resulted in the performance of medical treatments that did

17    not meet criteria for health care insurance reimbursement, that were medically unnecessary, or that

18    were otherwise improper, for which improper submissions for payment to health insurance entities

19    occurred, including to e.g., Medicare and Medicaid, all for DEFENDANTS' financial benefit.

20        4.8    Dr. DANIEL ELSKENS, DO resigned from PROVIDENCE on or about May 8,

21    2017.

22        4.9    Upon information and belief, Dr. DANIEL ELSKENS, DO's resignation was

23    triggered, at least in part, by allegations that he was performing unnecessary surgeries in order to

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 10 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

capitalize on the PROVIDENCE productivity bonus metric scheme.

4.10     Dr. JASON A. DREYER, DO resigned from PROVIDENCE on or about November 13, 2018.

4.11     Upon information and belief, Dr. JASON A. DREYER, DO's resignation was triggered, at least in part, by allegations that he was performing unnecessary surgeries in order to capitalize on the PROVIDENCE productivity bonus metric scheme.

4.12     After November 13, 2018, and until March 2021, Dr. JASON A. DREYER, DO worked for MULTICARE as an employee and/or contractor.  While at MULTICARE, Dr. JASON A. DREYER, DO continued the pattern and practice established at PROVIDENCE of conducting high-volume surgeries that did not meet criteria for health care insurance reimbursement, that were medically unnecessary, or that were otherwise improper, all for the financial benefit of Dr. JASON A. DREYER, DO and MULTICARE.

4.13     On January 10, 2020, Dr. David Yam, M.D., as Relator, and on behalf of the United States and Washington State, filed a complaint (the 2020 *qui tam* complaint) in the Eastern District of Washington, alleging violations of the False Claims Act against PROVIDENCE.  See *United States ex rel. Yam v. Providence Health & Services Washington*, Case No. 4:20-cv-05004. (Complaint attached as Exhibit 1).

4.14     The allegations in the 2020 *qui tam* complaint were based upon the fraudulent billing for medically unnecessary and otherwise improper care provided by PROVIDENCE via its agents / employees Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO.

4.15     As statutorily required, this 2020 *qui tam* complaint was filed under seal.

4.16     By notice dated January 13, 2022, the United States Justice Department intervened in the 2020 *qui tam* complaint. This also was done under seal and not made public, per statute.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 11 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.17    The 2020 *qui tam* complaint alleged, and PROVIDENCE later admitted salient facts showing PROVIDENCE was billing the federal and state governments for these neurosurgeons' medical services that did not meet criteria for reimbursement, were medically unnecessary, and/or were otherwise improper.

4.18    On or about March 17, 2022, PROVIDENCE entered into a Settlement Agreement (SA) with the United States Government and the State of Washington.[2] The agreement calls for PROVIDENCE to pay a total of $22,690,458 ($10,459,388 of which is specified as restitution) along with remedies and protocols to ensure, *inter alia*, patients' future safety. The SA does not require any payment from Drs. Dreyer or Elskens.

4.19    As detailed in the SA, Dr. JASON A. DREYER, DO was accused of (a) falsifying, exaggerating, and/or inaccurately diagnosing patients' true medical conditions in order to obtain reimbursement for surgical procedures performed by him; (b) performing certain surgical procedures that did not meet the medical necessity guidelines and requirements for reimbursement set forth by Medicare and other government health insurance programs; (c) "over-operating," i.e., performing a surgery of greater complexity and scope than was indicated and medically appropriate; (d) jeopardizing patient safety by attempting to perform an excessive number of overly complex surgeries; (e) endangering patients' safety; (f) creating an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries; (g) performing surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and (h) failing to adequately and accurately document certain procedures, diagnoses, and complications.

---

[2] See Settlement Agreement Attached as Exhibit 2.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 12 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1 | Also as detailed in the SA, Dr. DANIEL ELSKENS, DO was accused of Items (e) through (h).

2 |     4.20    As detailed in the SA, PROVIDENCE accepted payments from federal and state

3 | health care sources (e.g., Medicare, Medicaid, the FEHBP, TRICARE, and VA Community Care)

4 | while being aware of these allegations against these neurosurgeons.

5 |     4.21    These facts were stipulated by PROVIDENCE in the SA as true and accurate.

6 |     4.22    As a result of this pattern and practice of PROVIDENCE, Dr. JASON A. DREYER,

7 | DO was one of the highest producing neurosurgeons in the entire 7-state PROVIDENCE system,

8 | earning between $2.5 and $2.9 million a year for the years where he was employed.

9 |     4.23    According to the SA, despite knowledge of these neurosurgeons' misconduct, and

10 | despite placing them each on administrative leave due to concerns listed in paragraph 4.19 above,

11 | PROVIDENCE allowed Dr. DANIEL ELSKENS, DO and Dr. JASON A. DREYER, DO to resign

12 | instead of terminating their employment.

13 |     4.24    According to the SA, despite having knowledge of these neurosurgeons'

14 | misconduct, PROVIDENCE reported neither neurosurgeon to legal authorities (e.g., NPDB or

15 | WDOH). This occurred despite the legal obligation to report, see 42 U.S.C. § 11133(a)(1) and

16 | RCW 70.41.210, and would later be the basis for a finding by the WDOH substantiating a violation

17 | of this reporting obligation.

18 |     4.25    According to the SA, despite having knowledge of these neurosurgeons'

19 | misconduct, PROVIDENCE took no action to refund Medicare or Medicaid for surgical

20 | procedures performed by either Dr. DANIEL ELSKENS, DO or Dr. JASON A. DREYER, DO

21 | for which PROVIDENCE had previously sought and received reimbursement.

22 |     4.26    Upon information and belief, PROVIDENCE also:

23 |     4.26.1  accepted payments from private insurance health care sources using similar

24 |

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 13 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

or the same criteria for payment/non-payment of surgeries (including requirements that medical treatment be necessary or be otherwise proper);

4.26.2 did so while being or becoming aware of the allegations against these neurosurgeons as outlined above and in the 2020 *qui tam* complaint and the SA; and

4.26.3 took no action at any time to refund any private insurance health care source or any self-funded patients for any surgical procedures performed by either Dr. DANIEL ELSKENS, DO or Dr. JASON A. DREYER, DO for which PROVIDENCE had previously sought and received reimbursement.

4.27 Upon information and belief, PROVIDENCE was aware or should have been aware at or near the time of hiring these neurosurgeons that the neurosurgeons put patients at dire risk and performed these kinds of medically unnecessary or otherwise improper procedures, yet PROVIDENCE presumably concealed that information and any and all of its knowledge regarding this unprofessional conduct until April 12, 2022, when the Settlement Agreement was made public.

4.28 In addition to the agreed-upon Settlement Agreement statements regarding DANIEL ELSKENS, DO, the 2020 *qui tam* complaint specifically alleged as follows:

4.28.1 The relator, Dr. Yam, alleged that he reviewed Dr. Elskens' work; the review revealed Dr. Elskens committed severe surgical errors, including by operating on incorrect spinal sections, resulting in post-operation complications necessitating emergency remedial surgery;

4.28.2 Dr. Yam reported the errors to Providence's chief medical officer, recommending that Dr. Elskens be terminated;

4.28.3 Providence, after rejecting the recommendation, suspended Dr. Elskens when Dr. Yam discovered Dr. Elskens botched an additional surgery, nearly paralyzing the

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 14 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    patient nearly a year later after many more patients were adversely harmed.

2    4.29    In addition to the agreed-upon Settlement Agreement statements regarding JASON

3    A. DREYER, DO, the 2020 *qui tam* complaint specifically alleged:

4    4.29.1  After Providence failed to take seriously his initial allegations against Dr.

5    Elskens, Dr. Yam began reviewing the work of his fellow neurosurgeon with greater

6    scrutiny and, as such reviewed the work of Dr. Jason Dreyer because Dr. Dreyer, who

7    studied under Dr. Elskens, spoke highly of Dr. Elskens and recommended Dr. Elskens to

8    join the group in Walla Walla;

9    4.29.2  Dr. Yam's review of Dr. Dreyer revealed that Providence (through Dr.

10   Dreyer) was billing the federal government for medical services which neither Dr. Dreyer

11   nor Providence performed; in addition, Dr. Dreyer was fabricating patient diagnoses and

12   treatments to justify complex operations and to increase billing and reimbursement for both

13   himself and Providence; Dr. Dreyer would knowingly, and routinely, falsify patient records

14   to justify as medically necessary certain expensive surgical procedures; Providence and Dr.

15   Dreyer carried out this improper practice by subjecting patients to risky procedures that

16   were legitimized through fraudulent diagnoses;

17   4.29.3  In one instance, for example, Providence and Dr. Dreyer claimed a patient

18   receiving federally funded treatment suffered from a severe deformity that required

19   complex surgery, which Dr. Dreyer performed at great risk to the patient when, in fact, the

20   deformity was documented not to exist in the patient;

21   4.29.4 Dr. Yam believed, and alleged, that Dr. Dreyer's improper practices

22   provided a windfall to Providence at the federal government's expense which likely

23   amounted to tens of millions of dollars and likely more;

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 15 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.29.5  When Dr. Yam initially reported his concerns to Providence in November 2017, Providence assured him action would be taken but that action was insufficient, causing Dr. Yam to allege that the response was designed to allow Providence to continue to benefit from the aforementioned windfall;

4.29.6  Dr. Dreyer continued his same pattern and practice until Dr. Yam again complained in April 2018, explicitly using the words "fraud," "malpractice," and "harm" in emails to key Providence administrators in Walla Walla, Spokane, and Renton, Washington.

4.29.7  Providence responded to Dr. Yam's renewed complaint through a flawed investigation which, Dr. Yam was told, revealed no evidence of false billing, yet Providence administrators allowed for the voluntary suspension of Dr. Dreyer

4.30    Historically, repeatedly, and currently, PROVIDENCE sets itself out to the public in its promotional material as a caring, moral, health care provider with integrity that puts patients' needs first (not its own financial gain). For example, it has made the following public statements:

4.30.1  "We strive to do what's right for people, all people, but especially the poor and vulnerable."

4.30.2  "We don't take the easiest answer, we look for the right answer."

4.30.3  "Integrity means you are always approaching things with a moral viewpoint.  In our case, a moral viewpoint that is adjusted for the benefit of the many, and not the few."

4.30.4  "At Providence we see more than patients, we see the life that pulses through us all. That's why we're dedicated to a holistic approach to medicine that employs not only the most advanced treatments to improve outcomes, but also puts compassion and

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 16 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

humanity at the heart of every interaction."

4.30.5 "We use our voice to advocate for vulnerable populations and needed reforms in health care. We are also pursuing innovative ways to transform health care by keeping people healthy, and making our services more convenient, accessible and affordable for all. In an increasingly uncertain world, we are committed to high-quality, compassionate health care for everyone, regardless of coverage or ability to pay. We help people and communities benefit from the best health care model for the future – today."

4.30.6  "As a comprehensive health care organization, we are serving more people, advancing best practices, and continuing our more than 100-year tradition of serving the poor and vulnerable. Delivering services across seven states, Providence is committed to touching millions of more lives and enhancing the health of the American West to transform care for the next generation and beyond."

4.30.7  "We set the highest standards for ourselves and our ministries. Through transformation and innovation, we strive to improve the *health* and quality of life…"

4.31    These representations were and are designed to entice the public to rely upon PROVIDENCE for medical care without reservation or concern about PROVIDENCE's care and protection of their best and highest health.

4.32    Rather than inform Plaintiffs and the public of the scheme at SMMC of, *inter alia*, medically unnecessary surgeries for financial gain (described herein), PROVIDENCE concealed the scheme and maintained secrecy, to the extent of failing to report the neurosurgeons, including those under investigation, to proper authorities, and did so to maintain at all costs its squeaky-clean public persona, thus engaging in deceptive and unfair acts in order to market its health care services to new patients.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 17 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.33    Even today, PROVIDENCE continues to engage in deceptive and unfair acts by publicly minimizing the SMMC situation (including the $22.7 million settlement and the safety precautions it now must implement across all its facilities) by falsely calling it an "isolated incident in Walla Walla" on April 12, 2022, despite the extensive damage done to its patients, despite its fiduciary obligations to those patients, and despite the fact that senior administrators from Walla Walla, Spokane, and Renton headquarters were informed about Walla Walla as early as 2018. A true and correct copy of this April 12, 2022 Statement is attached as Exhibit 3.

4.34    Since the filing of the Class Action Complaint on May 16, 2022, PROVIDENCE continued to engage in its deceptive and unfair acts by publishing a full-page advertisement on June 5, 2022, in the Walla Walla Union Bulletin that minimizes, misleads, and/or inaccurately describes the aforementioned events and PROVIDENCE's responsibility therein, including its fiduciary duties to patients. A true and correct copy of this June 5, 2022 full-page advertisement is attached as Exhibit 4.

4.35    PROVIDENCE's profit over patient safety practice ultimately resulted in patients of PROVIDENCE and MULTICARE suffering permanent, debilitating harm as a result of neurosurgeons Dr. DANIEL ELSKENS, DO and Dr. JASON A. DREYER, DO's negligent, violative, unethical, and fraudulent treatment practices; the value of which will be set forth fully at trial.

4.36    By and through their fraudulent, violative, unethical, and negligent practices, PROVIDENCE's continued profit over patient safety practice resulted in actual financial loss to the named Plaintiff's and associated class of Plaintiffs as set forth herein in dollar amounts that will be set forth fully at trial.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 18 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1

## V.    INDIVIDUAL PLAINTIFFS / CLASS REPRESENTATIVES

2      5.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

3  incorporate by reference paragraphs 1.1 through 4.36 as if fully set forth herein.

4      5.2    Facts associated with individual class representatives as set forth below are

5  representative of medical negligence, and deceptive patterns and practices employed by

6  DEFENDANTS, to entice patients into agreeing to medically unnecessary or otherwise improper

7  surgical procedures and related medical care.

8                          **CAROLINE ANGULO**

9      5.3    Plaintiff CAROLINE ANGULO, 59 years old, was a patient of PROVIDENCE at

10  SMMC, whose surgery was negligent, medically unnecessary or otherwise improper, and whose

11  medical expenses should either be a part of the Settlement Agreement restitution or would have

12  been if the DOJ and PROVIDENCE had not settled.

13      5.4    Ms. ANGULO's insurance at all relevant times was Medicare or Medicaid.

14      5.5    In or around the spring of 2016, Ms. ANGULO consulted with Dr. DANIEL

15  ELSKENS, DO at SMMC because she was experiencing lower back pain.

16      5.6    During the consultation, Dr. ELSKENS informed Ms. ANGULO that, in his

17  opinion, her neck looked worse than her back, and he recommended cervical surgery instead of

18  lumbar surgery.

19      5.7    Based on, and in reliance of, the advice and stated opinion of Dr. ELSKENS, DO,

20  Ms. ANGULO agreed to the cervical surgery.

21      5.8    Ms. ANGULO's cervical surgery took place on or about April 25, 2016.  The

22  procedure, performed by Dr. ELSKENS, DO, included cervical fusion at levels C5 through C7,

23  and was performed using the anterior approach only.  He also did a carpel tunnel surgery during

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 19 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    the same surgery.

2    5.9    The surgery went poorly. Ms. ANGULO had to remain in the hospital for over a

3    month. Her vocal cords were damaged, and she could not speak. She has never recovered from

4    this surgery. Moreover, during her follow-up treatment, Dr. ELSKENS, DO was suddenly

5    unavailable, leaving Ms. ANGULO without a neurosurgeon.

6    5.10    Upon information and belief, this was a negligent, medically unnecessary and/or

7    otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its

8    agent / employee DANIEL ELSKENS, DO, to perform such unnecessary or otherwise improper

9    procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Ms.

10   ANGULO.

11   5.11    In or around the fall of 2017, Ms. ANGULO's primary care provider referred her

12   to Dr. JASON A. DREYER, DO, at SMMC because of her continuing lower back pain. During

13   the consultation, Dr. JASON A. DREYER, DO, informed Ms. ANGULO that he saw a "big

14   problem" with her neck that required more surgery.

15   5.12    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Ms.

16   ANGULO agreed to his recommendation.

17   5.13    On or about November 18, 2017, Dr. DREYER performed a cervical/thoracic

18   fusion on Ms. ANGULO.  This surgery was both anterior and posterior according to what the

19   hospital provided her, the fusion ranged from either levels C3 through C7, or C3 through T2 – she

20   was provided with medical ID cards for both.

21   5.14    Upon information and belief, this was a negligent, medically unnecessary and/or

22   otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its

23   agent / employee JASON A. DREYER, DO, to perform such medically unnecessary or otherwise

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 20 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Ms. ANGULO.

5.15    As a result of these unnecessary and otherwise improper surgeries, Ms. ANGULO has suffered and continues to suffer general and special permanent damages, including but not limited to: job loss (she had been a Certified Nursing Assistant for over 15 years prior to the surgeries); a designation of disability (SSDI); inability to walk; sitting, standing and laying are all difficult; nerve problems; and choking when she eats (she must stay calm in order for her food to go down). Her pain levels range from a level of 6 on a good day to a 10 on a bad day (1 being minimal pain and 10 being unbearable pain).  She continues to have no relief for her pain and is permanently damaged. Botox treatments for her constant pain made her unable to breathe and required three paramedic-transported emergency trips to the hospital.

5.16    Prior to April 12, 2022, Ms. ANGULO was unaware of PROVIDENCE's admission of salient facts as outlined herein and in its settlement with the DOJ.

5.17    Upon information and belief, on a more likely than not basis, the damage done by PROVIDENCE, DANIEL ELSKENS, DO, and JASON A. DREYER, DO through their negligent, medically unnecessary, and otherwise improper procedures to Ms. ANGULO is permanent and irreversible.

## **ERIC KELLER**

5.18    Plaintiff ERIC KELLER, 56 years old, was a patient of PROVIDENCE at SMMC, whose surgery was negligent, medically unnecessary or otherwise improper. Mr. KELLER's insurance at all relevant times was the private insurance company of Regence Blue Shield of Oregon.

5.19    In or around the summer of 2017, Mr. KELLER consulted with PROVIDENCE via

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 21 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    its agent / employee JASON A. DREYER, DO at SMMC because he was experiencing lower back

2    pain.

3        5.20    While discussing the pain and discomfort in his lower back, JASON A. DREYER,

4    DO and Mr. KELLER discussed a prior cervical fusion Mr. KELLER had many years ago that

5    was successful and was causing him no pain or difficulty.

6        5.21    JASON A. DREYER, DO advised Mr. KELLER that what he really needed was

7    surgery on his neck before any lumbar surgery.

8        5.22    When Mr. KELLER advised Dr. DREYER "my neck isn't the problem," Dr.

9    DREYER informed him he had more wrong with his neck then he thought he did.  Dr. Dreyer

10   went on to tell Mr. KELLER his neck was so unstable that he risked paralysis during any proposed

11   lumbar surgery if he did not agree to the cervical surgery first.  Dr. DREYER informed him he

12   would be turning him during the lumbar surgery and it would put pressure on the cervical spine

13   when he did this while under anesthesia.

14       5.23    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, and

15   fearing paralysis, Mr. KELLER agreed to the cervical surgery.

16       5.24    Mr. KELLER's cervical surgery took place in or around August 2017.  Following

17   this procedure, Mr. KELLER was not able to return to work.

18       5.25    Upon information and belief, this was a medically unnecessary or otherwise

19   improper procedure that was part of a pattern and practice of PROVIDENCE via its agent /

20   employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the

21   purpose of financial gain, resulting in foreseeable, permanent damages to Mr. KELLER.

22       5.26    Following the cervical spine surgery, Mr. KELLER again asked Dr. DREYER to

23   look at his lumbar region.  Dr. DREYER told Mr. KELLER he needed surgery on the lumbar

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 22 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    spine.

2        5.27    Thereafter, Mr. KELLER's insurance, Regence Blue Shield, would not clear

3    coverage for the procedure proposed.

4        5.28    On or about January 12, 2018, Dr. DREYER told Mr. KELLER the insurance

5    company did not want to cover the surgery. Dr. Dreyer told Mr. KELLER to come in to his office

6    the morning of January 17, and he (Dr. DREYER) would send him to the emergency room.

7    According to Dr. DREYER, the insurance company would have to pay for the procedure because

8    it would be indicated as an "emergency procedure."

9        5.29    Mr. KELLER followed the direction of Dr. DREYER. He was admitted to SMMC

10    through the emergency department.

11        5.30    On or about January 18, 2018, Dr. DREYER performed the lumbar surgery.

12        5.31    This surgery caused permanent and debilitating nerve damage.

13        5.32    Upon information and belief, PROVIDENCE via its agent / employee Dr. JASON

14    A. DREYER, DO, conducted this unnecessary or otherwise improper surgery on an emergency

15    basis in order to avoid insurance pre-authorization and to force Regence Blue Shield (Mr.

16    KELLER's private health insurer) to pay for the procedure without formal pre-authorization.

17        5.33    Upon information and belief, this was a medically unnecessary or otherwise

18    improper procedure that was part of a pattern and practice of PROVIDENCE via its agent /

19    employee JASON A. DREYER, DO, to perform such medically unnecessary/improper procedures

20    for the purpose of financial gain, resulting in foreseeable, permanent damages to Mr. KELLER.

21        5.34    As a result of these unnecessary and otherwise improper surgeries, Mr. KELLER

22    has suffered and continues to suffer general and special permanent damages, including but not

23    limited to: job loss (from Boise Cascade); a designation of disability (SSD); constant pain and

24

1    discomfort; constant groin sensitivity and pain; pain radiating down both legs into his feet; muscle

2    lock-ups (making him bedridden for days); significant difficulty walking; inability to sleep, sit or

3    stand for any period of time; fatigue; anxiety, and depression. He is on pain medication daily.

4          5.35    Prior to April 12, 2022, Mr. KELLER was unaware of PROVIDENCE's admission

5    of salient facts as outlined herein and in its settlement with the DOJ.

6          5.36    Upon information and belief, on a more likely than not basis, the damage done by

7    PROVIDENCE and JASON A. DREYER, DO to Mr. KELLER is permanent and irreversible.

8                                        **EBEN NESJE**

9          5.37    Plaintiff EBEN NESJE, 43 years old, was a patient of PROVIDENCE at SMMC,

10   whose surgery was negligent, medically unnecessary or otherwise improper. Mr. NESJE's

11   insurance at all relevant times was the Labor & Industries Washington State insurance.

12         5.38    Prior to surgical procedures performed by DR. DREYER, Mr. NESJE's personal

13   medical history included comorbidity conditions that are generally considered contraindications

14   when contemplating spine surgery, including that he weighed over 300 pounds (with a BMI over

15   40), chewed tobacco, and had sleep apnea.  Further, Mr. NESJE was only 34 years old at the time

16   of the surgery.

17         5.39    In or around the summer of 2014, Mr. NESJE consulted with PROVIDENCE via

18   its agent / employee JASON A. DREYER, DO at SMMC because he was experiencing lower back

19   pain.

20         5.40    Dr. DREYER informed Mr. NESJE that he needed a three-level fusion surgery (L3

21   to L4, L4 to L5, and L5 to S1), that Dr. DREYER could fix him without a problem and that, within

22   six months, Mr. NESJE would be back to work functioning at a one hundred percent capacity.

23         5.41    Upon information and belief, at least two of the fusions (L3 to L4 and L5 to S1)

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 24 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    were medically unnecessary, making this an overly complex surgery that was not indicated.

2    5.42    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Mr.

3    NESJE agreed to the three-level fusion lumbar surgery. This surgery was conducted on or about

4    August 14, 2014. The surgery was unsuccessful, and he was unable to return to work.

5    5.43    Upon information and belief, this was a medically unnecessary or otherwise

6    improper procedure that was part of a pattern and practice of PROVIDENCE via its agent /

7    employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the

8    purpose of financial gain, resulting in foreseeable, permanent damages to Mr. NESJE.

9    5.44    Mr. NESJE tried to follow all of Dr. DREYER's post-surgery instructions but

10    ended up in the hospital for three days because he was unable to get his pain under control. He had

11    to order a special chair because he could hardly move. He had a screw break a month after surgery;

12    Dr. DREYER informed him not to worry, and that it happened in 90 percent of all Dr. DREYER's

13    patients. Mr. NESJE was unable to get relief in his post-surgery care, other than briefly, with pool

14    therapy. When Mr. NESJE saw Dr. DREYER again, he learned he had another broken screw. Dr.

15    DREYER assured him that he would get better.

16    5.45    On or about July 12, 2016, Mr. NESJE consulted with Dr. Matthew Fewel, a

17    neurosurgeon in Richland, Washington at the time. Dr. Fewel recommended a possible revision

18    surgery as a result of placement of unnecessary failed hardware by Dr. DREYER, but only after

19    further workup, after Mr. NESJE stopped tobacco use and other pain medications used for pain

20    management.  Other consultations done after weight loss and quitting tobacco placed chances for

21    successful revision surgery very low.

22    5.46    Upon information and belief, Mr. NESJE was one of many former patients of Dr.

23    DREYER and PROVIDENCE who sought a second opinion from Dr. Fewel to obtain relief from

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 25 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

these medically unnecessary, overly complex or otherwise improper surgeries.  Upon information and belief, after multiple consultations with former PROVIDENCE/DREYER patients, Dr. Fewel was able to identify a pattern of misconduct and negligence.

5.47    On or about March 4, 2019, Dr. Fewel reported Dr. DREYER to the WDOH for this pattern of medically unnecessary, overly complex, or otherwise improper surgeries. Per Dr. Fewel's report, it had become clear to him that these improper surgeries were not an "isolated occurrence" and he had begun to keep a record of patients he encountered from Providence / SMMC and that he was limiting his report to WDOH to the 11 most egregious cases.

5.48    EBEN NESJE's file was among the 11 patient cases that Dr. Fewel reported.

5.49    Upon information and belief, Dr. Fewel's report resulted in the opening of a WDOH investigation which resulted in the reporting by WDOH expert Abhineet Chowdhary regarding serious concerns about JASON DREYER that resulted in the restriction of DR. DREYER's medical license in March 2021. Dr. DREYER's license remains restricted to this day.

5.50    Dr. Chowdhary reported Mr. NESJE's file as one of the top seven files reported by him to WDOH as grounds for restricting Dr. DREYER's medical license in March 2021.

5.51    Dr. Chowdhary's conclusion, based on the records he reviewed, was that there had been a "departure from the standard of care for performing extensive spine surgery without clear indications" for Mr. NESJE's surgery.

5.52    As a result of this unnecessary and otherwise improper surgery, Mr. NESJE has suffered and continues to suffer general and special permanent damages, including but not limited to: job loss (from Washington Fish and Wildlife Department); a designation of disability (SSD) with a designation of depression and anxiety due to the surgery; a diagnosis of Failed Back Surgery Syndrome; constant low back pain and discomfort and partial leg pain; significant difficulty

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 26 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    walking; inability to sleep, sit or stand for any period of time; fatigue; anxiety, and depression. He

2    is on antidepressants and pain medication daily.

3        5.53    Prior to April 12, 2022, Mr. NESJE was unaware of PROVIDENCE's admission

4    of salient facts as outlined herein and in its settlement with the DOJ.

5        5.54    Upon information and belief, on a more likely than not basis, the damage done by

6    PROVIDENCE and JASON A. DREYER, DO to Mr. NESJE is permanent and irreversible.

7                                              **KIRK SUMMERS**

8        5.55    Plaintiff KIRK SUMMERS, now 56 years old, was a patient of PROVIDENCE at

9    SMMC, whose surgery was negligent, medically unnecessary, or otherwise improper. Mr.

10   SUMMERS' insurance at all relevant times was Washington State insurance (Molina).

11       5.56    Prior to surgical procedures performed by DR. DREYER, Mr. SUMMERS'

12   personal medical history included comorbidity conditions that are generally considered

13   contraindications when contemplating spine surgery, including that he is a smoker and has a heart

14   murmur.

15       5.57    In or around early 2015, Mr. SUMMERS consulted with PROVIDENCE via its

16   agent / employee JASON A. DREYER, DO at SMMC because he was experiencing lower back

17   pain after straining it at work, shoeing horses.

18       5.58    Dr. DREYER informed Mr. SUMMERS that he needed back surgery, that Dr.

19   DREYER could make Mr. SUMMERS as good as new, and that he would be back shoeing horses

20   within 90 days.

21       5.59    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Mr.

22   SUMMERS agreed to a two-level fusion lumbar surgery. This surgery was conducted on or about

23   February 25, 2015.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 27 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    5.60    Mr. SUMMERS woke up from the surgery in agonizing pain. He had nerve pain in

2  his lower back and into his legs. He lost complete use of his left leg. Dr. DREYER responded by

3  saying he did not know what the problem was because he had fixed everything when he was doing

4  the surgery. Ultimately, Dr. DREYER sought to put Mr. SUMMERS in a rehabilitation facility.

5  Mr. SUMMERS refused, obtained a walker to be able to get discharged, and pushed himself to the

6  limits of pain to get released from the hospital. This pain has never stopped.

7    5.61    Upon information and belief, this was a medically unnecessary or otherwise

8  improper procedure that was part of a pattern and practice of PROVIDENCE via its agent /

9  employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the

10  purpose of financial gain, resulting in foreseeable, permanent damages to Mr. SUMMERS.

11    5.62    While Mr. SUMMERS was dealing with lumbar pain, Dr. DREYER assured Mr.

12  SUMMERS his lumbar condition would improve in time.  Dr. DREYER further convinced Mr.

13  SUMMERS to have a two-level cervical spine surgery. At the time, Mr. SUMMERS felt some

14  tingling in his hands. Dr. DREYER assured Mr. SUMMERS that he could fix him and make him

15  as good as new. At no time did Dr. DREYER recommend conservative care or nerve blocks to

16  determine the origin of his hand tingling.

17    5.63    Based on, and in reliance of, the advice and stated opinions of Dr. DREYER, Mr.

18  SUMMERS agreed to the two-level fusion cervical surgery Dr. DREYER recommended. This

19  surgery was conducted on or about July 25, 2015.  Following this surgery, Mr. SUMMERS no

20  longer is able to lift his arms above his head without pain and numbness.

21    5.64    Upon information and belief, this was a medically unnecessary or otherwise

22  improper procedure that was part of a pattern and practice of PROVIDENCE via its agent /

23  employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 28 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    purpose of financial gain, resulting in foreseeable, permanent damages to Mr. SUMMERS.

2        5.65    Upon information and belief, in or around 2018, Mr. SUMMERS consulted with

3    Dr. Matthew Fewel, a neurosurgeon in Richland, Washington at the time. Dr. Fewel recommended

4    no additional surgery.

5        5.66    Upon information and belief, Mr. SUMMERS was one of many former patients of

6    Dr. DREYER and PROVIDENCE who sought a second opinion from Dr. Fewel to obtain relief

7    from these medically unnecessary or otherwise improper surgeries.  Upon information and belief,

8    after multiple consultations with former PROVIDENCE/DREYER patients, Dr. Fewel was able

9    to identify a pattern of misconduct and negligence.

10        5.67    On or about March 4, 2019, Dr. Fewel reported Dr. DREYER to the WDOH for

11    this pattern of medically unnecessary, overly complex, or otherwise improper surgeries. Per Dr.

12    Fewel's report, it had become clear to him that these improper surgeries were not an "isolated

13    occurrence" and he had begun to keep a record of patients he encountered from Providence /

14    SMMC and that he was limiting his report to WDOH to the 11 most egregious cases.

15        5.68    KIRK SUMMERS' file was among the 11 patient cases that Dr. Fewel reported.

16        5.69    Upon information and belief, Dr. Fewel's report resulted in the opening of a WDOH

17    investigation which resulted in the reporting by WDOH expert Abhineet Chowdhary regarding

18    serious concerns about JASON DREYER that resulted in the restriction of DR. DREYER's

19    medical license in March 2021. Dr. DREYER's license remains restricted to this day.

20        5.70    Dr. Chowdhary reported Mr. SUMMERS' file as one of the top six files reported

21    by him to WDOH as grounds for restricting Dr. DREYER's medical license in March 2021.

22        5.71    Dr. Chowdhary's conclusion, based on the records he reviewed, was that there had

23    been a "departure from the standard of care for performing extensive spine surgery without clear

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 29 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    indications" for Mr. SUMMERS' surgeries.

2        5.72    As a result of these unnecessary and otherwise improper surgeries, Mr. SUMMERS

3    has suffered and continues to suffer general and special permanent damages, including but not

4    limited to: weight loss (from a healthy 195 pounds down to an unhealthy 130 pounds); inability to

5    work (he will be applying for disability benefits); no independent income; constant pain and

6    discomfort; difficulty walking (he uses a cane most of the time); inability to sleep, sit or stand for

7    any period of time; fatigue; anxiety, and depression. He relies on oxycodone simply to try to

8    tolerate his extensive pain since undergoing surgery by Dr. DREYER.

9        5.73    Prior to April 12, 2022, Mr. SUMMERS was unaware of PROVIDENCE's

10   admission of salient facts as outlined herein and in its settlement with the DOJ.

11       5.74    Upon information and belief, on a more likely than not basis, the damage done by

12   PROVIDENCE and JASON A. DREYER, DO to Mr. SUMMERS is permanent and irreversible.

13                    **STEVEN BASH AND CHRISTINE BASH**

14       5.75    STEVEN BASH, the deceased, married to CHRISTINE BASH, was a patient of

15   JASON A. DREYER, DO at PROVIDENCE at SMMC.

16       5.76    Mr. BASH underwent three (3) surgeries – all conducted by DR. DREYER.

17       5.77    Upon information and belief, these surgeries – and, at a minimum, the second and

18   third surgeries – were negligent, medically unnecessary, or otherwise improper.

19       5.78    Mr. BASH's government-paid medical costs were a part of the Settlement

20   Agreement restitution or would have been if the DOJ and PROVIDENCE had not settled.

21       5.79    Upon information and belief, Mr. BASH's insurance at all relevant times was

22   through the L&I federal insurance system (that is, the Office of Workers Compensation).

23       5.80    Prior to surgical procedures performed by DR. DREYER, Mr. BASH's personal

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 30 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

medical history included comorbidity conditions that are generally considered contraindications when contemplating spine surgery, including that he was a smoker and including his condition of opioid dependence due to every-day use, a condition he sought to control.

5.81    Upon information and belief, Mr. BASH began consulting with Dr. DREYER in 2014 through 2016 after a work-related injury resulted in a combination of leg/groin and back pain, with radiating leg pain being greater than or equal to 75% of his symptoms.  Upon information and belief, Dr. DREYER did not have a third-party present to assist Mr. BASH in making informed consent decisions to any treatment recommendations made by Dr. DREYER, even though Dr. DREYER knew or should have known that Mr. BASH's contraindications, including opioid dependence, would more likely than not interfere with his ability to give informed consent.

5.82    *As to the first surgery*: Upon information and belief, Dr. DREYER initially recommended conservative care before surgery and then recommended, and performed, a one-level microdiscectomy of L2-L3 and a laminectomy of L3-L4, both of which Dr. DREYER termed "minimally invasive."

5.83    Upon information and belief, based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Mr. BASH agreed to the surgery.

5.84    This surgery took place in or around October 2014. After this surgery, upon information and belief, Mr. BASH was in consistent pain, and no longer could sleep well because of the pain.

5.85    Upon information and belief, this surgery was the first step towards subsequent surgeries; it was the start of Mr. BASH becoming one of Dr. DREYER's repeat, multiple-surgery victims; and it became a part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform negligent, medically unnecessary, or otherwise improper

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 31 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1   procedures for the purpose of financial gain, ultimately resulting in foreseeable, permanent

2   damages to Mr. BASH, and to the ESTATE OF STEVEN BASH, and to CHRISTINE BASH,

3   individually as Mr. BASH's surviving wife, and as personal representative of the ESTATE OF

4   STEVEN BASH.

5       5.86   *As to the second surgery*: Upon information and belief, Dr. DREYER determined

6   that Mr. BASH was doing "poorly;" stated that his issues were "as bad, if not worse than before

7   surgery;" and proposed the following extensive and radical surgery despite the comment of Derek

8   Sucharda, Dr. DREYER's PA-C at the time, that Mr. BASH was "quite young to have such a large

9   surgery": an anterior lumbar interbody arthrodesis, L1-2, L2-3, L3-4 from the lateral approach;

10  postereolateral arthrodesis, L1-2, L2-3, L3-4; combined posterior interbody and posterolateral

11  arthorodesis, L4-5, L5-S1; PEEK interbody L1-2, L2-3, L3-4, L4-5, L5-S1; posterior spinal

12  instrumentation, L1-S1; and laminectomies L1, L2, L3, L4, L5, S1 for decompression. Upon

13  information and belief, Dr. DREYER proposed this surgery as treatment for the images but not the

14  patient and failed to take proper (or any) steps to determine the risk assessment to such an extensive

15  surgery and/or to determine the origins/generators of Mr. BASH's pain and discomfort before

16  proposing such an extensive and invasive surgery.

17      5.87   Upon information and belief, Dr. DREYER did not have a third-party present to

18  assist Mr. BASH in making informed consent decisions to any treatment recommendations made

19  by Dr. DREYER, even though Dr. DREYER knew or should have known that Mr. BASH's

20  contraindications, including opioid dependence, would more likely than not interfere with his

21  ability to give informed consent.

22      5.88   Upon information and belief, based on, and in reliance of, the advice and stated

23  opinion of Dr. DREYER, Mr. BASH agreed to the surgery.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 32 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    5.89    This surgery took place in or around January 2016. Upon information and belief,

2 Mr. BASH woke up from this surgery screaming and crying, in unbearable pain.

3    5.90    Upon information and belief, this was a negligent, medically unnecessary, or

4 otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its

5 agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures

6 for the purpose of financial gain, ultimately resulting in permanent damages to Mr. BASH, and to

7 the ESTATE OF STEVEN BASH, and to CHRISTINE BASH, individually as Mr. BASH's

8 surviving wife and as personal representative of the ESTATE OF STEVEN BASH.

9    5.91    *As to the third surgery*: Upon information and belief, in response to Mr. BASH

10 having pain on his right side, Dr. DREYER stated there was a broken screw on the left side of Mr.

11 BASH's spine as a result of the earlier surgery, and proposed and/or performed the following

12 surgery to remove the broken screw (despite its location on the left, not right, side): posterolateral

13 arthrodesis L4-5, L5-S1; posterior spinal instrumentation L4-S1; laminectomy L4, L5, S1 for the

14 purpose of decompression.

15    5.92    Upon information and belief, Dr. DREYER did not have a third-party present to

16 assist Mr. BASH in making informed consent decisions to any treatment recommendations made

17 by Dr. DREYER, even though Dr. DREYER knew or should have known that Mr. BASH's

18 contraindications, including opioid dependence, would more likely than not interfere with his

19 ability to give informed consent.

20    5.93    Upon information and belief, based on, and in reliance of, the advice and stated

21 opinion of Dr. DREYER, Mr. BASH agreed to the surgery.

22    5.94    This surgery took place in or around August 2016.

23    5.95    Upon information and belief, this was a negligent, medically unnecessary, or

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 33 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its

agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures

for the purpose of financial gain, ultimately resulting in permanent damages to Mr. BASH, and to

the ESTATE OF STEVEN BASH, and to CHRISTINE BASH, individually as Mr. BASH's

surviving wife and as personal representative of the ESTATE OF STEVEN BASH.

5.96    Upon information and belief, as a direct result of this ongoing pattern of medically

unnecessary or otherwise improper surgeries, Mr. BASH suffered general and special permanent

damages, including but not limited to increasing and debilitating pain in his back and legs, all of

which forced him to take increasing amounts of pain medication despite his attempts to reduce

those medications, including the following by 2017: use and increased use of Fentanyl patches (a

treatment Mr. BASH had been able to taper off prior to the first surgery by Dr. DREYER);

hydrocodone; gabapentin (a pain medication Mr. BASH had attempted to discontinue); naprosyn;

and carbidopa-levodopa for newly onset restless leg syndrome, as well as anti-depressant/anti-

anxiety medications.  Upon information and belief, medical records show Mr. BASH's attempts

to reduce pain medication, including the Fentanyl patch, only to return to his treating provider

seeking pain relief and treatment, with his restless leg syndrome symptoms returning without use

of the Fentanyl patch. Mr. BASH even sought advice to obtain the help of a service animal.

5.97    On or about May 4, 2017, over a year after his second surgery and about nine

months from his third surgery, his treating physician Dr. John Hoehn concluded:

> This patient lives with chronic, incurable, severe pain that interferes with the activities of
> living. Non-narcotic medications are ineffective or otherwise contraindicated. Patient has
> accepted the risks and side effects of narcotics for the benefit of improved quality of life.
> The patient and I know of no other available safe or effective alternatives. This is not for
> cure, but for maintenance therapy. I have seen no evidence of inappropriate or illegal use
> of these narcotics, and am willing to permit the patient to use them on an ongoing basis
> with my medical supervision.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 34 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.98    On August 6, 2018, Mr. BASH passed away prematurely from a heart attack at the age of 51.  Upon information and belief, Dr. DREYER's medically unnecessary and otherwise improper surgeries contributed to Mr. BASH's premature death.  In fact, it is the stated belief of Mr. BASH's pain management treating specialist Dr. Craig Flinders that the "post-laminectomy pain syndrome thoracic and lumbosacral neuritis" resulted in the need for ongoing opioid medications which "definitely result[ed] in hypogonadism" from which Mr. BASH "suffered terribly;" that Mr. BASH was under "tremendous amount of stress due to the pain which contributed to his severe insomnia;" and that these all were "certainly major contributing factors which ultimately contributed to his heart disease and eventually resulted in his death."

## RAYMOND SUMERLIN JR.

5.99    Plaintiff RAYMOND SUMERLIN JR, now 60 years old, is married to Plaintiff MARYANN SUMERLIN, and was a patient of Dr. DREYER, DO after he left PROVIDENCE and began practicing at MULTICARE in Spokane, Washington. Mr. SUMERLIN's insurance was at all relevant times Humana.

5.100    Prior to surgical procedures performed by DR. DREYER, Mr. SUMERLIN's personal medical history included comorbidity conditions that are generally considered contraindications when contemplating spine surgery, including that he had hypertension, sleep apnea, high cholesterol, and a history of renal failure and smoking.

5.101    In or around January 2019, Mr. SUMERLIN had undergone cervical surgery with MULTICARE surgeon Brent Morgan in which Dr. Morgan removed some hardware from a previous surgery and performed a laminectomy at L5.

5.102    On January 19, 2020, Mr. SUMERLIN returned to MULTICARE due to neck and arm pain. Dr. Morgan no longer was a surgeon at MULTICARE and Mr. SUMERLIN consulted

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 35 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    with Dr. JASON DREYER instead, with his wife present.

2         5.103    At the consultation, Dr. DREYER showed Mr. SUMERLIN an isolated place on

3    his images as causing the issue.  Dr. DREYER proposed surgery the next day, with no discussion

4    on conservative care options and despite the fact that there was no emergent situation requiring

5    immediate surgery. Based on Dr. DREYER's description, Mr. SUMERLIN understood the surgery

6    to be a simple procedure.

7         5.104    After the consultation, as MARYANN SUMERLIN and the PA-C were exiting the

8    room, Dr. DREYER asked to speak to Mr. SUMERLIN privately. He firmly told Mr. SUMERLIN

9    that there were more problems with his spine and that he, Dr. DREYER, wanted to take care of

10   them now so that Mr. SUMERLIN would not have to return. Mr. SUMERLIN believed he had to

11   do the surgery because Dr. DREYER was so firm about it. Dr. DREYER did not inform Mr.

12   SUMERLIN that this additional surgery would result in the fusion of six levels, C3 through T1,

13   both anterior and posterior. Dr. DREYER did not discuss conservative care options and proposed

14   surgery the next day despite the fact there was no emergent situation requiring immediate surgery.

15        5.105    Mr. SUMERLIN was handed an informed consent form to sign but no medical

16   professional, including Dr. DREYER, reviewed the form with Mr. SUMERLIN.

17        5.106    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, and

18   without understanding the extent of the surgery, Mr. SUMMERLIN agreed to the surgery.

19        5.107    Mr. SUMERLIN's cervical surgery took place on January 20, 2020. It was a five-

20   hour surgery, anterior only. According to operating room notes, the O-Arm (a mechanical device

21   used by Dr. DREYER in surgeries) malfunctioned and Dr. DREYER ultimately halted the surgery

22   midway through, accomplishing the anterior portion of the surgery only. This long surgery put Mr.

23   SUMERLIN at greater risk for infection.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 36 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    5.108   Mr. SUMERLIN's cervical surgery continued on January 22, 2020, to accomplish

2    the posterior portion of the surgery, again putting Mr. SUMERLIN at greater risk for infection.

3    5.109   Upon information and belief, these were medically unnecessary or otherwise

4    improper procedures that was part of a pattern and practice of PROVIDENCE via its agent /

5    employee JASON A. DREYER, DO, that was then continued at MULTICARE, to perform such

6    unnecessary/improper procedures for the purpose of financial gain, resulting in foreseeable,

7    permanent damages to Mr. SUMERLIN.

8    5.110   Upon information and belief, these medically unnecessary or otherwise improper

9    procedures more likely than not were a proximate cause of a MRSA infection subsequently

10   suffered by Mr. SUMERLIN (as described below) and further, that the MRSA infection went

11   undiagnosed and untreated for months due to Dr. DREYER's improper actions and inactions.

12   5.111   After surgery, Mr. SUMERLIN returned to Dr. DREYER to remove staples. When

13   the staples were removed, Mr. SUMERLIN had significant seepage and drainage coming from the

14   wound. Mr. SUMERLIN's wound did not heal and he returned to Dr. DREYER to seek treatment.

15   Upon information and belief, Dr. DREYER failed to obtain a formal infectious disease referral

16   which would have resulted in proper cultures being taken and Mr. SUMERLIN would have been

17   diagnosed at an earlier stage as having the highly dangerous MRSA[3] (which he had). Instead, Dr.

18   DREYER attempted debridements and treated what he called a "seroma" (accumulation of fluid

19   under the skin) with antibiotics (even though seromas are generally not treated that way) and he

20   also prescribed Keflex (which is not effective against MRSA). Dr. DREYER's treatment of Mr.

21   SUMERLIN's infection fell below the standard of care.  Mr. SUMERLIN's wound continued not

22

23   _____

24   [3] MRSA stands for Methicillin-resistant staphylococcus aureus. Left untreated, MRSA infections can become severe
     and cause sepsis.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 37 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  to heal.

2  5.112  September 28, 2020, Mr. SUMERLIN was finally diagnosed with MRSA, and this

3  was done in a clinic in Walla Walla, Washington, where he lived, upon Mr. SUMERLIN's

4  insistence, and not by Dr. DREYER. The failure to follow proper infectious disease care protocols

5  and obtain cultures of the wound, resulted in the late diagnosis which more likely than not resulted

6  in a greater infection that was left to fester and grow all summer.

7  5.113  Upon the MRSA diagnosis, Mr. SUMERLIN returned immediately to Spokane

8  (since he located no surgeon in Walla Walla who was willing to take on treating the MRSA

9  infection in his spine) and Dr. DREYER again performed surgery to remove the infected issue/

10  MRSA, thereby removing a large chunk of Mr. SUMERLIN's neck and vertebrae in the process.

11  5.114  As a result of the unnecessary and otherwise improper surgeries in January 2020,

12  as well as subsequent improper care, Mr. SUMERLIN has suffered and continues to suffer general

13  and special permanent damages, including but not limited to: a great divot permanently exists in

14  the back of his neck where Dr. DREYER performed surgery to remove the MRSA; this divot is

15  quite tender and hurts on a daily basis; he has an ongoing, extreme pain on the right side of his

16  neck, from top to bottom, as if his neck is in a vice; he has difficulty with choking when he eats

17  and has problems swallowing at times; if he coughs too much, he gets a massive amount of phlegm

18  in his throat and his nose drains excessively; it affects his ability to drive because he cannot move

19  his head to watch for traffic; he has depression and anxiety as a result of this, and is on anti-

20  depressants.

21  5.115  Prior to April 12, 2022, Mr. SUMERLIN was unaware of PROVIDENCE's

22  admission of salient facts as outlined herein and in its settlement with the DOJ, including that it

23  failed to report Dr. DREYER to the WDOH or the NPDB.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 38 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.116   Upon information and belief, on a more likely than not basis, the damage done by JASON A. DREYER, DO to Mr. SUMERLIN is permanent and irreversible.

## **MARTIN WHITNEY**

5.117   Plaintiff MARTIN WHITNEY, 73 years old, married to Plaintiff SHERRYL WHITNEY, was a patient of Dr. DREYER, DO after he left PROVIDENCE and began practicing at MULTICARE in Spokane, Washington. Mr. WHITNEY's insurance was at all relevant times through the Veteran's Administration.

5.118   Prior to surgical procedures performed by DR. DREYER, Mr. WHITNEY's personal medical history included comorbidity conditions that are generally considered contraindications when contemplating spine surgery, including that he had hypertension, diabetes, diabetic neuropathy, hyperlipidemia, sleep apnea, oxygen dependent at night, seizures, fatigue, high cholesterol, obesity, and a history of MRSA in 2018.

5.119   In or around February 2019, Mr. WHITNEY had undergone lumbar surgery with MULTICARE surgeon Dr. Brent Morgan due to an injury to his back from moving furniture. In this surgery, Dr. Morgan performed decompressions as well as posterior fusion on levels L3 through to S1. After ongoing low back pain and consultation with the VA medical providers, the VA medical providers referred Mr. WHITNEY to Dr. JASON DREYER in or around the summer of 2019 due to a concern by those medical providers that the surgery by Dr. MORGAN had to be repaired.

5.120   At the consultation, Dr. DREYER informed the WHITNEYs that he could redo the surgery done by Dr. Morgan and that he could heal Mr. WHITNEY within six months.

5.121   Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Mr. WHITNEY agreed to the first surgery by Dr. DREYER believing it was necessary due to hardware

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 39 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

failure at L5-S1.

5.122   On or about August 28, 2019, Dr. DREYER redid Dr. Morgan's original surgery removing all the hardware, and he then conducted a fusion that was both anterior and posterior for Levels L3 through S1, even though only L5-S1 was the concerning level. The extent of hardware removed and the further hardware placement both anterior and posterior were not necessary.  This resulted in an extensive surgery that was not fully indicated.

5.123   After this August 28, 2019, surgery by Dr. DREYER, Mr. WHITNEY's condition worsened, although he was still able to do some activities occasionally, like driving a tractor, hunting, and fishing.

5.124   Dr. DREYER informed the WHITNEYs that he could fix the issues that arose with this 8/28/2019 surgery (Dr. DREYER's first surgery).

5.125   Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Mr. WHITNEY agreed to a second surgery by Dr. DREYER on February 24, 2020.

5.126   On or about February 24, 2020, Dr. DREYER again removed and replaced screws and also decompressed L2-L3 with plate placement at L2-L3, even though the imaging did not indicate a need for removal and replacement of hardware/screws, nor a need for L2-L3 decompression with plate placement.

5.127   After this second surgery by Dr. DREYER on 2/24/2020, Mr. WHITNEY was mostly bedridden, though he could still drive himself to appointments.

5.128   On or about July 20, 2020, Dr. DREYER recommended and performed his third surgery to remove the L2-L3 plate/hardware that he had placed unnecessarily during the February 24, 2020, surgery.

5.129   Based on, and in reliance of, the advice and stated opinions of Dr. DREYER, Mr.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 40 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  WHITNEY agreed to the July 20, 2020 surgery by Dr. DREYER, believing it was necessary.

2  5.130  After the July 20, 2020 surgery by Dr. DREYER, Mr. WHITNEY was bedridden

3  and could not even drive himself to appointments.

4  5.131  Upon information and belief, all these surgeries were overly extensive, medically

5  unnecessary or otherwise improper procedures that was part of a pattern and practice of

6  PROVIDENCE via its agent / employee JASON A. DREYER, DO, that was then continued at

7  MULTICARE, to perform such unnecessary/improper procedures for the purpose of financial

8  gain, resulting in foreseeable, permanent damages to Mr. WHITNEY, with all work by Dr.

9  DREYER other than L5-S1 revision on 8/28/2019 surgery and especially taking into account

10  numerous multiple level fusions both anterior and posterior approaches, in a patient with Mr.

11  WHITNEY's comorbidities.

12  5.132  As a result of these overly complex, unnecessary and otherwise improper surgeries,

13  Mr. WHITNEY has suffered and continues to suffer general and special permanent damages,

14  including but not limited to: he is primarily bedridden; he no longer drives himself to 90 percent

15  of his medical appointments; he no longer goes to the Rock & Gym Club in Chewelah, even just

16  to watch his friends; he walks with a cane or uses a scooter; he no longer can go hunting or fishing

17  or use his tractor; he no longer can engage in other hobbies such as repairing vehicles; he is on

18  heavy pain medication daily, including buprenorphine naloxone and muscle relaxers, to try to

19  manage the pain; his son has moved to Chewelah from Florida to help his parents because his wife,

20  SHERRYL WHITNEY is unable to manage Mr. WHITNEY's care alone.

21  5.133  Prior to April 12, 2022, Mr. WHITNEY was unaware of PROVIDENCE's

22  admission of salient facts as outlined herein and in its settlement with the DOJ, including that it

23  failed to report Dr. DREYER to the WDOH or the NPDB.

24

1    5.134   Upon information and belief, on a more likely than not basis, the damage done by

2    PROVIDENCE and JASON A. DREYER, DO to Mr. WHITNEY is permanent and irreversible.

3              **VI.     MAINTENANCE OF THE CLASS**

4        6.1.   Plaintiffs, on behalf of themselves and those similarly situated, reallege and

5    incorporate by reference paragraphs 1.1 through 5.92 as if fully set forth herein.

6        6.2.   **Patient Class Definitions**:

7            6.2.1.   **Settlement Class.**  Settlement Plaintiffs bring this Class action pursuant to

8    Washington CR 23(b)(2), (b)(3), and (c)(4)[4] on behalf of the Settlement Class defined as

9    follows: *All patients whose treatments informed the basis of the settlement between*

10   *PROVIDENCE and DOJ (quantified for settlement purposes as $22,690,458, with*

11   *$10,459,388 designated as restitution for settlement purposes), who, by definition, suffered*

12   *special and/or general injury or damages from medical procedures that were medically*

13   *unnecessary or otherwise improper for said treatments.*

14           6.2.2.   **Non-Settlement Class/PROVIDENCE.**  Plaintiffs bring this Class action

15   pursuant to Washington CR 23(b)(2), (b)(3), and (c)(4) on behalf of the Non-Settlement

16   Class/Providence defined as follows: *All patients who suffered injury or damages as a*

17   *result of medical procedures at PROVIDENCE, performed by Dr. JASON A. DREYER,*

18   *DO and/or Dr. DANIEL ELSKENS DO that were medically unnecessary or otherwise*

19   *improper but whose treatments were not included in the settlement either because DOJ*

20   *offered to settle for less than full restitution or because their treatment was paid for by*

21

22   _____

23   [4] Reference to Washington Rule 23 should include reference to Fed. R. Civ. P. 23; rules are
     similar and applicable.

24

1  *private health insurers such as Regence Blue Shield, or was paid privately, for treatments*

2  *during the relevant time periods.*

3        6.2.3.  **Non-Settlement Class/MULTICARE.**  Plaintiffs bring this Class action

4  pursuant to Washington CR 23(b)(2), (b)(3) and (c)(4) on behalf of the Non-Settlement

5  Class/MultiCare defined as follows: *All patients who suffered injury or damages as a result*

6  *of medical procedures at MULTICARE performed by Dr. JASON A. DREYER, DO that*

7  *were medically unnecessary or otherwise improper but whose treatments were not*

8  *included in the restitution settlement because DOJ sought reimbursement for payments to*

9  *PROVIDENCE only, for treatments during the relevant time periods.*

10        6.2.4.  Plaintiffs reserve the right to modify or amend the definitions of the

11  proposed Classes and/or to add Subclasses if necessary before the Court determines

12  whether certification is appropriate and as the Court may otherwise allow, including a

13  subclass of vulnerable adults and/or for estates and/or for survival actions (claims already

14  preserved herein).

15      6.3.  **Numerosity**:  The Department of Justice has estimated that the victims of these

16  medically unnecessary or otherwise improper surgeries conducted by these neurosurgeons number

17  in the "hundreds." <u>Hill</u>, *supra*. Putative members of the class cannot be identified without the

18  assistance of the DOJ and/or PROVIDENCE due to the fact that specifics are known only to them;

19  further, **<u>due to HIPAA privacy restrictions which prevent complete uninhibited disclosure of</u>**

20  **<u>entitled Plaintiffs</u>**; as such, the Class is so numerous that joinder of all members is impracticable.

21      6.4.  The cost of surgeries is unknown but, upon information and belief, it can be

22  estimated on average to be over $100,000.00 per patient. *The subject loss has been at least*

23  *$10,459,388,* confirming that the Class is so numerous that joinder of all members is impracticable.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 43 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1       6.4.1.  A substantial majority of each of the foregoing patient classes is comprised

2   of residents of the state of Washington, that is, more than two-thirds of the patients; and,

3   their principal injuries resulted from conduct of the DEFENDANTS which conduct, and

4   resulting injuries occurred within the state of Washington; claims are based upon state law,

5   and at least one defendant is a citizen of Washington.

6       6.4.2.  **Settlement Class.** In settling the 2020 *qui tam* action, the DOJ agreed to a

7   settlement amount of $22,690,458, with $10,459,388 designated as restitution.   Upon

8   information and belief, this amount was calculated based upon governmental payments

9   after contractual adjustments on submitted claims for settlement purposes (not the entire

10   amount).   DOJ has identified "hundreds of patients" as affected, and it is unknown the

11   number of patients included in the restitution amount or the DOJ's analysis therein, but it

12   is believed, upon information and belief, that the Class is so numerous that joinder of all

13   members is impracticable. As indicate in ¶ 6.3, prospective members of the class cannot be

14   identified without the assistance of the DOJ and/OR PROVIDENCE due to the fact that

15   specifics are known only to them; further, due to HIPAA privacy restrictions which prevent

16   complete uninhibited disclosure of entitled Plaintiffs.

17   6.5.    **Non-Settlement Class/PROVIDENCE.**  As noted, the DOJ reported that there

18   were "hundreds" of victims of the PROVIDENCE scheme.  The Class is so numerous that joinder

19   of all members is impracticable. As indicate in ¶ 6.3, prospective members of the class cannot be

20   identified without the assistance of the DOJ and/or PROVIDENCE due to the fact that specifics

21   are known only to them; further, due to HIPAA privacy restrictions which prevent complete

22   uninhibited disclosure of entitled Plaintiffs.

23       6.5.1.  **Non-Settlement Class/MULTICARE.** As noted, the DOJ reported that

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 44 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

there were "hundreds" of victims of the PROVIDENCE scheme, which spanned approximately five (5) years. Upon information and belief, after leaving PROVIDENCE, Dr. JASON A. DREYER, DO worked for MULTICARE in Spokane for over two (2) years, affecting an unknown number of patients. Upon information and belief, The Class is so numerous that joinder of all members is impracticable. Moreover, Plaintiffs cannot identify Plaintiffs in the Class without the assistance of the DOJ and/or PROVIDENCE and/or other DEFENDANTS due to the fact that specifics are known only to them and due to HIPAA restrictions, which prohibit investigation to determine what patients have viable right of claims.

6.6.    **Commonality**: This action involves common questions of law and fact which predominate over any questions affecting individual Class members, and which justify damages relief under Rule 23(b)(3), equitable relief under Rule 23(b)(2), and the resolution of particular issues under Rule 23(c)(4), including but not limited to:

6.6.1.    Whether DEFENDANTS have engaged in criminal profiteering activity via multiple predicate acts of criminal profiteering under 9A.82.010(4), for financial gain actionable under RCW 9A.82.100 (Criminal Profiteering) or RCW 9A.82.080 including but not limited to hundreds of:

6.6.1.1 false health care claims as defined in RCW 48.80.030 (RCW 9A.82.010(hh));

6.6.1.2 money laundering offenses as defined in RCW 9A.83.020 (RCW 9A.82.010(t)); &

6.6.1.3 theft by deception as defined/applied in RCW 9A.56 (RCW 9A.82.010(e));

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 45 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

6.6.2    Whether DEFENDANTS' profiteering activity via these multiple predicate acts demonstrates a "pattern" of profiteering activity, as required by RCW 9A.82.100 (civil RICO) and as defined in RCW 9A.82.010(12), including:

6.6.2.1 Actions taken having the same/similar intent – the intent was to achieve and/or maintain financial gain, and the pattern of actions taken include, e.g.:

6.6.2.1.1   submitting hundreds of false health care claims;

6.6.2.1.2   accepting hundreds of payments for those claims;

6.6.2.1.3   concealing actions taken to obtain these funds;

6.6.2.1.4   failing to repay any of the funds received; and

6.6.2.1.5   failing to report the neurosurgeons to NPDB or WDOH as required by law (which would have resulted in disgorgement of funds received);

6.6.2.2 Actions taken have the same or similar outcome / result; here the result was to keep the funds obtained and conceal the bad acts of neurosurgeons (by, inter alia, failing to return funds or report them to NPDB or WDOH), which resulted in continued and perpetual harm to unsuspecting past and future patients;

6.6.2.3 Same or similar accomplices – here, the DEFENDANTS;

6.6.2.4 Same or similar principals – here, the DEFENDANTS;

6.6.2.5 Same or similar victims – here, unsuspecting and trusting individuals in need of specialized and honest health care treatment;

6.6.2.6 Same or similar methods of commission – here, the same pattern

and practice repeated itself for the entire relevant time period(s) consistently and throughout;

     6.6.2.7 Otherwise interrelated by distinguishing characteristics, including nexus to the same enterprise – here, (1) one distinguishing characteristic includes a requirement in the medical profession, when seeking insurance coverage, to verify under penalties (including license revocation penalties) that the proposed medical procedures are medically necessary or are otherwise proper; and (2) The enterprises to which the "nexus" exists, see RCW 9A.82.010(8), are governmental health care payee entities like, *inter alia*, Medicare/Medicaid (which require the above-described assurances), and/or the health care insurance industry, including private insurance companies (which also require such assurances), or PROVIDENCE or Providence St. Joseph Health, or the association-in-fact of both;

    6.6.3   Whether DEFENDANTS' pattern of criminal profiteering activity was discovered for purposes of the statute of limitations under RCW 9A.82.100(7) (civil RICO) no sooner than April 12, 2022 (the date the DEFENDANTS first admitted publicly a pattern existed, requiring a $22.7 million settlement);

    6.6.4   Whether DEFENDANTS' failure (PROVIDENCE's failure in particular) to report the malfeasance of the neurosurgeons pursuant to RCW 70.41.210 was a violation of a statutory or common law duty to Plaintiffs resulting in general/special damages;

    6.6.5   Whether the settlement between DOJ and PROVIDENCE of $22,690,458

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 47 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

(with $10,459,388 designated as restitution) creates a mechanism by which financial damages for medical costs can be measured for all Plaintiffs (and/or for the Settlement Class Plaintiffs), including as calculated pursuant to the Providence Corporate Integrity Agreement, and in equitable remedies including disgorgement, and forfeiture;

6.6.6    Whether the settlement between DOJ and PROVIDENCE for a specific settlement amount ($22,690,458) and a specific amount designated for restitution ($10,459,388) creates a mechanism by which to quantify additional damages – i.e., these are agreed-upon amounts regarding medically unnecessary and other improper procedures; they form the basis of this class action; the question becomes whether these agreed-upon medical costs can be used to quantify the remainder of damages for the classes of Plaintiffs where the entire class or classes can be equitably adjudicated pursuant to the agreed-upon markers;

6.6.7    Whether PROVIDENCE owed a common law or statutory duty of care to all patients to report the actions of the neurosurgeons pursuant to RCW 70.41.210, resulting in actionable lawsuits by all Plaintiffs against PROVIDENCE for failure to comply with that statutory duty, resulting in reasonably foreseeable general/special damages;

6.6.8    Whether PROVIDENCE breached its duty to comply with the standard of care of a hospital;

6.6.9    Whether DEFENDANTS exercised the requisite degree of skill, care and learning expected of a reasonably prudent hospital/healthcare provider;

6.6.10  Whether DEFENDANTS fell below their professional standard of care;

6.6.11  Whether DEFENDANTS failed to obtain consent/informed consent that surgery would not occur in a safe environment and that it included medically unnecessary

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 48 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

or otherwise improper procedures;

6.6.12  Whether Defendant violated the Consumer Protection Act (RCW 19.86);

6.6.13  Whether Defendant violated the Criminal Profiteering Act (RCW 9A.82.100 and 9A.82.080);

6.6.14  Whether Defendant concealed evidence forming the basis of this action from its patients, from MULTICARE patients, and from the public during the relevant time period until no sooner than April, 2022;

6.6.15  Whether nonmonetary relief is required to compensate Class members, including disgorgement, forfeiture, restitution, divestment, injunctions, and civil penalties that are appropriate to be brought or maintained as a class action under Rule 23(b)(2),

6.6.16  The nature and extent of Class-wide injury and the measure of compensation for such injury.

6.6.17  The aforementioned common issues present particular questions appropriate to be brought or maintained as a class action under Rule 23(c)(4).

6.7    **Typicality:** Class Plaintiffs' claims are typical of the claims of other members of the Class and Class Plaintiffs are not subject to any atypical claims or defenses. DEFENDANTS did not take reasonable steps to ensure that medically unnecessary or otherwise improper procedures did not occur. DEFENDANTS sought/received payments for medically unnecessary and other improper procedures. DEFENDANTS concealed their wrongdoing by e.g., (a) failing to reimburse the enterprise health care industry and/or Medicare/Medicaid for payments for procedures that did not meet criteria for reimbursement, were medically unnecessary, or were otherwise improper; and (b) failing to report the neurosurgeons to the NPBD or the WDOH (which would have resulted in disgorgement). DEFENDANTS failed to advise Plaintiffs of medically

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 49 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    unnecessary surgeries and otherwise improper procedures to which they were subjected.

2    DEFENDANTS took repeated, similar actions as outlined in the commonality section, to which

3    PROVIDENCE has admitted. Plaintiffs received the same notice, i.e., no sooner than the public

4    announcement of the DOJ Settlement on April 12, 2022. Plaintiffs underwent similar medically

5    unnecessary or otherwise improper procedures due to the schemes of DEFENDANTS that went

6    unabated due to DEFENDANTS' negligence and concealment.  Plaintiffs' claims like those of the

7    Class, arise out of the same common course of conduct by Defendant directed toward Plaintiffs

8    and the Class and are based on the same legal and remedial theories.  Classes, and/or the Settlement

9    Class, once identified, will have an additional, direct nexus to settlement/restitution amounts.

10            6.8    **Adequacy:** Class-Plaintiffs will fairly and adequately represent the Class, as they

11    are committed to prosecuting this action, have no conflicts of interest, and have retained competent

12    counsel who are experienced civil trial lawyers with significant experience in complex litigation

13    and trial, including tort litigation.  Plaintiffs and their counsel are committed to prosecuting this

14    action vigorously on behalf of the Class(es) and have the financial resources to do so.  Neither

15    Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the

16    proposed Class.

17            6.9    **Predominance:** The common issues predominate over any individualized issues.

18    Adjudication of these common issues in a single action has important and desirable advantages of

19    judicial economy.

20            6.10    **Superiority:** Class-Plaintiffs and Class members have suffered and will continue

21    to suffer harm and damages as a result of DEFENDANTS' actions.  Absent a Class action, most

22    Class members likely would find the cost of litigating their claims prohibitive and/or may not even

23    become informed of their causes of action due to HIPAA confidentialities and how the details of

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 50 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    the settlement (and which cases inform the bases of the settlement agreement) are also currently

2    held confidentially.  Concentrating class members claims in this District is superior because the

3    headquarters of Providence is located in this District and the claims are all based upon Washington

4    law. Class treatment is superior to multiple individual suits or piecemeal litigation because it

5    conserves judicial resources, promotes consistency and efficiency of adjudication, and provides a

6    forum for all claims, which number in the "hundreds" (according to the Department of Justice).

7    There will be no significant difficulty in the management of this case as a Class action.  The

8    identity of each Class member is readily identifiable from DEFENDANTS' own records and the

9    records of the DOJ.  Unless this matter proceeds as a Class action, many patients who were injured

10   by these DEFENDANTS may not otherwise learn how or why they were injured.

11   **VII.    CAUSE OF ACTION: Criminal Profiteering [RCW 9A.82.100 and 9A.82.080]**

12        7.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

13   incorporate by reference paragraphs 1 through 6.10 as if fully set forth herein.

14        7.2    Plaintiffs herein set forth their claim for damages resulting from DEFENDANTS'

15   violations of the Washington Criminal Profiteering Act, 9A.82.100 and 9A.82.080.

16        7.3    Each DEFENDANT is a "person" within the meaning of RCW 9A.04.110(17).

17   **A. Violation of RCW 9A.82.100**

18        7.4    DEFENDANTS violated RCW 9A.82.100, as further alleged herein, by knowingly

19   engaging in a pattern of criminal profiteering activity as set forth in the preceding paragraphs by

20   engaging in the following acts of criminal profiteering activity for financial gain ("predicate acts")

21   with a nexus to the identified health care insurance enterprises:

22        7.4.1    false health care claims as defined in RCW 48.80.030 (RCW

23        9A.82.010(hh));

24
PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 51 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

7.4.2    money laundering as defined in RCW 9A.83.020 (RCW 9A.82.010(t));

7.4.3    theft by deception as defined/applied in RCW 9A.56 (RCW 9A.82.010(e)).

**B. Violation of RCW 9A82.080(1) & (2)**

7.5    DEFENDANTS violated RCW 9A82.080(1) & (2) , as further alleged herein, by: (1) knowingly and willfully receiving the proceeds, directly or  indirectly, from a pattern of criminal profiteering activity to use or invest any part thereof in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of the enterprise PROVIDENCE or the alternative enterprise(s); and (2) knowingly and willfully acquiring or maintaining, directly or indirectly, an interest in or control of the enterprise or real property through a pattern of criminal profiteering activity.   Plaintiffs have been injured in their persons, property and business as a result of the DEFENDANTS' knowing receipt of the proceeds from the pattern of criminal profiteering activity and their subsequent use and investment, and concealment of their use and investment, in the enterprise of PROVIDENCE or the alternative enterprises, including for purposes of maintaining the enterprise(s) to attract patients and submit further false health care claims.

**C. Violation of RCW 9A82.080(3)**

7.6    DEFENDANTS violated RCW 9A82.080(3), as further alleged herein, by knowingly and willfully conspiring to commit the foregoing criminal profiteering acts and violations of RCW 9A.82.080(1) & (2), in violation of RCW 9A.82.080(3).

7.7    Each plaintiff is a person who sustained injury to his or her person, business, or property by an act of criminal profiteering that is a part of a pattern of criminal profiteering activity under RCW 9A82.100, or by the offenses alleged in RCW 9A82.080(1), (2) & (3).

7.8    Plaintiffs' injuries were directly and proximately caused by Defendants' violations

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 52 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1   of the aforementioned offenses.

2      7.9      As to each of the following predicate offenses, failure by DEFENDANTS to return

3   funds obtained as described below is evidence of the intent to commit the predicate act(s) and are

4   part of the pattern of criminal profiteering activity alleged herein.

5                                   **Predicate Acts**
                            **False Health Care Claims, RCW 48.80.030**
6
7      7.10    As set forth herein above, DEFENDANTS:

8          7.10.1    presented and/or caused to be presented to health care payers hundreds of

9   claims for a health care payment knowing the claim to be false and/or that falsely

10  represented that the goods or services were medically necessary in accordance with

    professionally standards; and/or
11
12         7.10.2    concealed or failed to disclose information with intent to obtain health

13  care payments to which they were not entitled, including but not limited to false

14  certifications of medical necessity and failure to disclose noncompliance with 42 U.S.C.

15  § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986, and the NPDB

    guidelines.
16
17     7.11    These acts constituted false health care claims in violation of RCW 48.80.030.

18                                  **Predicate Acts**
                         **Money Laundering, RCW 9A.83.020(1)(a) &(b)**

19     7.12    As set forth herein above: DEFENDANTS conducted or attempted to conduct

20  financial transactions (to wit, receiving and depositing health care payments) involving the

21  proceeds of specified unlawful activity (to wit, false health care claims, in violation of RCW

22  48.80.030, and theft by deception under RCW 9A.56.030 and 9A.56.040) knowing the property

23  was proceeds of that specified unlawful activity.  Further, the use of these unlawful proceeds to

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 53 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

purchase real estate violates RCW 9A.82.080(1), as does the investment of these proceeds to promote further health care fraud proceeds, including through compensation. In addition, Defendants knew that the transactions with Plaintiff's health care payors (*i.e.*, Medicare) were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, and acted recklessly as to whether the property was proceeds of specified unlawful activity.

7.13    These acts constitute money laundering in violation of RCW 9A.83.020(1)(a)&(b).

**Predicate Acts**
**Theft by Deception, RCW 9A.56.030**

7.14    As set forth herein above: DEFENDANTS, with the intent to defraud patient class members, the health insurance industry and/or governmental insurance entities (e.g., Medicare/Medicaid), wrongfully obtained property (to wit, financial payments of false health care claims) by knowingly misrepresenting information about the health care provided, the medical necessity of it, and/or other improper issues, with the intent to deprive them of that property.

7.15    The property or services described herein exceed $750 in value.

7.16    These acts constituted theft in the first or second degree, in violation of RCW 9A.56.030.

**Pattern of Related Profiteering Acts**

7.17    DEFENDANTS engaged in a pattern of related criminal profiteering offenses, as described in this claim, repeatedly and continuously during the relevant time period, including three or more acts of profiteering violations of RCW 9A.56.030, RCW 48.80.030, and 9A.83.020(1)(a) & (b).

7.18    The multiple acts of profiteering activity had the same or similar intents, results, accomplices, victims, and methods of commission. Alternatively, they are otherwise interrelated

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 54 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

by distinguishing characteristics, and these characteristics include a nexus to the same enterprises alleged herein of Providence, Providence St. Joseph Health care insurance payors, and/or governmental insurance entities. None of the acts of profiteering are isolated incidents.

7.19    The last such criminal profiteering activity occurred within five years after the prior incident of profiteering activity.

7.20    The criminal profiteering acts had similar purposes: *e.g.*, financial gain to the DEFENDANTS.

7.21    Each of the DEFENDANTS' criminal profiteering acts yielded similar results and caused similar injuries to the Plaintiffs to their person, property and/or business, including damage to their physical being and their finances (both as, *inter alia,* to medical expenses and as to lost wages).

7.22    Because of DEFENDANTS' failures to disclose and affirmative acts of concealment, the pattern of criminal profiteering activity was not discoverable until April 12, 2022, when the U.S. Attorney publicly announced its investigative findings regarding Providence, Dr. JASON A. DREYER, DO, and Dr. DANIEL ELSKENS, DO about the misconduct undertaken in combination to commit the profiteering alleged herein.

### The Enterprise

7.23    An enterprise "includes any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any … group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities." RCW 9A.82.010(8).

7.24    Enterprises consist of ongoing organizations, formal or informal, with various associates function as a continuing unit. See *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn. 2d 820, 839,

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 55 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  355 P.3d 1100 (2015).

2      7.25    The enterprises used in, and with a nexus to, the pattern of criminal profiteering

3  activity under RCW 9A.82.100 include health care insurance providers for the plaintiff Class(es),

4  including government health care insurers (i.e., "governmental" entities U.S. Department of Health

5  and Human Services (HHS); the Defense Health Agency (DHA), acting on behalf of the TRICARE

6  Program; the Federal Health Benefits Program; the U.S. Department of Veterans Affairs (VA)

7  which administers the VA Community Program, and the Washington Health Care Authority

8  (HCA)) and private insurers whose payments promoted the medically unnecessary surgeries and

9  related health care.

10      7.26    In the alternative, the enterprise used in, and with a nexus to, the pattern of criminal

11  profiteering under RCW 9A.82.100 is PROVIDENCE, or Providence St. Joseph Health, or the

12  association-in-fact of both.   Both PROVIDENCE and Providence St. Joseph Health are legal

13  corporations or legal entities, making them enterprises under RCW 9A.82.010(8).  Their

14  association-in-fact had a common purpose of engaging in the aforesaid course of conduct, through

15  an ongoing organization, and with associates functioning as continuing unit.   For example,

16  Providence and Providence St. Joseph Health share offices and have functioned as a continuing

17  unit for years up through the disclosures of April 2022.  Further, PROVIDENCE is a participating

18  provider in the government and private health care insurer enterprises.

19      7.27    Independent motives and stakes of Dr. JASON A. DREYER, DO are sufficient to

20  form the basis of an independent conspirator.

21      7.28    Independent motives and stakes of JANE DOES and JOHN DOES, including in

22  respect to concealment and failing to report, are sufficient to form the basis of an independent

23  conspirator.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 56 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    Each of these aforementioned enterprises is a legal entity, that is, a partnership, corporation,

2    business trust, or other profit or nonprofit legal entity, governmental and nongovernmental entities,

3    or an association or group of individuals associated in fact although not a legal entity within the

4    meaning of RCW 9A.82.010(8).  Each alleged enterprise is an ongoing organization, formal or

5    informal, with various associates functioning as a continuing unit.

6                    **Causation / Injury and Remedies**

7    7.29    As a direct and proximate result of DEFENDANTS' acts or omissions discussed

8    herein, Plaintiff Class(es) and individual Plaintiffs have suffered injuries to their person, business,

9    or property including but not limited to economic loss, pain, suffering, emotional distress, and

10   injury to their physical being, including injuries compensable under RCW 9A.82.080 and

11   9A.82.100. These injuries include damages from the investment of proceeds in, or for the

12   maintenance, establishment, or operation of the enterprise under RCW 9A.82.080.

13   7.30    Plaintiffs are entitled to an award of damages including but not limited to:

14   compensation for their actual damages; treble damages; a civil penalty of $250,000; injunctive,

15   equitable, and forfeiture relief as set forth in RCW 9A.82.100(2), (3) and (4), and (4)(f); and costs

16   and investigative and attorneys' fees as authorized by RCW 9A.82.100(1)(a).

17   7.31    The equitable relief includes, but is not limited to, disgorgement of ill-gotten gains

18   obtained from the profiteering in order to prevent, restrain, and deter future unlawful conduct by

19   the Defendant,[5] including by use of the bonus incentive compensation scheme.

20

21

22   _____

[5] *See e.g., Creel v. Says, 2022 WL 4490141 (E.D. Tex. Sept. 27, 2022)* (the law does not allow a
person to profit from wrongdoing at the expense of another, and disgorgement can be a proper
equitable remedy under RICO laws to, *inter alia*, prevent, restrain and deter future unlawful
conduct).

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 57 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1

## VIII.   CAUSE OF ACTION: FAILURE TO REPORT (RCW 70.41.210)

2

8.1     Plaintiffs, on behalf of themselves and those similarly situated, reallege and

3

incorporate by reference paragraphs 1.1 through 7.31 as if fully set forth herein.

4

8.2     Pursuant to RCW 70.41.210, PROVIDENCE, through its employees and agents,

5

including Dr. DANIEL ELSKENS DO, Dr. JASON DREYER, DO, and JOHN DOE / JANE DOE

6

DEFENDANTS, had a mandatory duty, *inter alia*, to report within 15 days to the Washington

7

Department of Health any voluntary restriction or termination of the practice of Dr. DANIEL

8

ELSKENS DO or Dr. JASON DREYER, DO – "including [their] voluntary resignation" – while

9

they were under investigation or the subject of a proceeding by PROVIDENCE regarding

10

unprofessional conduct, or in return for PROVIDENCE not conducting such an investigation or

11

proceeding, or not taking action against said physicians.

12

8.3     Unprofessional conduct includes (a) incompetence, negligence or malpractice

13

which results in injury or which creates an unreasonable risk that a patient may be harmed; (b)

14

practice beyond the scope of practice as defined by law or rule; (c) misrepresentation or fraud in

15

any aspect of the conduct of the business or profession; (d) the commission of any act involving

16

moral turpitude, dishonesty or corruption relating to the medical profession; or (e ) promotion for

17

personal gain of any unnecessary or inefficacious drug, device, treatment, procedure or service.

18

RCW 18.130.180(1), (4), (12), (13), (16).

19

8.4     As set forth in the preceding paragraphs, PROVIDENCE and its employees and

20

agents, including JOHN DOE / JANE DOE DEFENDANTS, allowed Dr. DANIEL ELSKENS

21

DO and Dr. JASON A. DREYER, DO to resign after initiating investigations into their

22

unprofessional conduct as defined herein and did not report them to the Department of Health as

23

required by RCW 70.41.210.

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 58 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.5    Reporting is encouraged by public policy. RCW 70.41.210(5) provides civil immunity to a hospital, its chief administrator, or its executive officer who file a good faith report with the Department of Health.

8.6    PROVIDENCE and its agents/employees also failed to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO to the NPDB. As a result of the failure to report, these surgeons continued to conduct unnecessary, improper, and defective procedures for profit while harming multiple patients, and defrauding patients and insurance companies, including Medicare and Medicaid.

8.7    The purpose of, *inter alia*, this mandatory reporting is to "promote safe and adequate care of individuals in hospitals" and to enforce minimum standards and rules "for the safe and adequate care of patients." RCW 70.41.010, .030.

8.8    Plaintiffs, who are/were individuals receiving care at PROVIDENCE SMMC and at MULTICARE / DEACONESS, were within the class of individuals for whose special benefit this mandatory reporting statute was enacted – e.g., for their safe and adequate care.

8.9    Given the above and the allegations contained herein, PROVIDENCE owed an implied statutory duty of care to each Plaintiff in the Class(es) to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO.

8.10    DEFENDANTS breached this implied statutory duty when they failed to report Dr. DANIEL ELSKENS DO or Dr. JASON A. DREYER, DO to the Washington Department of Health and the NPDB.

8.11    As a direct and proximate result of DEFENDANTS' breach of the duties owed, Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO continued to conduct medically unnecessary or otherwise improper procedures for profit while harming patients and defrauding

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 59 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

patients and insurance companies, including Medicare and Medicaid; and each Plaintiff was permanently injured, suffered, and continues to suffer physical disability and pain, medical expenses, and other damages to be fully determined at trial.

8.12    It was reasonably foreseeable that DEFENDANTS' breach of the duties owed would result in the damages described herein.

## IX.    CAUSE OF ACTION: CONSUMER PROTECTION ACT (RCW 19.86)

9.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 8.12 as if fully set forth herein.

9.2    As set forth herein above, DEFENDANTS used false or deceiving marketing practices and otherwise engaged in unfair or deceptive acts or practices to entice Plaintiffs to engage in their services. This constitutes an unfair or deceptive act or practice under RCW 19.86.

9.3    These acts or omissions of DEFENDANTS occurred in furtherance of trade or commerce.

9.4    The unfair or deceptive act or practice of DEFENDANTS as set forth herein above constitute fraud which affects the public interest and violates the Washington Consumer Protection Act.

9.5    As a direct and proximate result of DEFENDANTS' violations of the Act, as set forth herein above, Plaintiffs suffered damages.

9.6    DEFENDANTS are now liable for those damages in an amount fully set forth at trial, but include damages to property and business, the trebling of same, and reasonable attorney fees and costs.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 60 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

**X.    CAUSE OF ACTION: MEDICAL NEGLIGENCE (RCW 7.70) vs. PROVIDENCE, Dr. JASON A. DREYER, DO AND Dr. DANIEL ELSKENS, DO**
**(Providence Plaintiffs, Named and Putative)**

10.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 9.6 as if fully set forth herein.

10.2    As health care providers, PROVIDENCE, Dr. JASON A. DREYER, DO, and DR. DANIEL ELSKENS, DO owed Plaintiffs a duty to comply with the standard of care.

10.3    Defendant PROVIDENCE, through its employees and agents, including Dr. JASON A. DREYER, DO and DR. DANIEL ELSKENS, DO, failed to exercise the degree of care, skill, and learning expected of reasonably prudent health care providers in the same profession or class in the State of Washington acting in the same or similar circumstances. Such conduct proximately caused severe injuries and damages to plaintiffs. Defendant's conduct violated RCW 4.24, 13 RCW 7.70, and other applicable law.

10.4    The statute of limitations in respect to the medical negligence claims will be tolled on certain patients as a result of the Continuing Course of Treatment Doctrine; and Discovery Rule.

**XI.    CONSENT/INFORMED CONSENT (Providence Patients, Named and Putative)**

11.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 10.4 as if fully set forth herein.

11.2    As set forth herein above, despite fraudulent reporting otherwise, DEFENDANTS breached their duty to inform plaintiffs of all material facts, including risks and alternatives, which a reasonably prudent patient would need to make an informed decision on whether to consent to or reject proposed courses of treatment, including but not limited to the risk of medically unnecessary procedures for which the motive was financial gain and not proper medical treatment. This failure proximately caused injury to plaintiffs.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 61 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

## XII.    CORPORATE NEGLIGENCE (Providence Plaintiffs, Named and Putative)

12.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 11.2 as if fully set forth herein.

12.2    A medical facility, in this case, PROVIDENCE, has the following duties: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians and staff; (3) a duty to oversee all persons who treat patients within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

12.3    PROVIDENCE breached the afore listed duties by, without limitation:

12.3.1  failing to select, retain, and supervise competent staff;

12.3.2    failing to ensure of proper oversight of staff;

12.3.3    failing to assure proper diagnosis and care;

12.3.4  failing to formulate, adopt and enforce adequate rules, policies and/or adopting policing or practices which in themselves created an unnecessary and unreasonable risk to Plaintiff(s);

12.3.5    failing to conduct an adequate credentialing background investigation pursuant to best practice guidelines before hiring Dr. JASON DREYER and Dr. DANIEL ELSKENS, and giving them privileges to see patients and perform surgeries at PROVIDENCE facilities.

12.4    PROVIDENCE's breach of corporate duties as set forth above directly and proximately led to injuries and damages to the Plaintiffs.

12.5    PROVIDENCE is now liable for the injuries and harm suffered by Plaintiffs as a result of its Corporate Negligence

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 62 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

12.6    PROVIDENCE is liable for the injuries and harm suffered by Plaintiffs as a result of its Corporate Negligence.

## XIII.    DISCOVERY RULE

13.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 12.6 as if fully set forth herein.

13.2    The Discovery Rule regarding statute of limitations applies to individual plaintiffs. See *Pickett v. Holland Am. Line-Westo*urs, 145 Wn. 2d 178, 188, 35 P.3d (2001).  For the claims under the criminal profiteering statute, discovery of the pattern of criminal profiteering activity could not reasonably have occurred until the public revelation of the settlement agreement in April 2022. For all claims, discovery was prevented due to intentional concealment and/or fraud and/or the continuing care doctrine until the public revelation of the settlement agreement in April 2022.

13.3    Here, through their acts and omissions, DEFENDANTS deprived Plaintiffs of the opportunity to discover the factual bases for these causes of action until April 12, 2022.

## XIV.    BREACH OF FIDUCIARY DUTY / FRAUD / MISREPRESENTATION (Against Defendants By Patients, Named and Putative)

14.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 13.3 as if fully set forth herein.

14.2    DEFENDANTS owed a fiduciary duty through the relationship with their patients based upon their position of trust, confidence, greater expertise, duty of candor, and dependence. Specifically, DEFENDANTS had a fiduciary relationship to the patient class members that gave rise to a duty of care to them requiring DEFENDANTS to exercise the utmost good faith in dealing with class members, including to fulfill their duty of loyalty to their patients.

14.3    As set forth herein above, DEFENDANTS engaged in acts or omissions breaching these fiduciary duties, which directly and proximately caused damages to Plaintiffs.  The patients

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 63 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    relied upon DEFENDANTS' fiduciary duties in following their advice on the need for medical

2    treatment.

3        14.4    DEFENDANTS have statutory and common law duties to inform patients of risks

4    of medical care, and all information needed for patients to make informed healthcare decisions.

5        14.5    DEFENDANTS were required to inform patients about the substantially increased

6    risk of treatment by Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO due to their

7    history of performing medically unnecessary and otherwise improper procedures.

8        14.6    Without this information, Plaintiffs were deprived of material facts to inform their

9    treatment decisions.

10       14.7    DEFENDANTS knew that in withholding material facts, they were affirmatively

11   misrepresenting information to Plaintiffs.

12       14.8    DEFENDANTS intended for Plaintiffs to rely on DEFENDANTS, and

13   DEFENDANTS' concealments, to make informed healthcare decisions.

14       14.9    Upon information and belief, DEFENDANTS were further engaging in false or

15   misleading reporting in medical reports in an effort to conceal evidence of negligent, violative,

16   unethical, and fraudulent treatment practices.

17       14.10   Plaintiffs did not know DEFENDANTS were concealing material facts and had the

18   right to and did reasonably rely on DEFENDANTS to meet its statutory and common law duty to

19   inform them of material facts. DEFENDANTS' failure to inform Plaintiffs, in the face of a legal

20   duty to do so, constitutes fraud by concealment, as specifically identified herein.

21       14.11   Plaintiffs suffered damages as a result of a reasonable reliance on DEFENDANTS'

22   fraud and misrepresentation.

23

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 64 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1

## XV.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and OUTRAGE

2

15.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

3

incorporate by reference paragraphs 1.1 through 14.11 as if fully set forth herein.

4

15.2    DEFENDANTS owed Plaintiffs a common law duty not to engage in conduct that

5

would cause the Plaintiffs severe emotional distress.

6

15.3    By misleading Plaintiffs, concealing evidence of negligent, violative, unethical, and

7

fraudulent treatment practices, performing unnecessary and ill-advised medical procedures, and

8

operating below the standard of care, DEFENDANTS negligently inflicted emotional distress

9

upon Plaintiffs.

10

15.4    Additionally, DEFENDANTS' conduct as set forth herein constituted extreme and

11

outrageous conduct that would shock the conscious of an ordinary, reasonable person; which

12

outrageous conduct resulted in Plaintiffs' suffering severe emotional distress.

13

## XVI.    LOSS OF CONSORTIUM

14

16.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

15

incorporate by reference paragraphs 1.1 through 15.4 as if fully set forth herein.

16

16.2    As a direct and proximate result of DEFENDANTS' negligent and intentional acts

17

or omissions as set forth herein, Plaintiffs' statutorily qualified family members suffered loss of

18

consortium, and special damages if available.

19

## XVII.    WRONGFUL DEATH/SURVIVOR ACTIONS

20

17.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

21

incorporate by reference paragraphs 1.1 through 16.2 as if fully set forth herein.

22

17.2    DEFENDANTS' negligent and intentional acts or omissions as set forth herein

23

resulted in, and/or contributed to the injury and ultimate death of certain claimants, resulting in

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 65 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

damages/loss to their estate and to statutorily qualified family members, both individually and/or in their capacity as personal representative of the estate(s).

17.3    Defendants are liable for those negligent acts or omissions pursuant to Wash. Rev. Code § 4.20.005 (wrongful death and survivor statutes).

## XVIII. VICARIOUS LIABILITY

18.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 17.3 as if fully set forth herein.

18.2    Upon information and belief, employees and agents of the defendants, implicated in this cause of action were at all times relevant to this cause of action acting within their official capacity and scope of employment with and for PROVIDENCE.

18.3    Upon information and belief, physicians, employees, or agents alleged to have been negligent in the treatment/care of Plaintiff(s) in this case were either employees, agents in fact, or alternatively, ostensible agents.[6]

18.4    PROVIDENCE is liable for injuries/damage suffered by Plaintiff(s) as a result of the intentional and negligent acts or omissions of their employees, owners, managers, agents, or ostensible agents under the theory of *Respondeat Superior*.

## XIX.    NEGLIGENCE PER SE

19.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 18.4 as if fully set forth herein.

19.2    Certain of the acts of the DEFENDANTS set forth herein amount to regulatory and

---

[6] *Adamski v. Tacoma General Hospital*, 20 Wn. App. 98, 112, 579 P.2d 970 (1978) (hospitals are liable for the doctors who work at them).

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 66 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

statutory violations. The violation of regulations and statutes constitutes negligence per se.[7]

## XX.    RES IPSA LOQUITUR

20.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 19.2 as if fully set forth herein.

20.2    DEFENDANTS had exclusive control over the actions and omissions which constituted the sum total of the care provided to Plaintiffs during their pre-surgical, surgical, and post-surgical care.

20.3    DEFENDANTS had exclusive control over the actions and omissions which ultimately resulted in the defrauding of Plaintiffs and their medical insurance providers, including Medicare and Medicaid.

20.4    DEFENDANTS acted intentionally to conceal the fraud in respect to regulatory reporting, billing, and patient medical records as set forth herein above.

20.5    As a result of this concealment and fraud, Plaintiffs had no ability to take action on their own behalf to avert the injuries and damages cause by the DEFENDANTS negligent and intentional acts or omissions which caused Plaintiffs to suffer injuries and damages.

20.6    The injuries and damages sustained by the Plaintiffs here do not occur in the absence of negligence or intentional actions in variance with statute and regulatory authority undertaken by the medical care team.

20.7    DEFENDANTS are now liable for the damages Plaintiff has suffered as a result of their negligence pursuant to the doctrine of *Res Ipsa Loquitur.*

---

[7]  Restatement (Third) of Torts §14 states in relevant part that an actor is negligent per se if that actor violates a statute that is designed to protect against the type of accident or harm caused by the actor's conduct, and the plaintiff is someone the statute is designed to protect.

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 67 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    **XXI.    UNJUST ENRICHMENT (Providence Plaintiffs, Named and Putative)**

2        21.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

3    incorporate by reference paragraphs 1.1 through 20.7 as if fully set forth herein.

4        21.2    With each and every payment received as described herein, each DEFENDANT

5    received a benefit at a Plaintiff's expense, and the circumstances make it unjust for the

6    DEFENDANT to retain the benefit without payment.

7        21.3    DEFENDANTS are liable for the damages to Plaintiff for unjust enrichment,

8    including restitution and disgorgement.

9    **XXII.    DISGORGEMENT**

10        22.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

11    incorporate by reference paragraphs 1.1 through 21.3 as if fully set forth herein.

12        22.2    In violation of their common law, equitable, and statutory duties to Plaintiffs,

13    Defendants profited from their wrongful conduct, and these profits must be disgorged in order to

14    deter the continuation of this wrongful conduct.

15        22.3    Defendants have obtained ill-gotten profits from their misconduct, including

16    payments from federal and state governments, and from health insurers and patients.    These

17    payments are proximately caused by the aforesaid violations, and can be reasonably approximated.

18        22.4    Disgorgement of these ill-gotten profits is necessary to deter further violations.

19    **XXIII. WAIVER OF PRIVILEGE**

20        23.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

21    incorporate by reference paragraphs 1.1 through 22.4 as if fully set forth herein.

22        23.2    Waiver of the physician-patient privilege under RCW 5.60.060(4)(b) does not

23    waive or release any other rights or privileges, including those related to the physician-patient

24

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 68 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

relationship, other than the privilege set out in the above-cited statute.

## XXIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS in their favor and in favor of the Class as follows:

24.1    Finding that this action is properly maintainable as a Class action pursuant to CR 23(b)(2), 23(b)(3) and 23(c)(4), and certifying each Class.

24.2    Finding the Plaintiffs are prevailing parties against each DEFENDANT, jointly and severally, for violations of RCW 9A.82.100 and RCW 9A.82.080 (Criminal Profiteering) and award Plaintiffs compensation equal to their actual damages, a tripling of those damages, a civil penalty of $250,000, injunctive and remedial relief as set forth in RCW 9A.82.100(2), (3), and (4), and forfeiture under RCW 9A.82.100(4)(f).

24.3    Awarding Plaintiffs reasonable investigative and attorneys' fees and costs under RCW 9A.82.100(1)(a).

24.4    Finding the Plaintiffs are prevailing parties against each DEFENDANT, jointly and severally, for violations of RCW 19.86 (Consumer Protection Act) and award Plaintiffs damages as allowed under the Act, including a tripling of damages and reasonable attorney fees and costs.

24.5    Finding Plaintiffs to be the prevailing parties against each DEFENDANT for violations of the implied statutory duty to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO, which resulted in general and special damages to be determined at trial.

24.6    Finding DEFENDANTS were otherwise negligent in their acts as outlined above.

24.7    Finding DEFENDANTS' negligence resulted in injury to each Plaintiff.

24.8    Ordering DEFENDANTS to identify all Class Plaintiffs pursuant to their records.

24.9    For compensatory damages suffered by Plaintiffs and Class resulting from any and

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 69 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

all claims pled herein, in amounts to be proven at trial.

24.10   For unjust enrichment, Plaintiffs seek restitution and disgorgement.

24.11   For costs and disbursements.

24.12   For statutory attorney fees.

24.13   For private forfeiture relief, see RCW 9A.82.100(4)(f).

24.14   For a forfeiture money judgment in the amount of no less than $22,690,458.

24.15   For disgorgement of ill-gotten gains obtained as a result of Defendants' breach of their duties to the Plaintiffs, including through criminal profiteering, breach of fiduciary or statutory duty, or benefitting from unjust enrichment.

24.16   If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules.

24.17   For statutory interest on the judgment from the date judgment is entered until paid in full.

24.18   For prejudgment interest on the special damages.

24.19   For prejudgment interest on liquidated damages.

24.20   All damages allowed under RCW 4.20.010, RCW 4.20.20, RCW 4.20.046, RCW 4.20.060, and RCW 4.24.010, as applicable.

24.21   For entry of equitable nonmonetary remedies and a permanent injunction, including but not limited to as authorized in RCW 9A.82.100(2), (3), (4) and (4)(f):

24.21.1   enjoining DEFENDANTS from utilizing any form of productivity bonus metric scheme that encourages surgeons to engage in high volume patient care, or increased complex surgical procedures.

24.21.2   requiring DEFENDANTS to provide open public access to

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 70 OF 71

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

peer review materials and credentialling files for all surgeons.

24.21.3    requiring DEFENDANTS to disclose the names and contact information for putative members of all Classes and/or to assist Plaintiffs' counsel in identifying and notifying class members of their rights under this action;

24.21.4    divesting and disgorging DEFENDANTS of the proceeds of their profiteering activity.

24.22    For such other and further relief as the Court may deem just and equitable.

24.23    The Plaintiffs reserve the right to elect remedies if there is a determination of a conflict between claims or remedies.

## XXV.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that all causes of action pled herein be tried to a 12-person jury with sufficient alternates to assure complete justice without interference or delay.

DATED THIS 18th day of December, 2023.

GILBERT LAW FIRM, P.S.

_____
William A. Gilbert, WSBA #30592
Attorneys for Plaintiffs

PLAINTIFFS' CLASS ACTION COMPLAINT
(THIRD AMENDED)
NO. 22-CV-00915-JLR
PAGE 71 OF 71

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315