# EXHIBIT 2

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; the Office of Personnel Management (OPM), which administers the Federal Employees Health Benefits Program (FEHBP), the U.S. Department of Veterans Affairs (VA), which administers the VA Community Care Program (collectively, the "United States"); the State of Washington, acting through the Washington Office of the Attorney General and on behalf of the Washington Health Care Authority (HCA) (collectively the "State"); Providence Health & Services Washington (hereinafter "Providence"); and Relator David Yam, M.D. (hereafter "Relator"); through their authorized representatives. The United States and the State are collectively referred to herein as the "Government", and the Government, Providence, and Relator are collectively referred to herein as the "Parties."

## FACTUAL RECITALS

A.      Providence owns and operates St. Mary Medical Center (SMMC), a hospital located in Walla Walla, Washington. SMMC has multiple departments, one of which is the neurosurgery department. Between July 1, 2013 and November 13, 2018 (hereinafter the relevant time period), Providence, through SMMC, submitted claims to and accepted reimbursement from Medicare, the FEHBP, TRICARE, VA Community Care, and other federally-funded health care programs, as well as from the State of Washington Medicaid program jointly funded by the United States and the State of Washington, for neurosurgery and other services provided at and by SMMC.

B.  During the relevant time period, Dr. A and Dr. B were neurosurgeons employed by Providence at SMMC. Dr. A. was a neurosurgeon employed by Providence at SMMC during the entire relevant time period, while Dr. B was a neurosurgeon employed by Providence at SMMC between November 2015 and May 2017. During the entire relevant time period, Relator was the Medical Director of Neurosurgery at SMMC.

C.  During the relevant time period, SMMC's neurosurgery department including Dr. A, performed a high volume of multi-level spinal surgeries. SMMC staff neurosurgeons, including Dr. A, were paid compensation based on a personal productivity metric known as Work Relative Value Units (wRVUs), which were calculated based on a value assigned under the Medicare Physician Fee Schedule to the services personally furnished by the individual neurosurgeon. SMMC neurosurgeons, including Dr. A, were paid compensation for each wRVU that they generated, with no cap on the wRVU-based compensation that could be earned. In this manner, the greater the number of procedures of higher complexity that the neurosurgeon performed, the greater the compensation the neurosurgeon received. Between 2014 and 2018, Dr. A's personal productivity, as measured by wRVUs, exceeded the 90th percentile of physician market survey data, and he was among the top producing neurosurgeons in the Providence system. Based on this productivity, between 2014 and 2017, Dr. A earned between $2.5 million and $2.9 million annually.

D.  At various times during the relevant time period, Providence received both positive and negative information about Dr. A and Dr. B. However, Providence personnel also had and articulated concerns regarding the quality of care provided by Dr. A and Dr. B, as well as the medical necessity of surgical procedures performed by Dr. A. These included concerns that Dr. A: (1) completed medical documentation with falsified, exaggerated, and/or inaccurate diagnoses that did not accurately reflect the patient's true medical condition in order to obtain

2

reimbursement for surgical procedures performed by Dr. A; (2) performed certain surgical procedures that did not meet the medical necessity guidelines and requirements for reimbursement set forth by Medicare and other government health insurance programs; (3) "over-operated", i.e., performed a surgery of greater complexity and scope than was indicated and medically appropriate; and (4) jeopardized patient safety by attempting to perform an excessive number of overly complex surgeries. These concerns also included concerns that Dr. A and Dr. B: (1) endangered the safety of SMMC patients; (2) created an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries; (3) performed surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and (4) failed to adequately and accurately document certain procedures, diagnoses, and complications.

  E. On February 23, 2017, as a result of concerns articulated by SMMC medical staff, Providence, as the employer, placed Dr. B on administrative leave and, shortly thereafter, initiated an independent analysis of certain concerns articulated as to Dr. B with regard to certain specific patients. On May 8, 2017, Providence accepted Dr. B's resignation. Providence, as the employer, did not report Dr. B to the National Practitioner Data Bank or the Washington State Department of Health, nor did Providence take any action to refund Medicare or Medicaid for surgical procedures performed by Dr. B for which Providence had previously sought and received reimbursement.

  F. On May 22, 2018, as a result of concerns articulated by SMMC medical staff, Providence, as the employer, placed Dr. A on administrative leave and initiated an independent analysis of certain concerns articulated as to Dr. A with regard to certain specific patients. On November 13, 2018, Dr. A submitted his letter of resignation to Providence, which Providence accepted. Providence, as the employer, did not report Dr. A to the National Practitioner Data Bank or the Washington State Department of Health.

G. On January 13, 2020, Relator filed a qui tam action in the United States District Court for the Eastern District of Washington captioned United States ex rel. Yam v. Providence Health and Services, 4:20-cv-05004-SMJ (E.D. Wash.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged that Providence submitted and caused to be submitted to the United States and the State of Washington false claims for neurosurgery procedures performed during the relevant time period by Dr. A and Dr. B. The United States intervened in the Civil Action on January 14, 2022.

H. The Government contends that it has certain civil claims against Providence arising from allegedly false claims for payment submitted by Providence to Medicare, Washington State Medicaid, TRICARE, VA Community Care, and FEHBP (hereinafter "the Federal Health Programs") during the relevant time period for neurosurgery services performed by Dr. A and Dr. B that did not meet the criteria for reimbursement under the Federal Health Programs, were medically unnecessary, or were otherwise improper. The Government further contends that Providence failed to take appropriate action in response to those concerns. Finally, the Government contends that Providence failed to have and/or timely implement adequate safeguards and controls with regard to Dr. A and Dr. B to timely prevent, detect, deter, and cease the performance of medically unnecessary neurosurgical procedures. The conduct described in this paragraph, together with the agreed-upon facts and conduct set forth above in Recitals A through F as they relate to claims for neurosurgery services performed by Dr. A and Dr. B to Federal Health Programs during the relevant time period, is hereinafter referred to as the "Covered Conduct."

I. The Government contends that it has certain civil claims against Providence under the False Claims Act, codified at 31 U.S.C. §§ 3729-3733, the Medicaid Fraud False

4

Claims Act, codified at RCW 74.66, the Fraudulent Practices Act, codified at RCW 74.09.210, and the common law for allegedly engaging in the Covered Conduct.

J. Providence admits, acknowledges, and agrees that the facts set forth in Recitals A through F above are true and accurate. Providence does not admit the contentions set forth in Recitals H or I. While Providence agrees with the facts set forth in Recitals A through F, above, Providence does not concede that liability arises, under the False Claims Act or any other cause of action, from those facts. This Settlement Agreement is therefore not an admission of liability by Providence.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Providence shall pay to the Government $22,690,458 (herein "the Settlement Amount"), of which $10,459,388 is restitution. Of the Settlement Amount, $21,592,186 is owed to the United States, which shall be paid within fourteen (14) days of the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Washington. Of the Settlement Amount, the total federal and state Medicaid share is $1,830,622, with $732,350 of that amount owed to the United States, and $1,098,272 of that amount owed to the State of Washington, which shall be paid within fourteen (14) days of the Effective Date of this Agreement pursuant to written instructions to be provided by the Washington Office of the Attorney General.

2. Conditioned upon the Government receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $3,994,554 to Relator by electronic funds transfer, and the State of Washington shall pay $203,180 to Relator by electronic funds transfer, to the trust account of Relator's counsel (hereafter the "Relator's Share").

5

3.  Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and conditioned upon Providence's full payment of the Settlement Amount, the Government releases Providence, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; dbas; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the Government has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Medicaid Fraud False Claims Act, RCW 74.66; the False Practices Act, RCW 74.09.210, or the common law theories of payment by mistake, unjust enrichment, negligent misrepresentation, and fraud.

4.  Subject to the exceptions in Paragraphs 6 and 10 below, and upon the Government's receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Providence, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current orformer corporate owners; dbas; and the corporate successors and assigns of any of them, from any civil monetary claim the Relator has on behalf of the United States for the Covered Conductunder the False Claims Act, 31 U.S.C. §§ 3729-3733 or the Medicaid Fraud False Claims Act, RCW 74.66. Relator does not release Providence from any personal claims he has against Providence, including claims related to his employment and claims arising under 31 U.S.C. § 3730(h).

5.  In consideration of the obligations of Providencein this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Providence, and conditioned upon Providence's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42

U.S.C. § 1320a-7b(f)) against Providence under 42 U.S.C. § 1320a-7a (Civil Monetary Penalty Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 6 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Providence from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 6, below.

6. Notwithstanding the releases given in Paragraphs 3, 4, and 5 of this Agreement, or any other term of this Agreement, the following claims of the Government are specifically reserved and are not released:

 a. Any criminal, civil, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or state revenue codes;

 b. Any criminal liability;

 c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal or State health care programs;

 d. Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

 e. Any liability based upon obligations created by this Agreement;

 f. Any civil or administrative liability that any person or entity, including Providence have or may have to the Federal, State or individual consumers or government program payers under any statute, regulation or rule not expressly covered by the release in this Agreement, including but not

7

limited to, any and all of the following claims: (i) antitrust violations; (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

g.  Any liability which may be asserted on behalf of any other payers or insurers, including those that are paid by the Government programs on a capitated basis;

h.  Any liability for expressed or implied warranty claims or other claims for defective or deficient products and services provided by Providence;

i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j.  Any liability based on a failure to deliver goods or services due; and,

k.  Any liability of individuals including, but not limited to, Dr. A and Dr. B.

7.  Except as expressly stated herein, this agreement is not intended to affect the terms of any provider agreement(s), contracts or other agreements that Providence has or may have with HCA or any State of Washington agency.

8.  Providence fully and finally releases the Government, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Providence has asserted, could have asserted, or may assert in the future against the Government and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the Government's investigation and prosecution thereof.

9.  The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Providence agrees not to resubmit to any Medicare or Medicaid

8

contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

10. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action. For the avoidance of doubt, Relator does not release Providence from any personal claims he has against Providence, including claims related to his employment and claims arising under 31 U.S.C. § 3730(h).

11. Providence agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Providence or its Companies, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the Government's audits and civil and criminal investigations of the matters covered by this Agreement;

        (3) Providence's investigation, defense, and corrective actions undertaken in response to the Government's audits and civil and any criminal

     investigations in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Providence makes to the Government pursuant to this Agreement; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain review organizations to perform reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS;

are unallowable costs for government contracting purposes and under the Medicare Program, and Medicaid Program (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 11.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Providence.

  b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for, and Providence shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Providence, or any of its subsidiariesor affiliates to Medicare, and Medicaid Programs.

  c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Providence further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare fiscal intermediaries, carriers, and/or contractors, and Medicaid fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the Government, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Providence, or any of its subsidiaries or affiliates, and shall request, and agree, that such cost

reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Providence agrees that the Government, at a minimum, shall be entitled to recoup from Providence any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, Medicaid Fraud Control Unit, and/or the affected agencies. The Government reserves its rights to disagree with any calculations submitted by Providence, or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Providence, or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Providence's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13. Providence agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payers based upon the claims defined as Covered Conduct.

14. Except as otherwise expressly provided in this Agreement (e.g. Paragraph 15 below), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Upon receipt of the Settlement Amount, the United States, the State of Washington, and Relator shall file a Dismissal in the Civil Action, pursuant to Fed. R. Civ. P. 41. Dismissal shall be with prejudice to Relator. Dismissal shall be with prejudice as to the United States to the extent of the Covered Conduct, and otherwise without prejudice to the United States only. Relator's claims pursuant to 31 U.S.C. § 3730(d) and RCW 74.66.070(1)(c) for attorney fees, expenses, and costs, and for retaliation pursuant to 31 U.S.C. § 3730(h) and RCW 74.66.090(1) and for wrongful wage withholding pursuant to RCW 49.52.050 and for any other personal claims of the Relator, which are not resolved by this Settlement Agreement, shall not be dismissed, and in no circumstance does any term of Settlement Agreement constitute a waiver of any of those claims.

16. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

17. This Agreement is governed by the laws of the United States and the State of Washington. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Washington. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19. The undersigned counsel and agency representatives represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on Providence's and Relator's successors, transferees, heirs, and assigns.

22.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 3/17/2022          BY: *[signature]*
                              Dan Fruchter
                              Assistant United States Attorney
                              Eastern District of Washington

DATED: 3/17/2022          BY: *[signature]*
                              Tyler H.L. Tornabene
                              Assistant United States Attorney
                              Eastern District of Washington

DATED: 3/17/22            BY: Lisa M. Re /seg
                              Lisa M. Re
                              Assistant Inspector General for Legal Affairs
                              Office of Counsel to the Inspector General
                              Office of Inspector General
                              U.S. Department of Health and Human Services


THE STATE OF WASHINGTON

DATED: _____         BY: _____
                              Larissa Payne , Director
                              Senior Assistant Attorney General
                              Medicaid Fraud Control Unit
                              Washington Office of the Attorney General

DATED: _____         BY: _____
                              MaryAnne Lindeblad
                              Medicaid Director
                              Washington Health Care Authority

14

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                         Dan Fruchter
                         Assistant United States Attorney
                         Eastern District of Washington

DATED: _____     BY: _____
                         Tyler H.L. Tornabene
                         Assistant United States Attorney
                         Eastern District of Washington

DATED: _____     BY: _____
                         Lisa M. Re
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         U.S. Department of Health and Human Services

## THE STATE OF WASHINGTON

DATED: 3/15/2022    BY: *Larissa Payne*
                         _____
                         Larissa Payne, Director
                         Medicaid Fraud Control Division
                         Washington Office of the Attorney General

DATED: 3/15/2022    BY: *[signature]* MD, MSc
                         Dr. Charissa Fotinos
                         Interim Medicaid Director
                         Washington Health Care Authority

PROVIDENCE

DATED: March 15, 2022        BY: _____
                                  Gregory Hoffman
                                  President and Chief Executive Officer
                                  Providence Health & Services Washington


DATED: March 15, 2022        BY: _____
                                  Robert G. Homchick
                                  Davis Wright Tremaine, LLP
                                  Counsel for Providence Health Services Washington


DATED : March 15, 2022       BY. _____
                                  Jeffrey B. Coopersmith
                                  Orrick Herrington & Sutcliffe LLP
                                  Counsel for Providence Health & Services Washington

15

DATED: 3/15/2012    BY: _____
                         David Yam, M.D.

DATED: 3/15/2022    BY: _____
                         Malaika Eaton
                         McNaul, Ebel, Nawrot & Helgren PLLC
                         Counsel for Relator David Yam

16