William A. Gilbert, WSBA #30592
Gilbert Law Firm, P.S.
421 W. Riverside Ave, Suite 353
Spokane, WA 99201
T: 509·321·0750
F: 509·343·3315
E: bill@wagilbert.com
Attorney for Plaintiffs

The Honorable James L. Robart

UNITED STATES DISTRICT COURT OF THE WESTERN
DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CAROLINE ANGULO, a single person, ERIC KELLER, a single person, and ISABEL LINDSEY and CHARLES LINDSEY, a married couple, and CHRISTINE BASH, individually and as a personal representative of the ESTATE OF STEVEN BASH,<br><br>                    Plaintiffs.<br><br>        v.<br><br>PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington Corporation, also d/b/a PROVIDENCE ST. MARY MEDICAL CENTER; Dr. JASON A. DREYER, DO, and JANE DOE DREYER, husband and wife and the marital community thereof; Dr. DANIEL ELSKENS DO, and JANE DOE ELSKENS, husband and wife and the marital community thereof; and JOHN/JANE DOES 1-10, and any marital communities thereof,<br>                    Defendants. | NO. 22-CV-00915-JLR<br><br>**MOTION TO CERTIFY CLASS - AMENDED**<br><br>***ORAL ARGUMENT REQUESTED***<br><br>**NOTE ON MOTION CALENDAR: JANUARY 19, 2024** |

# I.    INTRODUCTION

Plaintiffs Caroline Angulo, *et al.*, respectfully moves this Court pursuant to Fed.R.Civ.P. 23, for an order certifying the three classes listed in the Complaint. This motion is filed without benefit of discovery because of the pending jurisdictional motion for remand to the King County Superior Court. This class action was filed after the revelation of widespread false claims in a 2022 settlement between Defendant Providence Heath & Services Washington also d/b/a St. Mary Medical Center ("Providence" or "SMMC") and the state and federal governments.  Providence paid $22.7 million to resolve False Claims Act allegations that Providence had fraudulently billed state and federal health care programs for medically unnecessary and/or overly complex neurosurgery procedures of two neurosurgeons (Dr. Jason Dreyer and Dr. Daniel Elskens) between 2013 and 2018. *Third Amended Complaint("TAC"), ECF 129, Exh. 2.*

Announced for the first time publicly on April 12, 2022 (*TAC, ECF 129, ¶1.8*), the Settlement involved, *inter alia*, significant admissions by Providence about the scale of the misconduct, which was tied to the payments by Providence of restitution to the government. *See id., Exh. 2, ¶¶ A-F, & p. 5, ¶1.* But the Settlement did not compensate patient victims of the surgeries, which the DOJ estimated to be in the "hundreds." *TAC, ¶1.11.*

Within a month, Plaintiffs had filed this class action lawsuit in King County Superior Court to seek both compensatory and other relief for victims of these surgeries as a class, under state law claims that included unlawful profiteering (RCW 9A.82 – also known as "little RICO"), medical malpractice, corporate negligence, implied statutory duty of care, breach of fiduciary duties, unjust enrichment, and others.

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 2 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

In its March 17, 2023, order, this Court summarized the facts common to Plaintiffs' claims:

***This case arises from allegations that Providence, a large hospital, used a compensation structure that encouraged two neurosurgeons, Dr. Jason Dreyer, DO, and Dr. Daniel Elskens, DO (the "Doctor Defendants") to perform medically unnecessary spinal surgeries on patients and, in many cases, file false claims for reimbursement with government health insurance programs.***

Plaintiffs intended to file for early class certification in King County Superior Court, *see ECF 8, p. 2, lines 13-15*, because Providence's admissions in the DOJ Settlement set up a road map for it by describing the pattern and practice used to generate the false claims. But Providence removed this case, and filed its answer on July 7, 2022. *ECF 11.* Over the 15 months since removal, Plaintiffs have focused on the jurisdictional issues, without benefit of discovery, to give the Court the opportunity to resolve those jurisdictional issues first.

Since Plaintiffs were attempting to remand the case to state court, we tried to exercise this Court's yet-undetermined jurisdiction sparingly. There were some occasions where we sought the Court's assistance. For example, we sought a restraining order due to Providence's full-page ad in the Walla Walla Union Bulletin (and briefed how it was misleading/tainting jury pools), *ECF 8.* We also sought leave to conduct primarily (but not exclusively) jurisdictional discovery. *ECF 54.* We also amended the complaint to include certain additional remedies and add a plaintiff representative for wrongful death/survivor actions. *ECF 31, 70, 116* (motions to amend complaint). But the primary task was to assist the Court, as allowed, in determining jurisdiction. Nonetheless, both federal and state rules encourage certification decisions be made as soon as practicable. *See e.g., Fed. R. Civ. P. 23(c)(1); Washington CR 23(c)(1).*[1]

---

[1] Local rules previously required motions to certify to be filed within 180 days the complaint's filing. *LCR 23(i)(3) (12/4/2018).* This is no longer the current rule but comported with the spirit of Fed. R. Civ. P. 23(c)(1) to determine certification as soon as practicable.

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 3 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

In recent months, however, an issue has arisen in Washington state appellate court that causes Plaintiffs to file this motion to certify now. Specifically, the Washington Supreme Court has granted review of the opinion of the Washington Court of Appeals (Division III) that placed in question whether tolling of statutory limitations is available in Washington State for putative class members in civil cases pre-certification in accordance with *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756 (1974) (the 50-year-old seminal case on this issue). *See Campeau v. Yakima HMA, LLC*, 26 Wn. App. 2d 481, 488-489, 528 P.3d 855, 859 (2023). The Court of Appeals in *Campeau* held that *American Pipe* tolling is <u>not</u> available in Washington. *Campeau*, 26 Wn. App. 2d at 484. It made this ruling in the context of a joinder case (not a class action), and it did acknowledge that this ruling would contradict Washington Supreme Court precedent if applied to class action cases. *See Campeau, supra*, at 490. But *Campeau*'s reasoning is that tolling is justified in class actions because certification issues are brought "as soon as practicable," justifying the tolling in those kinds of cases (versus non-class action cases). *Id.*

On September 6, 2023, the Washington Supreme Court granted review of *Campeau*, *see* 534 P.3d 804 (Wash. 2023), and it will be argued on January 11, 2024. Depending on the outcome of this review, *Campeau*'s reasoning may become irrelevant. In the meantime, however, it appears the *Campeau* decision could complicate tolling issues depending upon when certification motions are filed in class actions. Thus, despite the lack of a decision yet on jurisdiction, Plaintiffs file this Motion to Certify pursuant to this Court's plenary authority. *See Fed.R.Civ.P. 23(d)* (in conducting an action under this rule, the court may issue orders that, e.g., determine the course of proceedings); *United States v. Simpson*, 927 F.2d 1088, 1089 (9th Cir. 1991) (under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done).

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 4 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

## II.    CLASS DEFINITION

Pursuant to Rule 23, Plaintiffs seek certification of the following classes:

**Settlement Class.**  *All patients whose treatments informed the basis of the settlement between PROVIDENCE and DOJ (quantified for settlement purposes as $22,690,458, with $10,459,388 designated as restitution for settlement purposes), who, by definition, suffered special and/or general damages from medical procedures that were medically unnecessary or otherwise improper for said treatments.*

**Non-Settlement Class/PROVIDENCE.**  *All patients who suffered damages as a result of medical procedures at PROVIDENCE, performed by Dr. JASON A. DREYER, DO and/or Dr. DANIEL ELSKENS DO that were medically unnecessary or otherwise improper but whose treatments were not included in the settlement either because DOJ offered to settle for less than full restitution or because their treatment was paid for by private health insurers such as Regence Blue Shield, or was paid privately, for treatments during the relevant time periods.*

**Non-Settlement Class/MULTICARE.**  *All patients who suffered damages as a result of medical procedures at MULTICARE performed by Dr. JASON A. DREYER, DO that were medically unnecessary or otherwise improper but whose treatments were not included in the restitution settlement because DOJ sought reimbursement for payments to PROVIDENCE only, for treatments during the relevant time periods.*

## III.    ADDITIONAL FACTS/BACKGROUND

As admitted in the Settlement, Providence used a compensation structure that encouraged and facilitated two neurosurgeons (Drs. Dreyer and Elskens) to perform medically unnecessary, overly complex, or otherwise improper surgeries on patients in a scheme for financial gain. *TAC ¶¶4.32, 6.5.*  The legal liabilities and remedies for patients from this common compensation structure can, and should, be litigated on a class-wide basis.

Dr. Dreyer began working as a spine surgeon at Providence (d/b/a St. Mary Medical Center) ("SMMC") in June 2013 while Dr. Elskens began at Providence/SMMC in November 2015, after being recommended by Dr. Dreyer (who had studied under Dr. Elskens).  *TAC, ¶4.2, 4.3; TAC Exhibit 1 at p. 4; TAC Exhibit 2, ¶B.*

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

In the Settlement Agreement, Providence admits that both these surgeons were paid according to a bonus schedule based on a personal productivity metric known as Work Relative Value Units (wRVUs), which was calculated based on a value assigned under the Medicare Physician Fee Schedule to the services personally furnished by the individual neurosurgeon. *Exhibit 2 of the TAC, ¶C.* The SMMC neurosurgeons were paid compensation for each wRVU that they generated, with no cap on the wRVU-based compensation that they earned. *Id.* The greater the number of procedures of higher complexity, the greater the compensation the neurosurgeon received. *Id.* Under this scheme, between 2014 and 2018, Dr. Dreyer's personal productivity (as measured by wRVUs) exceeded the 90th percentile of physician market survey data and he was among the top producing neurosurgeons in the Providence system. Indeed, according to Providence's IRS annual filings, Dr. Dreyer was the top producing neurosurgeon between 2014 and 2018 and actually was a top earner of **all Providence employees** behind only CEO Rod Hochman (and President Michael Butler in 2016-2018). *Bollinger Decl. in Support of Motion to Certify ("Bollinger Decl./Certify") (ECF-119), ¶18, Exh. A.[2]* Based on this productivity scheme, the Settlement stated that, between 2014 and 2017, Dr. Dreyer earned between $2.5 million and $.2.9 million annually (with the 990 form showing earnings of over $3 million in 2018). TAC*, Exh. 2, ¶C; Bollinger Decl./Certify (ECF-119), ¶18, Exh. A.* This bonus metric scheme, and its supervision, would have been created, approved, monitored, and paid by the Providence control group in Renton, WA.

The DOJ Settlement identifies concerns about these surgeons operating under this scheme including engaging in:

---

[2] This exhibit shows that, in 2014, Dr. Dreyer also earned less than Medrice Coluccio (CEO/SW WA region).

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

(a) Falsifying, exaggerating, and/or inaccurately diagnosing patients' true medical conditions in order to obtain reimbursement for surgical procedures;

(b) Performing surgical procedures that did not meet the medical necessity guidelines and requirements set forth by Medicare and other governmental health insurance programs;

(c) "Over-operating" – i.e., performing a surgery of greater complexity and scope than was indicated and medically appropriate;

(d) Jeopardizing patient safety by attempting to perform an excessive number of overly complex surgeries;

(e) Endangering patients' safety;

(f) Creating an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries;

(g) Performing surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and

(h) Failing to adequately and accurately document certain procedures, diagnoses, and complications.[3]

On February 23, 2017, as a result of concerns raised internally, Dr. Elskens was placed on administrative leave; Providence then investigated; and Providence accepted his resignation on May 8, 2017. TAC*, Exh. 2, ¶E.* On May 22, 2018, as a result of concerns, Dr. Dreyer was placed on administrative leave; Providence investigated; and Providence accepted his resignation on November 13, 2018. *Id., ¶F.*

Providence did not report either surgeon to the Washington State Department of Health ("WDOH") per RCW 70.41.200, or to the National Practitioners Data Base, as required. *Id., ¶¶E, F.* Indeed, this failure to disclose was first reported to the Washington DOH by the April 2022 DOJ Settlement. *Bollinger Decl./Certify (ECF-119), ¶19, Exh. B, Bates p. 5* (DOH stating, "There

---

[3] *TAC, Exh. 2, ¶D.* Jason Dreyer was accused of items (a) through (h); Daniel Elskens was accused of items (e) through (h). *Id.*

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

was no complainant to contact because the complaint was generated by the WA Department of Health related to a hospital court settlement").

On November 14, 2022, the WDOH found that, by failing to report these two surgeons, Providence/SMMC violated its mandatory reporting requirements under RCW 70.41.210. *Id., ¶19, Exh. B, Bates p. 14.* Providence did not appeal this finding but entered a Plan of Correction instead. *Id., p. 17.*

Jason Dreyer did not attempt to renew his privileges at SMMC because Providence – "Renton" (the highest, corporate level) – did not want him to return to their medical facilities. *Bollinger Decl. (Sealed) Filed in Support of Motion to Certify at ¶2, Exh. 1.*[4] Instead, Dr. Dreyer made his way to MultiCare Health Systems in Spokane. *TAC, ECF 80 at e.g., ¶1.12.* Providence submitted assurances to MultiCare that Dr. Dreyer was in good standing with Providence as late as May 8, 2019, *Bollinger Decl./Certify, ¶20 (ECF-119), Exh. C,* despite knowing (a) the serious allegations against him; (b) its own investigation of him; (c) his administrative leave status with Providence; and (d) its intention (at the corporate level) not to reinstate him.

Providence's uncapped wRVU bonus structure is designed so both surgeons ***and the hospital system*** receive significant income from sources using this productivity metric, especially health insurers. Here, the wRVU system created significant profits for Providence pursuant to aggressive, unnecessary care given to patients by Drs. Dreyer and Elskens. Providence's checks and balance would have signaled that this financial scheme was resulting in improper income streams, *Bollinger Decl./Certify, ¶21, Exh. D generally.* A reasonable hospital would have taken multiple steps to protect patients, as required by law and ethics. *Id.* But Providence took no action;

---

[4] This exhibit was found in a public file on Pacer. *Bollinger Decl. (Sealed), ¶3.* Providence counsel indicates this exhibit was intended to be filed under seal, so we file it under seal here (though it remains in the public domain) *Id.*

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 8 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

instead, it promoted this income stream to continue unabated. According to whistleblower Dr. David Yam, who brought the False Claims Act that led to the DOJ Settlement, his concerns about patient safety were dismissed by Providence until he used the terms "fraud," "malpractice" and "harm" in April 2018. *TAC, Exh. 1, ¶18.* Even then, Providence told Dr. Yam there was no evidence of false billing. *Id.* The fact Providence allowed the behavior to continue despite required internal checks and balances, and despite Dr. Yam's warnings, is evidence that the incentivizing program resulting in these improper surgeries was by design, not mistake.

Only after the DOJ confronted Providence did Providence choose to resolve the health care fraud claims lodged against it for these surgeons' medically unnecessary or otherwise improper surgeries. Importantly these were surgeries that Providence (a) had represented were medically necessary and proper;[5] (b) had received payment for, based on those representations; and (c) had never reimbursed any payments until after the Settlement in 2022. Both the amount of the settlement itself ($22.7 million) and Dr. Dreyer's 90th percentile ranking of pay are the kinds of statistics that are red flags for overcompensation in false claims cases. *See e.g., United States ex rel Bookwalter v. UPMC*, 946 F.3d 162, 172 (3rd Cir. 2019). In the DOJ Settlement Agreement, Providence admitted to a pattern of activity carried out over a period of years that should have raised, and did raise, serious concerns about these surgeons, but which triggered no action or disclosure by Providence from 2013 to 2022, a time period which included its failure to disclose to authorities Dr. Dreyer's administrative leave while under investigation and prior to his hiring at MultiCare.

---

[5] By statute, Medicare requires medical providers to declare under penalty of perjury that surgeries are medically necessary and proper before a surgery is approved. *42 C.F.R. 42410(a).* This is the basis for the FCA action. *TAC, Exh. 1, ¶1; TAC, Exh. 2 (Settlement Agreement), ¶¶G, H, I.* We expect this type of sworn affirmation is standard practice in the insurance industry for both government and private insurers.

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 9 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

2

## IV. LAW AND ARGUMENT

3      Plaintiffs seek certification of damages classes under Fed. R. Civ. P. 23(b)(3), injunctive

4   relief classes under Rule 23(b)(2), and issue classes under Rule 23(c)(4).  Class actions under

5   Rule 23 are liberally interpreted to avoid multiplicity in litigation and to save the time and

6   expense of repetitive litigation.  *Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Wn.2d

7   507, 515 (2018); *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 278 (2011); *Sitton v.*

8   *State Farm Mut. Auto. Ins.,* 116 Wash. App. 245, 256 (Wash. 1st App. 2003) (Washington courts

9   construe the class action rule "liberally in favor of permitting certification").    Because class

10  determinations are subject to modification, "the trial court should err in favor of certifying the

11  class."  *Moeller*, 278.

12      A class action requires four initial requirements: (i) numerosity; (ii) common questions of

13  law or fact; (iii) typical claims of class representatives; and (iv) adequate representation.  Fed. R.

14  Civ. P. 32(a). "These Rule 23(a) prerequisites are often referred to in shorthand as numerosity,

15  commonality, typicality, and adequacy." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1324 (W.D.

16  Wash. 2015) (Robart, J.). Plaintiff bears the burden of proving these requirements by a

17  preponderance of evidence.  *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods,*

18  *LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (*en banc*), *cert. denied*, 143 S. Ct. 424 (2022).

19      If these four requirements are met, a damages class should be certified if the common

20  questions of law predominate over, and are superior to, individual issues.  Rule 23(b)(3). Both

21  requirements of Rule 23(b)(3) are satisfied here.  Under Rule 23(b)(2), injunctive relief classes

22  should be certified when the party opposing certification has acted on grounds generally applicable

23

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 10 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

to the class where injunctive relief would provide relief to class members. *In re Xrem Antitrust Litigation*, 2023 WL 3440399, * (N.D. Cal. May 12, 2023); *Le v. Zuffa, LLC*, 2023 WL 5085064, *44 (D. Nev. Aug. 9, 2023) (certifying hybrid classes under (b)(2) and (b)(3)). Finally, there are sufficient common issues the resolution of which would materially advance the disposition of the litigation that class treatment is justified under Fed. R. Civ. P 23(c)(4). *Lynch v. Matterport, Inc.*, 2023 WL 5310558, *7 (N.D. Cal. August 16, 2023).

As this Court has noted previously: "Rule 23 'does not set forth a mere pleading standard.' Rather, certification is proper 'only if the trial court is satisfied, after rigorous analysis, that the rule's prerequisites have been satisfied.'" *Dunakin*, 99 F. Supp. 3d at 1325 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs understand it can even "be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* But the Court has "no license to engage in free ranging merits inquiries at the certification stage." Id., 1331. Given Providence's admissions, we always intended to seek early certification. With the current state of the law, we seek it now.

The Ninth Circuit has held that prior to completion of discovery, it is not necessary for plaintiff to submit a damages methodology at the class certification stage where damages will be based upon defendant's records. *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2612 (2023) ("'We agree with the district court that Owino did not need to present a fully formed damages model "when discovery was not yet complete and pertinent records may have been still within Defendant's control.'") (quoting and affirming district court);

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 11 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

*Huckaby v. CRST Expedited, Inc.*, 2023 WL 2869276, *3 (C.D. Cal. April 19, 2023) (granting certification pre-discovery based on future reliance on defendant's corporate records for "class suffered damages traceable to the same injurious course of conduct"). Here, discovery has not even commenced. Defendants maintain sole control over the financial records showing how they executed their incentive formula to generate false claims—they have refused to disclose even the names of surgery patients. Nonetheless, Defendants have themselves demonstrated the feasibility of formulating class-wide damages from this withheld material through negotiations with the government as to the value of medically unnecessary services.

**A. The Class is Numerous**

Numerosity is determined by a sufficient number of class members that individual joinder would be impracticable. *Fed. R. Civ. P. 23(a).* As a general matter, courts consider forty class members sufficient to satisfy numerosity, although smaller numbers can suffice. *Dunakin*, 99 F.Supp.3d at 1327; *McCluskey v. Trustees of Red Dot Corp. ESOP*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (citing cases). The Ninth Circuit has recently opined that "proposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large." *Johnson v. City of Grants Pass*, 72 F.4th 868, 886 (9th Cir. 2023).

Here, Providence has indicated there are at least 1,750 patients that underwent surgeries by Drs. Dreyer and Elskens, and MultiCare has represented that at least 475 of its patients had surgeries by Dr. Dreyer after he left Providence. *See e.g., ECF 110, p. 2.* This Court has held that a defendant's issuance of more than 40 notices of personal information disclosures to subclass members was sufficient to satisfy numerosity. *Does 1-10 v. University of Washington*, 326 F.R.D. 669, 678-79 (W.D. Wash. 2018). Separately, or in combination, the claims are sufficiently numerous.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

Providence's legal position has been that nobody has been found harmed by the surgeries. *See e.g., ECF 21, p. 4, n.1.* This legal position is a debate on liability, which is not an issue at the certification stage. *Jammeh v. HNN Assocs.*, LLC, 2020 WL 5407864, *20 7 n.23 (W.D. Wash. Sept. 9, 2020) (Robart, J.). For certification purposes, the numbers are significant and the numerosity component has been met – the merits of the claims can be considered but should not involve "free ranging inquiries," *Dunakin*, at 1331. Moreover, any position that no patient was harmed belies Providence's payment of $22.7 million to settle the false health care claims with the government. Providence's $22.7 million payout alone is evidence supporting the DOJ's conclusion that "hundreds" were victims. This is so even though Plaintiffs have not been able to conduct discovery on how many patients the $22.7 million settlement represents, compared to how much money Providence received from government insurers (and does not take into account private insurer patients, which will necessarily increase numbers).

Further, according to JND Legal Administration, about 25 percent of the Dreyer/Elskens patients responded to the jurisdictional questionnaire, *see ECF 111, p. 4, ¶11,* which is a high number of patients showing interest in this case when no follow-up on contacts occurred. Using just the 25 percent response rate as an estimated number of claimants would result in 595 class members (478 Providence patients and 117 MultiCare patients). *Id.* This meets the numerosity requirement.

We expect substantive discovery to uncover specific numbers of individuals harmed by medically unnecessary or otherwise improper surgeries; Plaintiffs submit that Providence has compiled such lists already. *See ECF 92, pp. 25-26 (and citations).* Plaintiffs also expect the number of known claimants who suffer from medically unnecessary/overly complex surgeries to

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 13 OF 30

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

be high and to grow. In fact, the preliminary review of medical files by the Gilbert Law Firm has found nearly every file shows issues as alleged in this class action. *See Richards Decl. re Motion to Certify (ECF-122), ¶¶10-12.* This compelling pattern shows these individuals likely will be claimants in this case. This number by itself would meet the numerosity requirement.

Further, Plaintiffs submit that *every* Dreyer/Elskens patient is a claimant in this case. Defendants designed and implemented a financial incentive program that put every patient at risk – which makes every patient a victim. The fraud was perpetrated when the incision was made. Patients whose surgeries may have been less complex but still invasive would be, at a minimum, unwitting pawns in the Defendants' efforts to cover up their unlawful scheme, resulting in damages as alleged in the complaint. The unifying feature is the incentive program scheme, which is the vehicle by which Providence incentivized these surgeons to perform improper surgeries. *Cf. Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (class certification proper in a class action involving health care claims where policies and practices were alleged to expose potential class members to harm). Numerosity is met.

**B. Common Issues of Fact or Law Apply to the Class Member Claims**

Common issues of fact or law are those of "'such a nature that it is capable of classwide resolution.'" *Dunakin*, 99 F.Supp.3d at 1328 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[C]ommonality poses a 'limited burden' because it 'only requires a single significant question of law or fact.' *Dunakin*, 99 F.Supp.3d at 1328 (quoting *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 589 (9th Cir.2012)). The class commonality requirement is construed permissively, *Dunakin*, 99 F.Supp.3d at 1328, and all questions of fact and law need not be common to satisfy the rule. *Jammeh v. HNN Assocs., LLC*, *15 (quotations omitted).

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 14 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

All that Rule 23(a)(2) requires is a "'single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza*) (emphasis in original) (cited with approval in *Jammeh*). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean,* 31 F.4th at 666-67 (emphasis in original). The merits of commonality claims need not be litigated prior to certification. *See e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017) ("Plaintiffs' position in this regard may or may not prevail, but that is a merits question not appropriately addressed at the class certification stage") *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."); *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (stating that "demonstrating commonality does not require proof that the putative class will prevail on whatever common questions it identifies"), *both cited with approval in Just Film, supra.* "Commonality may be met where the claims of every class member are based on a common legal theory, even though the factual circumstances differ for each member." *Parsons v. Ryan*, 289 F.R.D. 513, 522 (D. Ariz 2013, *aff'd*, 754 F.3d 657 (9th Cir. 2014) (quotation omitted) (in a case involving health care claims, expert opinions regarding policy and practices was sufficient to establish that a common question exists as to all putative class members for certification purposes).

This is especially true for the profiteering claims ("little RICO"), since "the issues of law and fact in making out a RICO violation will generally be common to all Plaintiffs' claims,

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

because Plaintiffs are asserting a single fraudulent scheme by the defendants which injured each plaintiff." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 255 (C.D. Cal. 1988). *See, e.g, Painters & Allied Trades Dist. Council v. Takeda Pharm. Co.*, 2023 WL 4191651, *8 (C.D. Cal. May 24, 2023) (elements of RICO liability predominate).

### 1. Common Liability Issues

"'Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.'" *Olean*, 31 F.4th at 665 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)); *United Energy, supra* (RICO claim alleging single fraudulent scheme will generally be common to all Plaintiffs' claims). Multiple common liability issues exist, including whether Defendants engaged in a pattern of profiteering activity involving a financial incentive bonus scheme which

    (i)     injured Plaintiffs in their persons, properties, or businesses;

    (ii)    breached their fiduciary, statutory, or other legal duties to Plaintiffs, including their mandatory reporting requirements;

    (iii)   unjustly enriched themselves at Plaintiffs' expense; or

    (iv)   breached the standard of care in a medical/corporate negligence context.[6]

The pattern itself has common issues, such as how the formula incentivizing medically unnecessary or overly complex surgeries of which Providence had notice but nonetheless

---

[6] The unlawful profiteering claims dovetail with the medical/corporate negligence claims, since executing this kind of scheme is not only actionable under, e.g., RCW 9A.82 (the unlawful profiteering statute) but also falls below the standard of care. *Bollinger Decl./Certify (ECF-119)*, ¶¶21, 22; Exhs. D at e.g., ¶¶22, 26, 40, 42; E at ¶12. .

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 16 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

continued to promote without interruption, or how Providence failed to follow mandatory

reporting requirements, in violation of its implied statutory duty of care. *TAC at Section VIII, ¶¶*

*8.1-8.12.* "RICO claims 'are often susceptible to common proof.'" *Belin v. Health Insurance*

*Innovations,* 337 F.R.D. 544, 557 (S.D. Fla. 2021) (quoting *Williams v. Mohawk Industries, Inc.,*

465 F.3d 1277, 1356 (11th Cir. 2006)). "In addition to raising common questions that focus on a

scheme, RICO claims likewise raise questions of a standardized course of conduct." *Belin,* 557.

*See Zwicky v. Diamond Resorts Management Inc.,* 343 FR.D. 101, 118 (D. Ariz. 2022) ("whether

the Defendants' conduct constitutes the requisite pattern of racketeering activity for purposes of

the federal and Arizona RICO").

A detailed outline of these common liability issues is attached and incorporated herein.

*Bollinger Decl./Certify (ECF-119), ¶23, Exh. F.* The answers to these common issues would

materially advance disposition of this case such that issue certification would be appropriate

under Rule 23(c)(4).

### 1. Common Remedy Issues

Likewise, multiple common issues exist of the remedies appropriate to Plaintiffs that are

amenable for awards on a classwide basis. For example, the Ninth Circuit reversed the denial of

certification where the trial court found the remedy of restitution would be too individualized.

*See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015). As explained

in *Pulaski*, "[A] court need not make individual determinations regarding entitled to restitution.

Instead, restitution is available on a classwide basis once the class representative makes the

threshold showing of liability…" *Id.* Washington's unlawful profiteering civil statute, one of

Plaintiffs' claims, classifies forfeitures as victim restitution, *see RCW 9A.92.100(f)* (permitting

"forfeiture first as restitution for any person damaged by an act of criminal profiteering that is

421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

part of a pattern of criminal profiteering…"), thus dovetailing with the *Pulaski* case as providing a classwide remedy option.  In sum, multiple common remedy issues exist, including:

> (i)     actual and treble damages, investigative costs, reasonable attorney fees, and disgorgement under RCW 9A.82.100(4)(d);

> (ii)    civil penalties up to $250,000 under RCW 9A.82.100(1)(d), and under *RCW 9A.83.020(5);*

> *(iii)*   forfeitures of "[a]ll proceeds traceable to or derived from an offense included in the pattern of criminal profiteering activity" (i.e., the ill-gotten gains from the private and government health care proceeds – information uniquely in the possession of Defendant Providence), and other forfeitures *see RCW 9A.82.100(4)(f)(i)-(iii); RCW 9A.83.020*

> (iv)    statutory and actual damages;

> (v)     restitution on a classwide basis, see *Pulaski, supra*; and

> (vi)    market value disgorgement, where disgorgement can be determined pursuant to a specific action (an example includes Item (iii) above).  *See e.g., Creel v. Says*, 2022 WL 4490141 (E.D. Tex. Sept. 27, 2022); *Bokusky v. Edina Realty, Inc.*, 1993 WL 515827, *10 (D. Minn. Aug. 6, 1993) ("the remedy plaintiffs' seek under RICO is disgorgement of the commission paid to the agents, a remedy easily calculated and most appropriate for class action treatment under RICO").[7]

---

[7] The Fourth Circuit held disgorgement to be a proper equitable remedy in a class action lawsuit, distinguishing it from restitution and holding that "'[d]isgorgement wrests ill-gotten gains from the wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself from his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts[.]'" *Peters v. Aetna Inc.*, 2 F.4th 199, 233-34 (4th Cir. 2021), cert. denied sub nom., *OptumHealth Care Sols. V. Peters*, 142 S. Ct. 1227 (2022) (quoting *SEC v. Huffman*, 996 F.2d 800 802 (5th Cir. 1993)).

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

As noted above, the Ninth Circuit has held that prior to completion of discovery, it is not necessary for plaintiff to submit a damages methodology at the class certification stage where damages will be based upon a defendant's records. *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2612 (2023; *Huckaby v. CRST Expedited, Inc*., 2023 WL 2869276, *3 (C.D. Cal. April 19, 2023). Nonetheless, we put forward common remedies here; resolution of these common remedy issues would materially advance disposition of this case such that issue certification would be appropriate under Rule 23(c)(4).

**C.  The Claims Are Typical**

"'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Dunakin,* 99 F.Supp.3d at 1329 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)).  "[C]ourts consider 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon*, 976 F.2d at 508). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id*. (quoting *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014).

> Where, as here, a defendant engages in disputed conduct pursuant to a policy or practice: the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class. We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.'"

*Dunakin v. Quigley*, 99 F. Supp. 3d at 1329 (quoting *Parsons,* 754 F.3d at 687).

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

Here, the claims of class representatives are based upon the same defendant policy as those of class members. *See* ECF 66 (Omnibus Order), at 2. *See, e.g., Just Film, Inc.,* 847 F.3d at 1116-17 (injury from "same scheme," and "allegation of harm based on some of the activities comprising the RICO violation is sufficient" for typicality).

Plaintiff Representatives submit the declaration of Dr. Michael Landi that their claims of medically unnecessary, overly complex, and/or otherwise improper surgeries are accurate and typical. *Bollinger Decl./Certify (ECF-119), ¶22, Exh. E.*[8]

### D. The Representation is Adequate

Adequate representation is present when the class representatives lack a conflict with class members and will prosecute the action vigorously on behalf of the class. *Dunakin*, 99 F.Supp.3d at 1331 (citing cases). The class representatives do not have any conflicts of interest with class members, and proposed class counsel are competent and suitable for appointment under Rule 23(g). *See Gilbert, Bollinger, Richards, & Reed Declarations (ECF 119-122). See Dunakin,* 99 F.Supp.3d at 1332 (adequacy of counsel subject to appointment considerations about the work "Plaintiff's counsel has done in identifying and investigating potential claims, counsel's experience with class litigation and the types of claims at issue, counsel's knowledge of the applicable law, and the resources that counsel will commit to representing the class").

### E. Class Certification Is Preferable Over Individual Cases.

Under Rule 23(b)(3), certification is appropriate when questions of law and fact common to the members of the class predominate over individual questions, and class treatment is

---

[8] Dr. Landi did not review medical files of two new plaintiff representatives proposed to be added, *see ECF-116* – Eben Nesje and Kirk Summers. They are added, however, because WDOH expert already found their surgeries to be not indicated and thus below the standard of care, making them appropriate candidates for Plaintiff Representatives. *See Gilbert Decl./Amend Complaint ECF-117), ¶2, Exh. A (Mr. Nesje is Patient C and Mr. Summers is Patient E).*

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 20 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

superior to other available means of adjudication.  Fed. R. Civ. P. 23(b)(3).  Four factors relevant to these inquiries are set forth in Rule 23(b)(3)(A)-(D) and include: (A) class member interests in controlling the prosecution of their claims; (B) the related litigation already begun; (C) the desirability of concentrating litigation in this forum; and (D) class management difficulties. Both predominance and superiority are satisfied here.

### 1.  Common Issues of Law and Fact Predominate Over Individual Issues.

Under Rule 23(b)(3), class certification is justified when common class claims predominate over those of individual class members. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017); *White v. Symetra Assigned Benefits Service Co*., 2022 WL 3092849, *4 (W.D. Wash. Aug. 3, 2022).  Thus, the common issue determinations of Rule 23(a) "overlap" with the predominance issues under Rule 23(b)(3). *Olean,* 31 F.4th at 664.  The predominance inquiry "pragmatically examines whether there is a common nucleus of operative facts in each class member's claim." *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wash. 2d 507, 516, 415 P.3d 224, 230 (2018).  "'Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class.'" *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 557–58 (9th Cir. 2019) (quoting *Ruiz Torres v. Mercer Canyons, Inc.,* 835 F.3d 1125, 1134 (9th Cir. 2016)).

"Predominance can be demonstrated by showing 'both that a given practice [of the defendant] was applied to all class members and that the class members are similarly situated, such that questions about the propriety of that practice can be answered on a classwide basis.'" *Remsnyder v. MBA Mortgage Services, Inc*., 2023 WL 5750412, *5 (D. Md. Sept. 6, 2023)

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 21 OF 30

**Gilbert Law Firm, P.S.**
421 W. Riverside, Ste 353
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

(quoting *Adair v. EQT Production Co.*, 320 F.R.D. 379, 401 (W.D. Va. 2017)). Here, the aforementioned common issues are derived from Defendants' own practices, policies, and pattern of conduct, which in turn will determine the damages, equitable relief, and particular issues that justify a class-wide response. RICO claims based upon a common scheme support a finding of predominance. *Custom Hair Designs by Sandy v. Central Payment Co.*, 984 F.3d 595, 601 (8th Cir. 2020).

"In a civil RICO action, the measure of damages 'is the harm caused by the predicate acts constituting the illegal pattern.'" *Just Film*, 847 F.3d at 1120 (quoting *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991)). Predominance is satisfied when "their damages arise from a course of conduct that impacted the class[, b]ut they need not show that each members' damages from that conduct are identical." *Just Film*, 847 F.3d at 1120."'Forcing numerous plaintiffs to litigate the alleged pattern or practice. , , in repeated individual trials runs counter to the very purpose of a class action.'" *Chavez*, 190 Wn.2d at 523 (quoting *Sitton*, 118 Wn. App. at 256).

Because Defendants' conduct was pursuant to a policy, practice, and scheme directed at all patient class members, as to which Defendants have since admitted responsibility with federal and state health authorities, the resulting predominance of common issues was by design and for financial gain. *Cf. Parsons v. Ryan*, *supra,* 289 F.R.D at 522; 754 F.3d at 676 (in a class action involving health care claims, both district court and appellate court recognized how expert testimony on policies and practices that showed systemic deficiencies that exposed potential class members to harm was sufficient evidence upon which to certify the class). And the uniform law common to all class claims is Washington law. *See TAC generally.*

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

"'When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Olean*, 31 F.4th at 668 (quoting *Tyson Foods*, 577 U.S. at 453). A "district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial." *Id.*; *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). "'[D]amage calculations alone cannot defeat certification.'' *Just Film, Inc.*, 847 F.3d at 1120 (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *In re Whirlpool Corp. Washer Products Liability Litigation*, 722 F.3d 838, 861 (6th Cir. 2013).

"At this stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability…." *Just Film, Inc.*, 847 F.3d at 1120. Similarly, the unlikely prospect that proposed class members might not have suffered injuries will not defeat a predominance finding because if this Court "determines in the future the class contains parties who are not able to recover on the merits, the Court may further refine the proposed class." *Williams v. PillPack LLC*, 343 F.R.D. 201, 214 (W.D. Wash. 2022).

Here, the amounts falsely claimed for medically unnecessary/overly complex surgeries were previously calculated by the defendants and government representatives. Defendants have already resolved, through negotiations with government representatives, the scope and membership in the settlement classes. Defendants also originally authored and implemented the formula and scheme for generating these same false claims, and they likely possess evidence of this handiwork. The statutory damages, civil penalty ($250,000), disgorgement, forfeiture, and

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 23 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

remedies authorized by state law will be derivative of these practices and can be determined by Defendants' own records. *See, e.g., Zyda v. Four Seasons Hotels and Resorts*, 2018 WL 1528159, *13 (D. Haw. March 28, 2018) (where disgorgement is a damages methodology based upon defense records, predominance satisfied), *appeal denied*, 2018 WL 3391612 (9th Cir. 2018); *Collins v. Quincy Bioscience, LLC*, 2020 WL 3268340, *29 (S.D. Fla. March 19, 2020) (Prevagen drug purchase price, full refund price sufficient classwide damage methodology). The unlawful profiteering claims dovetail with the medical/corporate negligence claims, given that the evidence of this kind of scheme is below the standard of care. Common issues predominate.

Predominance is derived not from just the common elements of the legal claims and remedies, but also from the common nucleus of operative facts. *Sitton v. State Farm Mutual Auto. Ins. Co.*, 116 Wash. App. 245, 256 (Wash. 1st App. 2003) (rejecting argument that predominance inapplicable "where the claim requires resolution of individual issues such as causation and harm"; "A common nucleus of operative facts appears to exist on this issue, and that satisfies the predominance standard of CR 23(b)(3).").  Each class member traveled through the same process from medical necessity recommendation to surgery, to false certification, presentment, and payment of claims, to Defendants' settlement admissions as to these false claims. The same Providence policy—the incentive formula scheme —furthered each class member unwittingly along this path. Defendants' own records will provide the financial evidence of this common process both as it was occurring and as it was later recounted in the settlement process as to all class members.  Where the relevant conduct is the behavior of Defendants and their policies and practices, and the locus of evidence "principally resides with Defendants," common issues predominate. *Rodriguez v. URS Midwest, Inc*., 2023 WL 76373877,

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 24 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

*9 (C.D. Cal. Aug. 15, 2023); *Zyda*, *13. As planned, the formula's financial benefits came to rest with the Defendants. "At the core of Rule 23(b)(3)'s predominance requirement is whether the defendant's liability to all proposed class members may be established with evidence common to all class members." 1 *McLaughlin on Class Actions* § 5:23 (20th ed.). Discovery may reveal which legal claims and remedies are most closely aligned with these common facts, but this deliberate, monitored, and perfected common chain of events will support the claims as alleged.

### 2. Class Action Proceedings Are Superior to Other Adjudication Methods.

Under Rule 23(b)(3), class certification is justified when class treatment is superior to other means of adjudication. *Just Film, Inc.*, 847 F.3d at 1123. "The superiority requirement tests whether 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.' *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 571 (S.D. Cal. 2013) (quoting *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996).

Four factors relevant to this inquiry include: (A) class member interests in controlling the prosecution of their claims; (B) the related litigation already begun; (C) the desirability of concentrating litigation in this forum; and (D) class management difficulties. Rule 23(b)(3)(A)-(D). These rule factors also support a class superiority finding here.

In Washington, the Supreme Court has indicated that, as "a general rule," class actions are superior to individual actions or joinder when there are forty or more class members. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn. 2d 507, 520-21, 415 P.3d 224, 232 (2018). Class members "have an interest in litigating their claims together" when a common nucleus of operative facts exists. *Id*. at 523. Here, the judicial economies of a single action are apparent not

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 25 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

only from the number of plaintiffs and the elements common to their legal claims and remedies, but also the common nucleus of operative fact generated by the Defendant's incentive formula scheme.

The Profiteering statute authorizes claims by persons injured by an act of criminal profiteering that is *"part of a pattern of criminal profiteering activity*." RCW 9A.82.100(1)(a) (emphasis added). That is consistent with RICO precedent under which "harm based on some of the activities comprising the RICO violation is sufficient." *Just Film*, 847 F.3d at 1117 (citing *See Deppe v. Tripp*, 863 F.2d 1356, 1366 (7th Cir. 1988)). Each plaintiff can invoke, and rely upon, evidence of the predicate offenses injuring other patients to establish that their personal injuries are "part" of the same larger pattern of misconduct. *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 270 (3d Cir. 2009) (predominance based on "whether these racketeering activities were recurring such that a pattern could be established"); *Wallace v. Powell*, 301 F.R.D. 144, 158 (M.D. Pa. 2014). This is also consistent with the purpose of class actions to litigate conduct forming a pattern or practice, policy or scheme of defendants. *Zwicky,* 343 F.R.D. at 118 ("whether the Defendants' conduct constitutes the requisite pattern of racketeering activity for purposes of the Federal and Arizona RICO"); *Williams v. Duke Energy Co*., 2014 WL 12651315, *14 (S.D. Ohio March 13, 2014) (predominance satisfied by alleging conduct "was part of the same illegal pattern and scheme"); *Chavez*, 190 Wash.2d at 523; *Pellino v. Brink's Inc*., 164 Wn. App. 668, 684 (Wash. 1st App. 2011).

Inventorying and assessing this common proof in one proceeding before a single trier of fact and addressing the same array of remedy issues, versus doing so in dozens of trials, is both more efficient and more conducive to consistent results. *Compare* Fed. R. Civ. P. 23(b)(1)(a)

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

(certification to avoid risk inconsistent adjudications creating inconsistent standards of conduct for party opposing the class). The same is true with regard to the medical/corporate negligence claims, since the implementation of such a scheme, if proven, necessarily falls below the standard of care.

The Rule 23(b)(3) factors ((A)-(D)) also support such a finding here. On the first factor – individual control of claims – Plaintiffs "have an interest in litigating their claims together because each [patient's] claim arises from a common nucleus of operative facts and relies on the same evidence." *Our Lady of Lourdes Hosp. at Pasco*, 190 Wash.2d at 523. "[F]orcing numerous plaintiffs to litigate the alleged pattern or practice ... in repeated individual trials runs counter to the very purpose of a class action." *Id*. (quoting *Sitton*, 116 Wash. App. at 256-57). Further, because this would be a Rule 23(b)(3) class, individual class members will be provided individual notice of their right to opt out of the class, and hence individual members will not be deprived of any personal interest in controlling their individual claim.

Second, the size of the potential individual damages award is not *de minimis*, but it has not generated a substantial number of individual lawsuits. Other than the related class litigation, there are only a handful of individual cases. Given that the two hospitals have acknowledged that over 2,000 patients have undergone spinal surgeries, the relatively infrequency of individual actions supports a finding of class superiority. *Stedman v. Progressive Direct Insurance Co*., 2021 WL 3036790, *5 (W.D. Wash. July 19, 2021). Furthermore, the possibility of individual recoveries does not, by itself, outweigh the other superiority factors. *Nichols v. GEICO*, 2021 WL 1661158, *14 (W.D. Wash. April 28, 2021) (three other rule factors justify superiority finding and outweigh possible size of individual damages).

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

The third factor – the desirability of concentrating litigation in this forum (if jurisdiction is found) – favors class treatment because (i) all claims arise under Washington law, (ii) the headquarters of Providence lies in this District, and (iii) Defendants have removed this case to this District.  *See, e.g., Bias v. Wells Fargo & Co*., 312 F.R.D. 528, 543 (N.D. Cal. 2015) (RICO suit superior because defendant "maintains its headquarters here"); *Ngethpharat v. State Farm Mutual Ins. Co.,* 339 F.R.D. 154, 170 (W.D. Wash. 2021) (application of Washington law to Washington residents); *Stedman*, 2021 WL 3036790, *6 (where claims are under Washington law, the Western District is an "'entirely logical place for the case to proceed'") (quoting *Brown v. Consumer Law Associates, LLC*, 283 F.R.D. 602, 616 (E.D. Wash. 2012*); Zelinsky v. Staples, Inc.,* 2008 WL 4425814, *6 (W.D. Pa. Sept. 29, 2008) (citing *Costa v. Scott Lab. LLC*, 2006 WL 27118, *5 (N.D. Ill. Jan. 3, 2006)("defendant's removal of a state class action significantly diminishes the merits of its challenge to the superiority of class certification under Rule 23(b)(3)")).

The fourth factor—manageability—does not preclude certification.[9]  The fact that some individual issues may remain does not justify a finding of unmanageability for class prosecution. *Our Lady of Lourdes Hospital at Pasco*, 190 Wash.2d at 521 ("But the fact that individual issues might take some time to resolve does not make a class action unmanageable. *See Miller*, 115 Wash. App. at 825-26, 64 P.3d 49; 1 NEWBERG & CONTE, *supra*, § 4.25, at 4-83.").[16] Trial courts have a "variety of procedural options to reduce the burden of resolving individual damage

---

[9] "[T]here is a "'well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns,' but rather should look to 'manageability as one component of the superiority inquiry.'" *Stedman*, 2021 WL 3036790, *6 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)).

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined." *Sitton*, 116 Wash.App. at 255). In particular, the Ninth Circuit has held that a district court "abused its discretion when it based its manageability concerns on the need to individually calculate damages." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013). Individual damage issues do not present a manageability issue where, as here, the defendant's own records will provide material, indisputable, evidence about the amount of damages. *Leyva*, 716 F.3d at 515.

## CONCLUSION

Plaintiffs respectfully request the Court to certify classes as requested.

I certify that this motion contains 8, 398 words, in compliance with the Local Civil Rules.

DATED this 29th day of December 2023.

GILBERT LAW FIRM, P.S.

*s/William A. Gilbert*
WILLIAM A. GILBERT, WSBA # 30592
BETH M. BOLLINGER, WSBA #26645
ASHLEY RICHARDS, WSBA #33047

LANKFORD & REED, P.L.L.C

*s/Terrance G. Reed*
TERRANCE G. REED, *Pro Hac Vice*

Attorneys for Plaintiffs

AMENDED MOTION TO CERTIFY CLASS
NO. 22-CV-00915-JLR
PAGE 29 OF 30

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 29th day of December 2023.

_____

RACHEL COOK

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, STE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315