UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINE ANGULO, et al.,

                     Plaintiffs,

        v.

PROVIDENCE HEALTH AND
SERVICES - WASHINGTON, et al.,

                     Defendants.

CASE NO. C22-0915JLR

ORDER

## I.    INTRODUCTION

Before the court is Plaintiffs'[1] amended motion to remand.  (Mot. (Dkt. # 163);
Reply (Dkt. # 167); *see* 3/25/24 Order (Dkt. # 160) (granting Plaintiffs' motion for leave
to file an amended motion to remand).)  Defendants Providence Health & Services –
Washington ("Providence"), Dr. Jason Dreyer, DO, Jane Doe Dreyer, Dr. Daniel Elskens,

---

[1] Plaintiffs are Caroline Angulo, Eric Keller, Eben Nesje, Kirk Summers, Christine Bash,
Raymond Sumerlin Jr., MaryAnn Sumerlin, Martin Whitney, and Sherryl Whitney.  (3d Am.
Compl. (Dkt. # 129) ¶¶ 2.2-2.8.)

DO, and Jane Doe Elskens (collectively, "Defendants") oppose Plaintiffs' motion.  (Resp. (Dkt. # 164); *see* Dreyer Joinder (Dkt. # 165) (joining in Providence's opposition); Elskens Joinder (Dkt. # 166) (same).)  On May 16, 2024, the court ordered Providence to show cause why the court should not find that Providence waived its argument that Dr. Elskens is a primary defendant who is not a Washington citizen by failing to assert it earlier in this litigation.  (5/16/24 OSC (Dkt. # 169).)  Providence filed a timely response, and Plaintiffs filed a timely reply.  (OSC Resp. (Dkt. # 170); OSC Reply (Dkt. # 172).)  The court has considered the motion, the parties' filings in support of and in opposition to the motion, the relevant portions of the record, and the governing law.  Being fully advised,[2] the court DENIES Plaintiffs' amended motion to remand.

## II.     RELEVANT BACKGROUND

The court set forth the factual and procedural history of this matter in detail in its March 17, 2023 order denying Plaintiffs' first motion to remand and its March 25, 2024 order granting Plaintiffs leave to file this renewed motion to amend.  (*See* 3/17/23 Order (Dkt. # 66) at 2-4; 3/25/24 Order at 2-5.)  Therefore, the court focuses here on the background relevant to the instant motion.

This matter arises from a settlement agreement between Providence, the United States, and the State of Washington, pursuant to which Providence agreed to pay millions of dollars to resolve allegations that it fraudulently billed federal and state health care

---

[2] Plaintiffs request oral argument; Providence does not.  (*See* Mot. at 1; Resp. at 1.)  The court determines that oral argument will not assist it in resolving this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    programs for certain neurosurgeries performed by Dr. Dreyer and Dr. Elskens at

2    Providence St. Mary Medical Center in Walla Walla, Washington.  (*See* Compl. (Dkt.

3    # 1-4); 3d. Am. Compl. (Dkt. # 129), Ex. 2 ("Settlement Agreement").)  Plaintiffs filed

4    this proposed class action in King County Superior Court in May 2022, on behalf of

5    patients who suffered injuries or damages as a result of procedures performed by Dr.

6    Dreyer and Dr. Elskens.  (*See generally* Compl.)

7         Plaintiffs allege that Providence "instituted a pattern and practice that encouraged

8    [Dr. Dreyer and Dr. Elskens] to conduct unsupervised spine surgeries at high-volume

9    rates . . . that provided the neurosurgeons financial incentives to perform a high volume

10   of surgical procedures." (3d Am. Compl. ¶ 1.4.)  According to Plaintiffs, this ultimately

11   resulted in the surgeons "performing medically unnecessary and otherwise improper

12   spine surgeries and conducting surgical procedures below the standard of care." (*Id.*

13   ¶¶ 1.4-1.6.)  Although Providence acknowledged that it was aware of concerns about the

14   surgeons' treatment practices, it allowed both surgeons to resign and did not report them

15   to the National Practitioner Data Bank ("NPDB") or the Washington State Department of

16   Health ("WDOH") as required by law.  (*Id.* ¶¶ 1.9, 4.23, 4.24.)  After Dr. Dreyer resigned

17   from Providence, he was hired by non-party MultiCare Health System ("MultiCare"),

18   where he allegedly continued his pattern of problematic treatment practices.  (*Id.* ¶ 1.12.)

19        Plaintiffs allege that Providence is liable for injuries and damages they suffered as

20   a result of medically unnecessary or improper surgeries conducted by Dr. Dreyer and Dr.

21   Elskens at Providence and by Dr. Dreyer at MultiCare.  (*See id.* ¶¶ 1.4-1.16.)  Plaintiffs

22

1  raise claims under Washington state law on behalf of three proposed classes.  (*See id.*

2  ¶¶ 7.1-23.2.)  Plaintiffs define the "Settlement Class" as including:

3      All patients whose treatments informed the basis of the settlement between
       PROVIDENCE and DOJ (quantified for settlement purposes as $22,690,458,
4      with $10,459,388 designated as restitution for settlement purposes), who, by
       definition, suffered special and/or general injury or damages from medical
5      procedures that were medically unnecessary or otherwise improper for said
       treatments.

6
   (*Id.* ¶ 6.2.1.)  They define the "Non-Settlement Class / Providence" as including:
7
       All patients who suffered injury or damages as a result of medical procedures
8      at PROVIDENCE, performed by Dr. JASON A. DREYER, DO and/or Dr.
       DANIEL ELSKENS DO that were medically unnecessary or otherwise
9      improper but whose treatments were not included in the settlement either
       because DOJ offered to settle for less than full restitution or because their
10     treatment was paid for by private health insurers such as Regence Blue
       Shield, or was paid privately, for treatments during the relevant time periods.

11
   (*Id.* ¶ 6.2.2.)  Finally, they define the "Non-Settlement Class / MultiCare" as including:
12
       All patients who suffered injury or damages as a result of medical procedures
13     at MULTICARE performed by Dr. JASON A. DREYER, DO that were
       medically unnecessary or otherwise improper but whose treatments were not
14     included in the restitution settlement because DOJ sought reimbursement for
       payments to PROVIDENCE only, for treatments during the relevant time
15     periods.

16  (*Id.* ¶ 6.2.3.)

17      Providence timely removed the action to this court on June 30, 2022, pursuant to

18  the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (*See* Not. of Removal

19  (Dkt. # 1) ¶¶ 4-19.)  Plaintiffs filed their original motion to remand on July 28, 2022.

20  (MTR (Dkt. # 32).)  On March 17, 2023, the court denied Plaintiffs' motion without

21  prejudice.  (3/17/23 Order at 8-12.)  The court concluded that Providence had met its

22  burden to show that the matter met the requirements for CAFA removal.  (*Id.*)  It could

1   not, however, determine whether any exception to CAFA applied absent information

2   about the citizenship of the members of Plaintiffs' proposed classes.  (*Id.*)  Accordingly,

3   the court ordered the parties to conduct jurisdictional discovery to ascertain the

4   citizenship of the proposed classes.  (*Id.* at 16; *see also* 5/15/23 Order (Dkt. # 79);

5   7/24/23 Order (Dkt. # 103) (subsequent orders regarding jurisdictional discovery); Joint

6   Statement (Dkt. # 92) (setting forth the parties' proposed procedures for jurisdictional

7   discovery).)  On July 24, 2023, the court resolved certain issues regarding the parties'

8   discovery plan and appointed Providence's proposed discovery program administrator,

9   JND Legal Administration ("JND"), to administer the plan.  (7/24/23 Order at 7-12.)

10          On October 20, 2023, JND's Vice President of Operations filed a declaration in

11  which she disclosed JND's findings regarding the citizenship of the members of

12  Plaintiffs' proposed classes.  (*See generally* Garr Decl. (Dkt. # 111).)  JND reported the

13  following results based on 422 valid survey responses from Providence U.S. citizen

14  patients and 107 valid survey responses from MultiCare U.S. citizen patients:

15

|  | Providence Responses | MultiCare Responses | Aggregate Responses |
|---|---|---|---|
| Total U.S. Citizens | 422 | 107 | 529 |
| Washington Citizens | 202 (47.87%) | 95 (88.79%) | 297 (56.14%) |
| Citizens of Other States | 220 (52.13%) | 12 (11.21%) | 232 (43.86%) |

19  (*Id.* ¶¶ 19-20; *id.*, Ex. A.)

20          On March 29, 2024, the court granted Plaintiffs' motion for leave to file an

21  amended motion to remand.  (3/29/24 Order (Dkt. # 162).)  Plaintiffs filed their amended

22  motion on April 11, 2024.  (Mot.)  Providence timely responded on April 29, 2024, and

1  Plaintiffs filed a timely reply on May 3, 2024.  (Resp.; Reply.)  The parties then

2  completed supplemental briefing in accordance with the court's May 16, 2024 order.

3  (*See* 5/16/24 Order; OSC Resp.; OSC Reply.)  The motion is now ripe for decision.

### III.    ANALYSIS

5          Plaintiffs urge the court to remand this matter under the discretionary home-state

6  exception to CAFA jurisdiction.  (*See generally* Mot.)  Providence opposes the motion.

7  (*See generally* Resp.)  For the following reasons, the court denies Plaintiffs' motion to

8  remand.

9          CAFA authorizes federal subject matter jurisdiction over class actions in which

10  the amount in controversy exceeds $5,000,000, the proposed class has at least 100

11  members, and minimal diversity exists between any plaintiff and any defendant.

12  28 U.S.C. § 1332(d)(1), (2), (5).  There is no presumption against removal under CAFA

13  as there is for a typical removal of a state court case on diversity grounds.  *See Dart*

14  *Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval

15  presumption attends cases invoking CAFA, which Congress enacted to facilitate

16  adjudication of certain class actions in federal court.").  Once the removing party

17  establishes CAFA jurisdiction, a party seeking remand must show, by a preponderance of

18  the evidence, that one of three exceptions to CAFA jurisdiction applies:  (1) the local

19  controversy exception; (2) the mandatory home-state exception; or (3) the discretionary

20  home-state exception.  *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220-21, 1223

21  (9th Cir. 2020); 28 U.S.C. § 1332(d)(3), (4).

22

1    Plaintiffs concede that only the discretionary home-state exception to CAFA

2    jurisdiction remains at play after jurisdictional discovery because they cannot show that

3    at least two-thirds of the class members in the aggregate are citizens of Washington.

4    (Mot. at 10); *see* 28 U.S.C. § 1332(d)(4)(A)-(B).  To qualify for that exception, Plaintiffs

5    must first establish by a preponderance of the evidence that "greater than one-third but

6    less than two-thirds of the members of all proposed classes in the aggregate and the

7    primary defendants" are citizens of Washington.  28 U.S.C. § 1332(d)(3).  If Plaintiffs

8    meet that burden, the court "may, in the interests of justice and looking at the totality of

9    the circumstances," remand the case after considering six discretionary factors.  *Id.*  The

10   court concludes that it must deny the motion to remand because Plaintiffs cannot show

11   that all of the primary defendants are citizens of Washington.

12   There is no dispute that Providence is a citizen of Washington.  (*See, e.g.*, Am.

13   Providence Answer (Dkt. # 133) ¶ 2.13 (admitting that Providence is a Washingon

14   nonprofit corporation with its primary place of business in Washington).)  Thus,

15   regardless of whether it is or is not a primary defendant, its citizenship does not

16   disqualify Plaintiffs from invoking the discretionary home-state exception.  There also

17   can be no dispute that "Jane Doe Dreyer" and "Jane Doe Elskens" are not primary

18   defendants.  Plaintiffs mention them in their complaint only to allege that Dr. Dreyer and

19   Dr. Elskens committed their "acts or omissions . . . both for, and on behalf of," their

20   marital communities.  (*See* 3d Am. Compl. ¶¶ 2.14-2.15.)  As a result, the citizenship of

21   Ms. Dreyer and Ms. Elskens does not factor in to the discretionary home-state exception

22   analysis.  *See* 28 U.S.C. § 1332(d)(3).

1   In their motion, Plaintiffs suggest that they consider Providence to be the only

2   primary defendant; they do not address whether Dr. Dreyer and Dr. Elskens are primary

3   defendants.  (*See generally* Mot.; *see id.* at 20 (referring to "Plaintiffs' election to sue the

4   primary defendant in its primary place of business").)  In response, Providence argues

5   that the discretionary home-state exception cannot apply because Dr. Elskens is a primary

6   defendant but is not a Washington citizen.  (Resp. at 9-10 (citing Am. Elskens Answer

7   (Dkt. # 134) ¶ 2.15 ("Dr. Elskens is not currently a resident of Washington.")).)

8   Plaintiffs counter that (1) Providence waived its right to raise this argument now because

9   it failed to make it in response to Plaintiffs' original motion to remand (Reply at 6-8) and

10  (2) Dr. Elskens cannot be considered a primary defendant because he is not liable to all

11  class members and completed a "much smaller number" of surgeries than Dr. Dreyer (*id.*

12  at 9-10).  In response to the order to show cause, Providence argues that it did not waive

13  its "primary defendant" argument because Plaintiffs bear the burden in the first instance

14  to prove that the discretionary home-state exception applies, and they have failed to do

15  so.  (OSC Resp. at 2-3, 5.)

16   The court notes its frustration with the failure of Providence and Dr. Elskens to

17  raise the primary defendant issue earlier in this litigation.  As the court explains in more

18  detail below, had Providence addressed Dr. Elskens's citizenship and whether he was a

19  primary defendant in opposing Plaintiffs' original motion to remand, it would have been

20  clear more than a year ago that only the local controversy exception to CAFA jurisdiction

21  could possibly apply and the scope of jurisdictional discovery might have been narrowed.

22  *Compare* 28 U.S.C. § 1332(d)(4)(A) (requiring that at least one "significant" defendant

be a citizen of the state in which the action was filed); *with* 28 U.S.C. § 1332(d)(3), (4)(A) (requiring that the primary defendants be citizens of the state in which the action was filed).  As a result, Plaintiffs' motion for leave to file an amended motion to remand after jurisdictional discovery would have been unnecessary because fewer than two-thirds of the class members in the aggregate are citizens of Washington.  *See* 28 U.S.C. § 1332(d)(4)(A).  Even if Providence and Dr. Elskens had first raised their primary defendant argument in opposing Plaintiffs' motion for leave to file an amended motion to remand, briefing on the instant motion to remand, at least, could have been avoided. (*See, e.g.*, Mot. for Leave Resp. (Dkt. # 157) (saying nothing about the primary defendant issue); 3/18/24 Elskens Joinder (Dkt. # 158) (same).)  Providence's attempt to shift the blame onto Plaintiffs for failing to raise Dr. Elskens's citizenship earlier is not well-taken.  (*See, e.g.*, OSC Resp. at 4 (arguing that Plaintiffs should have been aware, based on news reports and Dr. Elskens's corporate disclosure filing (*see* Dkt. # 62) that Dr. Elskens was no longer a citizen of Washington).)  Defendants' failure to raise the primary defendant issue in response to Plaintiffs' original motion to remand has wasted the court's time and resources; delayed the progress of this litigation; and caused the parties to incur costs and attorneys' fees that they otherwise would not have faced.

Nevertheless, it is Plaintiffs' burden to establish that remand is warranted under a CAFA exception.  *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019). Plaintiffs have not identified any case in which a court found that a defendant waived its ability to argue that the plaintiff failed to prove a statutory prerequisite for a CAFA exception (*see generally* Reply; OSC Reply), and the court has not found any such case

1    in its own research.  Therefore, the court concludes that Providence has not waived its

2    argument that Dr. Elskens is a primary defendant who is not a citizen of Washington.

3         CAFA does not define the term "primary defendant."  *See Singh*, 925 F.3d at

4    1067-68.  In the Ninth Circuit, however, a court considering whether a defendant is

5    primary within the meaning of CAFA must first assume that all defendants will be found

6    liable.  *Id.* at 1068.  The court should then consider whether the defendant is alleged to be

7    directly responsible for the harm to the proposed class, as opposed to being vicariously or

8    secondarily liable.  *Id.*  Finally, the court should consider the defendant's potential

9    exposure to the class relative to the exposure of other defendants.  *Id.*  These

10   considerations are not exhaustive, and the court should not apply them mechanistically.

11   *Id.*  Rather, the goal is to determine whether a defendant is a "principal, fundamental, or

12   direct" defendant.  *Id.* (quoting *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497,

13   504 (3d Cir. 2013)).

14        *Singh v. American Honda Finance Corporation* is instructive.  *Id.* at 1069.  In that

15   case, the plaintiff sued American Honda Finance Corporation ("AHFC") and several

16   automobile dealerships for allegedly charging consumers improperly for add-ons when

17   they purchased their vehicles.  *See id.* at 1058-61.  The district court held that AHFC was

18   a primary defendant because "each claim in the complaint was asserted against

19   'Defendants,' without differentiating between them."  *Id.* at 1069.  The Ninth Circuit

20   disagreed.  It concluded that the dealerships were the primary defendants because each of

21   them were alleged to be responsible for the direct harm to consumers:  charging them for

22   unwanted add-ons.  *Id.*  AHFC, meanwhile, was allegedly liable for "permitting this

1    conduct and benefitting from it in the form of additional interest payments." *Id.*  Thus,

2    because AHFC's liability "depend[ed] on a 'threshold finding' that the [dealerships]

3    acted unlawfully," AHFC was a secondary defendant. *Id.*  The court also noted that the

4    dealership defendants had more exposure to the class because AHFC benefitted only by

5    receiving additional interest on the cost of the improper add-ons, while the dealerships

6    benefitted from the full cost of the add-ons.  *Id.* (citing *Vodenichar*, 733 F.3d at 505-06).

7            Here, as alleged in Plaintiffs' third amended complaint, Dr. Dreyer and Dr.

8    Elskens are responsible for the direct harm to the class members because the claims arise

9    from the surgeons allegedly subjecting their patients to medically unnecessary or

10   improper treatment.  (*See* 3d Am. Compl. ¶¶ 7.1-17.3 (alleging claims arising from

11   surgeries conducted by Dr. Dreyer and Dr. Elskens); *see also id.* ¶¶ 6.2.1-6.2.3 (defining

12   the classes as consisting of patients who suffered injury or damages as a result of

13   "medically unnecessary or otherwise improper" medical procedures performed by Dr.

14   Dreyer and/or Dr. Elskens).)  Providence's alleged liability, for the most part, is

15   secondary to the harm caused by the surgeons' allegedly improper surgeries.  (*See, e.g.,*

16   *id.* ¶ 1.15 ("[T]his Cause captures the broad body of patients and their families impacted

17   by the negligent, violative, unethical, and fraudulent treatment practices of [Dr. Dreyer]

18   and [Dr. Elskens] under the direct authority of PROVIDENCE[.]").)  Thus, like the

19   dealerships in *Singh*, the surgeons are primary defendants within the meaning of CAFA.

20           Plaintiffs argue that the court cannot determine whether Dr. Elskens is a primary

21   defendant because the parties have not engaged in discovery regarding "the scope of his

22   personal liability."  (OSC Reply at 4; *see also* Reply at 7.)  Whether a defendant is

1    primary within the meaning of the CAFA exceptions, however, can be discerned based

2    on the allegations in the complaint.  In *Singh*, for example, the court determined that the

3    dealerships were the primary defendants because they were alleged in the operative

4    complaint to have directly harmed the consumers.  *Singh*, 925 F.3d at 1068-69.  The court

5    did not analyze the relative liability of the dealerships as to one another.  *See generally id.*

6    The same is true here:  Dr. Dreyer and Dr. Elskens are both primary defendants because

7    they are alleged to have directly harmed Plaintiffs and class members by subjecting them

8    to medically unnecessary or improper surgeries.  (*See, e.g.*, 3d Am. Compl. ¶¶ 1.15,

9    6.2.1-6.2.3).)  The court need not evaluate their relative liability to find that both

10   surgeons are primary defendants.

11        Finally, to the extent Plaintiffs rely on *Setters v. Journey Lite of Cincinnati, LLC*,

12   No. 1:15-CV-00487-TSB, 2017 WL 510270, at *1 (S.D. Ohio Feb. 8, 2017), in which the

13   court held that a defendant surgery center was the primary defendant, that medical billing

14   case is inapposite.  (*See* Reply at 10.)  In stark contrast to the present case, the surgeon

15   who allegedly performed the underlying surgeries was not a party in *Setters* and the

16   plaintiffs did not raise claims for injury caused by the surgeries themselves.  *See Setters*,

17   2017 WL 510270, at *4 (concluding that the surgery center was the primary defendant

18   because the claims "stem[med] from surgeries performed on Plaintiffs" at the center) and

19   were based on the hospital's failure to properly provide itemized bills).  Plaintiffs'

20   reliance on *Setters*, therefore, is misplaced.

21        Because Plaintiffs have not shown that all of the primary defendants are citizens of

22   Washington, the court need not consider whether they have proven that at least one-third

of the aggregate class members are citizens of Washington or whether the discretionary

factors favor remand.  *See* 28 U.S.C. § 1332(d)(3).  The court DENIES Plaintiffs' motion

to remand.

### IV.    CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' renewed motion to

remand (Dkt. # 163).

Dated this 5th day of June, 2024.

JAMES L. ROBART
United States District Judge